U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

OCT 19 2015

AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Syracuse

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

UMESH HEENDENIYA, )
                            **Plaintiff,** )
              v. )
                                )
ST. JOSEPH'S HOSPITAL HEALTH CENTER; )
ROGER GARY LEVINE, MD; LISA MARIE )
O'CONNOR, MD; GEORGE O. TREMITI, MD; )
HORATIUS ROMAN, MD; JOANNE MARY )
FRENCH, RN; WENDY BRISCOE, RN;  SUSAN )
LYNN CATE, LMFT; ROSALINE SPUNELKA, RN; )
ROBERT MICHAEL CONSTANTINE, MD; )
MITCHELL BRUCE FELDMAN, MD; CYNTHIA A. )
RYBAK, NP; KATHRYN HOWE RUSCITTO, )
PRESIDENT and CEO; LOWELL A. SEIFTER, JD, )
SENIOR VP and GENERAL COUNSEL; MEREDITH )
PRICE, VP of FINANCIAL SERVICES and CFO; )
DEBORAH WELCH, VP; GAEL GILBERT, RN, )
DIRECTOR; SJHHC DOES 1-5 INCLUSIVE; )
                      **Defendants.** )

Civil Action No. 5:15-CV-1238 (GTS/TWD)

Honorable _____

Honorable _____

**Complaint for Monetary Damages, Injunctive Relief, and Declaratory Judgment.**

## COMPLAINT AND JURY DEMAND

COMES NOW the *pro se*, mentally and physically disabled plaintiff Umesh Heendeniya (henceforth "Heendeniya"), and hereby alleges as follows:

### INTRODUCTORY STATEMENT

1. This legal action[1] is a medical malpractice case with relevant state tort claims arising out of the unlawful and unjust, involuntary admission of Heendeniya by defendants St. Joseph's Hospital Health Center (henceforth "SJHHC"); Roger Gary Levine, MD; Lisa Marie O'Connor, MD; George O. Tremiti, MD; Horatius Roman, MD; Joanne Mary French, RN; Wendy Briscoe, RN;  Susan Lynn Cate, LMFT; Rosaline Spunelka, RN; Robert Michael Constantine, MD; Mitchell Bruce Feldman, MD; Cynthia A. Rybak, NP; Kathryn Howe Ruscitto, President and CEO of SJHHC; Lowell A.

---

[1] This complaint contains Exhibits "A" through "I," for a total of one-hundred thirty-five (135) pages.

Seifter, JD, Senior VP and General Counsel of SJHHC; Meredith Price, VP and CFO of SJHHC; Deborah Welch, VP for People at SJHHC; Gael Gilbert, RN and Director of SJHHC's psychiatric ward; and SJHHC Does 1-5 inclusive. These twenty-two (22) defendants will be referred to collectively as the "SJHHC defendants."

2.  This legal action is also a civil rights case with relevant tort and constitutional claims against defendants New York State Office of Mental Health ("OMH"); Ann Marie T. Sullivan, M.D., Commissioner of OMH; Joshua Benjamin Pepper, Esq., Deputy Commissioner and Counsel; New York State Division of Criminal Justice Services ("DCJS"); Michael C. Green, Executive Deputy Commissioner of DCJS; and Eric T. Schneiderman, Esq., New York State Attorney General. These seven (7) defendants will be referred to collectively as the "state defendants."

3.  This legal action is also a civil rights case with relevant tort and constitutional claims against defendants United States Department of Justice ("DOJ"); Loretta E. Lynch, Attorney General of the United States; Federal Bureau of Investigation ("FBI"); James B. Comey, Jr., Director of the FBI; Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"); Thomas E. Brandon, Acting Director of the ATF; National Instant Background Check System ("NICS"); United States of America; Regina Lombardo, Special Agent in Charge (SAC) of ATF's Tampa, FL office; Paul Wysopal, Special Agent in Charge (SAC) of FBI's Tampa, FL office; and Federal Does 1-5 inclusive. These fifteen (15) defendants will be referred to collectively as the "federal defendants."

4.  The claims include violation of the Second Amendment ( *via* section 1983[2] and Bivens[3] ); violation of procedural due process (*via* section 1983 and Bivens); violation of substantive due process (*via* section 1983 and Bivens); violation of the equal protection clause of the Fourteenth Amendment (*via* section 1983); violation of the equal protection clause *via* the Fifth Amendment's due process clause (*via* Bivens); violation of the Federal Tort Claims Act (28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680); violation of the New York Court of Claims Act; Unjust Enrichment; Negligent

---

[2] **42 U.S.C. § 1983 legal action.**
[3] **Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).**

Hiring, Supervision or Retention; Negligence; Injurious Falsehood; Fraudulent Misrepresentation; Fraud - Negligent Misrepresentation; Fraud - Fraudulent Inducement; Fraud; False Imprisonment; Estoppel, Promissory; Equitable Estoppel; Emotional Distress, Negligent Infliction; Emotional Distress, Intentional Infliction; Defamation Slander; Defamation Libel; Civil Conspiracy; Breach of Fiduciary Duty; Breach of Implied Warranty of Fitness for a Particular Purpose; Breach of Express Warranty; Breach of Third-Party Beneficiary Contract; Breach of Contract; Defamation Per Se; Prima Facie Tort.

## THE PARTIES

5. The *pro se*, mentally and physically disabled plaintiff, Umesh Heendeniya (henceforth, "Heendeniya"), is a resident of Hernando County, Florida.

6. The defendant, St. Joseph's Hospital Health Center (henceforth "SJHHC"), is a health care delivery system, offering a wide range of services. It's located at 301 Prospect Avenue, Syracuse, NY-13203.

7. On information and belief, defendant Kathryn Howe Ruscitto is the President and the CEO of SJHHC, and works at SJHHC in Syracuse, New York.

8. On information and belief, defendant Meredith Price is a VP and the CFO of SJHHC, and works at SJHHC in Syracuse, New York.

9. On information and belief, defendant Lowell A. Seifter, JD, is the Senior VP and General Counsel of SJHHC, and works at SJHHC in Syracuse, New York.

10. On information and belief, defendant Deborah Welch is the VP for People at SJHHC, and works at SJHHC in Syracuse, New York.

11. On information and belief, defendant Gael Gilbert, RN is the director of SJHHC's psychiatric unit (officially called "Unit 3-6" and henceforth referred to as "unit 3-6"), and works at SJHHC in Syracuse, New York.

12. On information and belief, defendant Roger Gary Levine, MD, is a psychiatrist working in unit 3-6, and was a director of the unit in April 2013, and works at SJHHC in Syracuse, New York.

13. On information and belief, defendant Lisa Marie O'Connor, MD, is a psychiatrist working in unit 3-6, and works at SJHHC in Syracuse, New York.

14. On information and belief, defendant George O. Tremiti, MD, is a physician specializing in General Surgery, and works at SJHHC in Syracuse, New York.

15. On information and belief, defendant Horatius Roman, MD, is a physician specializing in Anesthesiology, and works at SJHHC in Syracuse, New York.

16. On information and belief, defendant Joanne Mary French, RN, is a registered nurse working in unit 3-6, and works at SJHHC in Syracuse, New York.

17. On information and belief, defendant Wendy Briscoe, RN, is a registered nurse working in unit 3-6, and works at SJHHC in Syracuse, New York.

18. On information and belief, defendant Susan Lynn Cate, LMFT, is a Licensed Marriage and Family Therapist working in unit 3-6, and works at SJHHC in Syracuse, New York.

19. On information and belief, defendant Rosaline Spunelka, RN, is a registered nurse working in unit 3-6 in an administrative capacity, and works at SJHHC in Syracuse, New York.

20. On information and belief, defendant Robert Michael Constantine, MD, is a physician specializing in Anesthesiology at SJHHC's Intensive Care Unit ("ICU"), and works at SJHHC in Syracuse, New York.

21. On information and belief, defendant Mitchell Bruce Feldman, MD, is a physician specializing in Emergency Medicine at SJHHC's Emergency Room ("ER"), and works at SJHHC in Syracuse, New York.

22. On information and belief, defendant Cynthia A. Rybak, NP, is a nurse practitioner specializing in Emergency Medicine at SJHHC's Emergency Room ("ER"), and works at SJHHC in Syracuse, New York.

23. Defendant Loretta E. Lynch is the Attorney General of the United States and the head of the United States Department of Justice ("DOJ"), which oversees the Federal Bureau of Investigation (hereinafter "FBI") and the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter

"ATF"). She is charged with interpretation and enforcement of the Federal Gun Control Act, 18 USC § 921 *et seq.*, and enforcement of federal criminal laws. Her office is located at 950 Pennsylvania Avenue, NW, Washington, D.C., 20530.

24. Defendant United States Department of Justice's (hereinafter "DOJ") is the federal executive department of the United States government responsible for the enforcement of the law, enforcement of the unconstitutionally broad prohibition under 18 U.S.C. § 922, and administration of justice. Its principle offices are located at FBI Headquarters, 950 Pennsylvania Avenue, NW, Washington, D.C., 20530.

25. Defendant ATF is the arm of the Department of Justice responsible for prevention of federal offenses involving the use, manufacture, and possession of firearms, including the unconstitutionally broad ban challenged in this case. Defendant ATF also regulates, *via* licensing, the sale, possession, and transportation of firearms and ammunition in interstate commerce. The ATF is currently enforcing the laws, customs, practices and policies complained of in this action.

26. Defendant Thomas E. Brandon is sued in his capacity as the Director of the ATF. As the Director of the ATF, Mr. Brandon is responsible for executing and administering laws, customs, practices, and policies of the United States, and is presenting enforcing the laws, customs, practices, and policies complained of in this action.

27. Defendant Federal Bureau of Investigation (hereinafter "FBI") is an agency of the Department of Justice and is the agency primarily responsible through its National Instant Background Check System's (hereinafter "NICS") of performing background checks for federal, state, and local law enforcement authorities and for maintaining the NICS database. Defendant FBI is presently enforcing the laws, customs, practices, and polices complained of in this action.

28. Defendant James B. Comey is sued in his capacity as the Director of the FBI, and is responsible for the executing and administering laws, customs, practices, and policies complained of in this action, including the enforcement of the Federal Gun Control Act, 18 USC 921 *et seq.* His office is located at FBI Headquarters, 935 Pennsylvania Avenue, NW, Washington, D.C., 20535.

29. Defendant United States of America is a proper defendant in this action pursuant to 5 U.S.C. § 702, and FTCA (28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680).

30. Defendant National Instant Background Check System's (hereinafter "NICS") is a computerized system containing information about citizens operated by the FBI, which sellers of firearms are required to check before the sale of a firearm to a purchaser, and its principle offices are located at FBI Headquarters, 935 Pennsylvania Avenue, NW, Washington, D.C., 20535.

31. Defendant Regina Lombardo, Special Agent in Charge (SAC), is a Supervisory Special Agent with the ATF. She is being sued in her individual and official capacity.

32. Defendant Paul Wysopal, Special Agent in Charge (SAC), is a Supervisory Special Agent with the FBI. He is being sued in his individual and official capacity.

33. Defendant Eric T. Schneiderman is the Attorney General of the State of New York, and is responsible for executing and administering laws, customs, practices, and policies of the State of New York, including NY Mental Hygiene Law.

34. Defendant New York State Office of Mental Health (hereinafter "NYOMH") is an agency of the State of New York established under the New York Mental Hygiene Law, and its principle offices are located at 44 Holland Avenue, Albany, New York 12229.

35. Defendant Ann Marie T. Sullivan, M.D., is the Commissioner of the New York State Office of Mental Health. Her office is located at 44 Holland Avenue, Albany, New York 12229.

36. Defendant Joshua Benjamin Pepper, Esq., is the Deputy Commissioner and Counsel of the 'Office of Counsel' within the New York State Office of Mental Health. His office is located at 44 Holland Avenue, Albany, New York 12229.

37. Defendant New York State Division of Criminal Justice Services (hereinafter "NYDCJS") is an agency of the State of New York established under the New York State Executive Law, and its principle offices are located in the Alfred E. Smith Building, 80 South Swan Street, Albany, New York 12210.

*Umesh Heendeniya v. St. Joseph's Hospital Health Center, et al.*

38. Defendant Michael C. Green, is the Executive Deputy Commissioner of the New York State Division of Criminal Justice Services. His office is located at 80 South Swan Street, Albany, NY-12210.

39. At all times relevant to this complaint, in doing the acts and things hereinafter complained of, defendant employees of NYOMH were acting within the scope of their employment with the NYOMH, and were using their authority in furtherance of their employer's interests and were acting in their capacity as employees of NYOMH, and said defendant employees were acting under color of state law.

40. At all times relevant to this complaint, in doing the acts and things hereinafter complained of, defendant employees of NYDCJS were acting within the scope of their employment with the NYDCJS, and were using their authority in furtherance of their employer's interests and were acting in their capacity as employees of NYDCJS, and said defendant employees were acting under color of state law.

41. The fictitious defendants (both natural persons and artificial persons) are otherwise unknown to Heendeniya at this time. If their identities are known to Heendeniya at this time, their identities as proper party defendants are not known to him at this time. The true and correct names of the fictitious defendants will be substituted by amendments when the aforesaid information is ascertained. The fictitious defendants may be sued under the doctrines of respondeat superior, joint and several liability, agency and/or other doctrines.

42. At all relevant times, each natural person directly or indirectly involved was an agent, representative and/or employee of Capgemini and/or the other artificial persons.

43. All natural persons are being sued in their individual and official capacities unless specifically stated otherwise.

## JURISDICTION AND VENUE

44. This Court has jurisdiction over Heendeniya's claims against the defendants pursuant to 28 USC §1331, 28 USC §1343, 18 USC §925A, 42 USC §§1983 and 1988, 28 USC §1361, 28

U.S.C. §§ 2201, 2202, and 2412, and 5 U.S.C. §702, and <u>Bivens v. Six Unknown Named Agents,</u> 403 U.S. 388 (1971).

45. This court is vested with authority to grant the requested Declaratory relief by operation of 28 U.S.C. §§ 2201 and 2202 and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

46. Venue is proper in this district pursuant to 28 U.S.C. 1391, and a substantial part of the events or omissions giving rise to the claims occurred in Onandaga County, New York.

47. In the event that Heendeniya obtains an attorney for this action, this Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412.

## PROCEDURAL PREREQUISITES

48. 28 U.S. Code § 2675 and <u>McNeil v. United States,</u> 508 U.S. 106 (1993); New York Court of Claims Act §§ 8 and 10.

## STATEMENT OF FACTS

### Brief Biography

49. Heendeniya is originally from Sri Lanka and he immigrated to the USA nearly 17 years ago.

50. Heendeniya has a B.Sc. in Computer Science from Virginia Commonwealth University located in Richmond, Virginia. A true and correct copy of his diploma from Virginia Commonwealth University granting him a bachelor's degree, is annexed hereto as <u>Exhibit "A</u>."

51. Heendeniya served in the U.S. Marine Corps, active duty and the reserves, from June 1998 to April 2001. He was honorably discharged due to medical reasons as a result of a permanent physical disability in his right-knee from an injury sustained during training off-base in 1999. <u>See</u> Exhibit "B" containing three (3) pages attached herein.

52. Having served in the U.S. Marines, Heendeniya is familiar with many types of firearms and has owned several firearms in the past. He's a strong advocate and a firm believer in the Second Amendment to the U.S. Constitution.

53. Heendeniya believes in the fundamental right to life, liberty and the pursuit of happiness, and consequently the right for people to possess, carry, and defend ourselves with firearms.

54. Hence Heendeniya was gratified when the U.S. Supreme Court ruled in District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. Chicago, 130 S.Ct. 3020 (2010) that the Second Amendment protects an individual's right to keep and bear arms for self-defense.

55. Currently, Heendeniya has valid, concealed carry handgun permits from Florida and Utah. In the past, he has had a concealed carry handgun permit from Virginia.

56. Heendeniya is a current member and supporter of several national and local gun rights organizations such as the Second Amendment Foundation (SAF), National Rifle Association (NRA), Gun Owners of America (GOA), Jews for the Preservation of Firearms Ownership (JPFO), Florida Carry, and New York based S.C.O.P.E (SCOPE).

57. Heendeniya has been a member of several of these "Gun Rights" organizations for nearly 10 years because he believe that those who support and advocate an individual right of people to lawfully carry firearms to protect their lives ought to assist these organizations in whatever form they can, including paying membership dues. Heendeniya doesn't believe in letting other gun rights advocates fight for his rights and not contribute in any way, and getting a "free ride" or "piggy-back" on other peoples' hard work and sacrifices.

### Heendeniya's Mental and Physical Disabilities

58. Heendeniya has documented mental and physical disabilities. See Exhibit "C" containing twenty-nine (29) pages that document his disabilities, attached herein.

59. His mental disabilities consist of Type-2 Bipolar Disorder (Manic Depression) and Post-Traumatic Stress Disorder (PTSD), which have never resulted in him having any psychotic or delusional

disorder or symptoms. In other words, Heendeniya has never been insane (i.e., lost touch with reality or had a very serious mental illness), nor has he ever been diagnosed as such by his regular treating psychiatrists.

60. As a result of his mental disabilities, he has difficulty in his ability to focus, ability to apprehend material he reads, and ability to remember what he researches and reads. Thus, unlike normal people, he has to read something several times in order to apprehend it and be able to remember it so he can use its relevant content to write an argument, etc. Hence, it takes him longer to complete tasks involving complex subject matter such as legal/jurisprudence, information technology, engineering disciplines, etc.

61. This mental disability takes effect when the material he reads or writes deals with complex matter such as legal/jurisprudence, information technology, engineering sciences, etc. In hindsight, this explains why it took him eleven (11) years to complete his bachelor's degree and had to attend five (5) colleges before finally obtaining his bachelor's degree in computer science in May 2000.

62. However, Heendeniya has never has never been diagnosed with any form of psychotic or delusional disorder (i.e., very serious mental illness).

63. Heendeniya has never had psychotic or delusional symptoms (i.e., seeing or hearing things that don't exist, having a delusional belief that someone or some entity is conspiring to harm him-- "insanity" or "loss of touch with reality").

64. Heendeniya has never had any kind of very serious mental illness such as schizophrenia, schizoaffective disorder, etc.

65. As a result of his physical disabilities, Heendeniya has significant pain, and some limitation in movement in his legs-- particularly his right leg. See Exhibit "C."

66. Heendeniya has pain and limitation in his lower back due to the twice-injured herniated disc. See Exhibit "C."

### Heendeniya's Need to Exercise His Second Amendment Gun Rights

67. In the Second Amendment and the Gun Rights community it's a well-known and generally accepted axiom that during a personal emergency, law enforcement officers are not immediately available to assist or protect a person from danger (i.e., they're on their own).

68. This has given rise to maxims or sayings that are well known in the Gun Rights community such as "when seconds count, cops are only minutes away" or "I carry a gun because a cop is too heavy."

69. On Sep. 01, 1995, Heendeniya was surrounded and attacked by four (4) men from Sri Lanka while he was attending Oklahoma State University in Stillwater, Oklahoma. See Exhibit "D" containing forty-two (42) pages attached herein.

70. On July 07, 2004, Heendeniya was attacked by a knife-wielding man in New York City, while he was visiting his sister who had completed her medical residency, to help her relocate for her first job. Id.

71. Law enforcement officers have no duty to protect a person from being attacked and no duty to protect a person from imminent danger. See Exhibit "E" containing three (3) pages and Exhibit "D" attached herein.

### Heendeniya's Unlawful, Involuntary Admission into SJHHC's Unit 3-6

72. At all times herein relevant, all the prior-named physicians identified as being SJHHC defendants, expressly and/or impliedly held themselves out to the general public, including Heendeniya, to be competent, qualified and skilled physicians, capable of and qualified to properly, accurately, promptly and timely diagnose disease, injury, illness and/or other medical conditions and emergencies, and to administer timely and appropriate treatment and care thereto, and otherwise attend upon the patient in accord with the patient's medical and physical condition, needs and requirements.

73. Upon information and belief, all the SJHHC defendants referred to, supra, were acting within the scope of their employment and under the direction of defendant SJHHC and its policies and procedure.

74. On or about April 05, 2013, Heendeniya, who was a resident of Massachusetts, was brought to SJHHC by EMS.

75. Heendeniya was kept first in the emergency room, next in the intensive care unit, and finally in the general medical wing of SJHHC for seven (7) days, from April 05, 2013 to April 12, 2013, while being treated for prescription medication overdose and pneumonia.

76. The prescription medication had been prescribed to him by his regular treating psychiatrist in Massachusetts for approx. four (4) years.

77. While Heendeniya was in SJHHC for the 7-days, he didn't exhibit any suicidal, homicidal, delusional, or psychotic symptoms.

78. Heendeniya was very polite and respectful to all the medical providers and hospital staff throughout the 7-days.

79. While Heendeniya was in the intensive care unit of SJHHC, he was visited by Dr. Lisa Marie O'Connor, who was a psychiatrist in SJHHC's psychiatric unit ("unit 3-6"), on two (2) different occasions.

80. While Heendeniya was in the intensive care unit of SJHHC, he was visited by a registered nurse who works in SJHHC's psychiatric unit. On information and belief, her name was Joanne Mary French, RN.

81. When Dr. O'Connor visited Heendeniya on the 2 different occasions, and she inquired from him, whether he was suicidal or homicidal, Heendeniya clearly and unambiguously stated "No."

82. Heendeniya clearly informed Dr. O'Connor that as soon as his pneumonia illness was successfully treated, that he wanted to return to his apartment in Massachusetts, and that he had no suicidal or homicidal intentions.

83. When Dr. O'Connor visited Heendeniya during the above cited occasions, and she questioned him at length, he told her his complete biographic, physical and mental health, social, and educational history and background.

84. Heendeniya told Dr. O'Connor that he was being treated by his regular psychiatrist in Massachusetts for Type-2 Bipolar Disorder (Manic Depression) and Post-Traumatic Stress Disorder (PTSD).

85. Heendeniya told Dr. O'Connor the medications that he had been prescribed for the past approx. four (4) years by his psychiatrist in Massachusetts.

86. Heendeniya told Dr. O'Connor that the psychiatrist who had been treating him for the past approx. five (5) years was Dr. Kimberly Lovett (referred to as "his psychiatrist" or "regular psychiatrist") who works at Island Counseling Center in Worcester, Massachusetts.

87. Heendeniya told Dr. O'Connor that he was being treated by his regular Primary Care Physician ("PCP") in Massachusetts for Type-2 Diabetes and High Cholesterol.

88. Heendeniya told Dr. O'Connor the medications that he had been prescribed for the past approx. three (3) years by his primary care physician in Massachusetts, Dr. Asha Naidu.

89. When Registered Nurse Joanne French visited Heendeniya on two (2) different occasions, Heendeniya freely spoke to her and told her clearly about his biographic, physical and mental health, social, and educational history and background.

90. The information Heendeniya gave nurse French covered the gamut of topics and subjects of conversation he had with Dr. O'Connor that are cited above in ¶¶ 79-86.

91. Defendants Dr. Roger Gary Levine, Dr. Lisa Marie O'Connor, Dr. George O. Tremiti, Dr. Horatius Roman, nurse Joanne Mary French, nurse Rosaline Spunelka, Dr. Robert Michael Constantine, Dr. Mitchell Bruce Feldman, and nurse practitioner Cynthia A. Rybak, negligently and/or fraudulently, documented and continued to falsely assert, until his unlawful, involuntary admission on April 12, 2013, that Heendeniya had a long history of Schizoaffective Disorder.

92. Heendeniya has never been diagnosed with a psychotic or delusional mental illness (i.e., a very serious mental illness or insanity), including Schizoaffective Disorder or Schizophrenia.

93. SJHHC defendants had the weekend of April 06 and 07, 2013, as well as Monday April 08, 2013, to contact Heendeniya's psychiatrist by phone at the Island Counseling Center, to verify whether Heendeniya did have Schizoaffective Disorder or some other very serious mental illness, but instead, they negligently and/or intentionally failed to talk to her regarding him, his diagnosis, and the psychiatric treatment he had been receiving under her care.

94. If SJHHC defendants had made a reasonable and sufficient effort to contact the Island Counseling Center, they would have been able to talk on the phone to the doctor-on-call, who could have contacted Heendeniya's psychiatrist during off-hours, or could have checked Heendeniya's medical records to the extent permissible, to confirm that Heendeniya didn't have a long history of Schizoaffective Disorder or a very serious mental illness.

95. Defendants Dr. Roger Gary Levine, Dr. George O. Tremiti, and Dr. Horatius Roman never visited Heendeniya throughout April 05, 2013 through April 12, 2013, to personally observe him and talk to him in order to make a medical determination whether Heendeniya needed to be involuntarily admitted under New York Mental Hygiene Law § 9.27.

96. Defendants Dr. George O. Tremiti, and Dr. Horatius Roman never visited Heendeniya throughout his stay at SJHHC from April 05, 2013 to April 17, 2013 to observe him and speak to him.

97. SJHHC defendants did not have just cause or legal justification to resort to involuntarily admitting Heendeniya under NY M.H.L § 9.27, when there were less drastic ways to admit him to the psychiatric unit, such as NY M.H.L § 9.13 (voluntary admission), etc.

98. Heendeniya admits that SJHHC defendants unlawfully and unjust involuntarily admitted him into SJHHC's psychiatric unit on Friday, April 12, 2013. However, Heendeniya denies that this involuntarily admission by SJHHC defendants is a legally valid or sufficient NY M.H.L § 9.27 admission, or in the alternative, he denies that his involuntary admission on 04/12/2013 is an 'involuntary commitment' for the purpose of 18 USC §922(g)(4).

99. When Heendeniya found out that he was being involuntarily admitted, he politely but earnestly asked SJHHC defendants to let him voluntarily admit himself into the psychiatric unit (rather than under involuntarily admission), so SJHHC defendants could observe him over a period of time and know that he had no suicidal or homicidal intentions or impulses. See Exhibit "F" containing four (4) pages attached herein.

100.    On Monday, April 08, 2013, defendants Dr. Roger Gary Levine, Dr. George O. Tremiti and Dr. Horatius Roman fraudulently and/or negligently filled-out the necessary NY M.H.L § 9.27

involuntary admission forms, so that Heendeniya could be unlawfully, involuntarily admitted into SJHHC's psychiatric unit against his will on Friday, April 12, 2013. See Exhibit "G" containing six (6) pages attached herein.

101.    The administrative coordinator in the psychiatric unit, Registered Nurse Rosaline Spunelka, completed the application for 'involuntary admission on medical certification' to be submitted and filed with the New York Office of Mental Health.

102.    Heendeniya was never given any paperwork, nor told by anyone at SJHHC throughout his stay, informing him that he had the legal right to challenge his continuing involuntary admission, using the free legal services offered by NY Mental Hygiene Legal Services.

103.    Prior to Heendeniya's unlawful and unjust, involuntary admission into SJHHC's psychiatric unit, he had never been admitted into any psychiatric facility as an in-patient or as an out-patient, ever.

104.    Heendeniya was kept in SJHHC's psychiatric unit for five (5) days and he was released on April 17, 2013.

105.    Since his release from SJHHC, Heendeniya has not been admitted in to any psychiatric facility anywhere, either as an in-patient or as an out-patient.

106.    In early 2015, Heendeniya found out about the existence of 18 USC §922(g)(4) penal statute that allegedly/supposedly prohibits him from being able to exercise his Second Amendment rights, due to his unlawful, involuntary admission into SJHHC's psychiatric unit by SJHHC defendants. See Exhibit "H" containing one (1) page attached herein.

107.    Soon thereafter, Heendeniya wrote to SJHHC defendants informing them about this, and asking them to rectify the circumstance and impediment that they unjustly created for him-- due to his alleged/supposed NY M.H.L § 9.27 involuntary admission to SJHHC's psychiatric unit. See Exhibit "I" containing four (4) page attached herein.

108.    SJHHC defendants wrote back refusing to rectify the circumstance and impediment that they unjustly and unlawfully created for him.

109.  SJHHC defendants have a documented history of skirting the law and regulations for financial gain and ideological reasons. See Exhibit "J" containing eight (8) page attached herein.

110.  If the Court was to find that Heendeniya's unlawful and unjust, involuntary admission into SJHHC's psychiatric unit by SJHHC defendants does constitute an involuntary admission under NY M.H.L § 9.27, then allegedly under United States v. Waters, 23 F.3d 29 (2d Cir. 1994), such involuntary admission is an involuntary commitment for purposes of 18 USC §922(g)(4) penal statute.

111.  Heendeniya alleges, with the utmost respect to the Honorable United States Court of Appeals for the Second Circuit, that Waters is invalid due to District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. Chicago, 130 S.Ct. 3020 (2010), and/or alternatively, the Waters ruling should be curtailed for same.

112.  Examining the Waters decision and the facts of the instant case, they are easily distinguishable, and thus the Waters holding does not apply to this/instant case.

113.  For instance, the Second Circuit took judicial notice of the following facts regarding the criminal defendant in the Waters case-- Mr. Laurence G. Waters:

'The sequence of events leading to the indictment began when Waters sent two letters to the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") between 1989 and 1991 which claimed knowledge of the location of weapons and firearms.[2] Upon receipt of the letters, the ATF commenced an investigation. On May 8, 1991, an ATF special agent interviewed Waters at his residence. During the interview, Waters displayed a cache of weapons to the agent: six rifles, three shotguns, one machine gun, and a large quantity of ammunition. **Waters also discussed subversive activities, espionage, the Central Intelligence Agency, and "the company."** After the interview, Waters sent a letter to the ATF in which he stated: **"ATF regulations concerning in the service of the gov. related to IRS registered AFFIL, and**

**immagration [sic] computer code name concerning destructive devices that control law.'"** (emphasis added).

112. It's clear that Mr. Waters was afflicted with a very serious mental illness, and that he clearly displayed psychotic and/or delusional symptoms.

113. On the other hand, Heendeniya, as previously stated, has never had psychotic or delusional symptoms, nor has he ever been diagnosed as having a very serious mental illness (i.e., Schizoaffective Disorder, Schizophrenia, found to be detached from reality, found to be insane).

114. Heendeniya alleges, with the utmost respect to the Honorable United States Court of Appeals for the Second Circuit, that <u>Project Release v. Prevost</u>, 722 F.2d 960, 967 (2d Cir. 1983) is invalid due to <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008) and <u>McDonald v. Chicago</u>, 130 S.Ct. 3020 (2010), and/or alternatively, the <u>Project Release</u> ruling should be curtailed for same.

115. In addition, <u>Project Release</u> left open the possibility for an "as applied" challenge to the unconstitutionality of NY M.H.L § 9.27 involuntary admission:

> 'We therefore see no basis for overturning Judge Neaher's handling of this case as a broad facial challenge to the statute, and we affirm his action. However, we do not view his disposition of the alleged "as applied" challenge to the statute as a dismissal thereof. Rather, since the appellants' case did not amount to an attack on the application of the statutory provisions at issue herein, whether the statute is applied constitutionally remains an open question, the resolution of which may be accomplished only in the context of an appropriate "as applied" challenge.'
>
> <u>Project Release</u>, 722 F.2d 960, 967, 971 (2d Cir. 1983).

116. Heendeniya will be amending this complaint, pursuant to Fed. R. Civ. P. 15(a)(1), and serving process on the defendants, per Fed. R. Civ. P. 4(m) and L.R. 4.1(b).

*Umesh Heendeniya v. St. Joseph's Hospital Health Center, et al.*

## STATEMENT OF CLAIMS

### COUNT I
Medical Negligence
(Against SJHHC Defendants)

117.  Heendeniya repeats the allegations contained in Paragraphs 1 through 116 and, by this reference, incorporates them herein.

118.  During April 05, 2013 to April 17, 2013, Heendeniya came under the care and treatment of SJHHC defendants.

119.  During this period, SJHHC defendants represented, expressly or impliedly, that the care, treatment, management, evaluation, testing, observation and monitoring of Heendeniya was within the scope of their medical practice and was within the scope of their medical knowledge, training, skill, experience and ability.

120.  At all times herein relevant, SJHHC defendants were under a duty to provide Heendeniya with proper, competent, comprehensive and timely examination, evaluation, diagnosis, care, treatment, and/or consultation.

121.  That during April 05, 2013 to April 17, 2013, SJHHC defendants, expressly and/or impliedly agreed to accurately and competently examine, treat, diagnose and care for Heendeniya; agreed to provide Heendeniya with proper, competent, comprehensive, timely and accurate examination, evaluation, diagnosis, care, treatment, and/or consultation; agreed to follow a generally recognized and proper practices and procedures adopted by physicians specializing in psychiatry, anesthesiology, emergency medicine, general medicine, general surgery; and agreed to use reasonable and proper skills and attention to care for Heendeniya.

122.  In rendering such services to Heendeniya, SJHHC defendants owed him the duty of possessing and exercising the degree of learning, knowledge, skill, care and diligence which is ordinarily possessed and exercised by physicians holding themselves out as possessing particular knowledge and skill in psychiatry, anesthesiology, emergency medicine, general medicine, and general surgery.

123. During April 05, 2013 to April 17, 2013, Heendeniya presented to the SJHHC defendants with signs, symptoms, conditions and/or complaints consistent with Type-2 Bipolar Disorder (Manic Depression) and Posttraumatic Stress Disorder (PTSD).

124. During April 05, 2013 to April 17, 2013, Heendeniya accurately and unambiguously conveyed to the SJHHC defendants his psychiatric diagnosis, and the list of psychiatric medications he had been prescribed by his long-term psychiatrist.

125. During April 05, 2013 to April 17, 2013, Heendeniya accurately and unambiguously conveyed to the SJHHC defendants the name and place of employment of his long-term psychiatrist.

126. The SJHHC defendants breached the aforesaid duty to Heendeniya and negligently deviated from proper medical practice, such negligence included, but was not limited to: failing to accurately diagnose his psychiatric illnesses; failing to take into account the psychiatric medical diagnosis that Heendeniya accurately and unambiguously conveyed to them, failing to talk to Heendeniya's long-term psychiatrist to find out Heendeniya's accurate psychiatric medical diagnosis, given the permanent and serious repercussions that result from an involuntary admission under NY M.H.L § 9.27; failing to talk to Heendeniya's long-term psychiatrist to find out Heendeniya's accurate psychiatric medical diagnosis after Heendeniya implicitly denied having Schizoaffective Disorder and denied having psychotic or delusional symptoms, given the permanent and serious repercussions that result from an involuntary admission under NY M.H.L § 9.27.

127. Failing to immediately institute appropriate medical care, treatment and procedures as were indicated and necessary in the treatment of Heendeniya's signs, symptoms, and medical conditions; rendering improper, insufficient and untimely medical care and attention to Heendeniya; and the SJHHC defendants were in other ways negligent, reckless and careless.

128. As a proximate result of the aforesaid negligence, carelessness and breach of duty by the SJHHC defendants, Heendeniya sustained certain permanent injuries, damages, losses, and disabilities, of which he still suffers and will suffer for an indefinite period of time into the future.

129. The injuries, damages and disabilities sustained by Heendeniya were caused wholly and solely by the negligent acts, omissions and/or conduct on the part of the SJHHC defendants, and their departures from the accepted and approved standards of medical practice, without any fault on the part of Heendeniya contributing thereto.

130. In addition to the proof of specific acts of negligence of the SJHHC defendants, Heendeniya reserves the right to rely upon the doctrine of *Res Ipsa Loquitut* to establish the negligence of the SJHHC defendants.

131. By reason of all the foregoing, Heendeniya has been permanently injured, damaged and disabled, and he demands judgment against the SJHHC defendants in a substantial sum of money therefor, and compensation for the maximum pecuniary amount allowed by law and equity.

**COUNT II**
Intentional and/or Reckless Infliction of Emotional Distress
(Against All Defendants)

132. Heendeniya repeats the allegations contained in Paragraphs 1 through 131 and, by this reference, incorporates them herein.

133. The conduct of the defendants was outrageous.

134. The defendants acted intentionally or recklessly.

135. Heendeniya suffered severe emotional distress.

136. The conduct of the defendants was the proximate cause of the emotional distress suffered by Heendeniya.

137. Heendeniya suffered damages, as a result of defendants' actions and/or omissions and thus should be compensated for the maximum pecuniary amount allowed by law and equity.

**COUNT III**
Negligent Infliction of Emotional Distress
(Against All Defendants)

138. Heendeniya repeats the allegations contained in Paragraphs 1 through 137 and, by this reference, incorporates them herein.

139. The defendants were negligent in their conduct and/or their omissions.

140. As a result, Heendeniya suffered emotional distress.

141. The defendants' actions or omissions caused Heendeniya's distress.

142. Heendeniya suffered physical harm and/or emotional harm.

143. A reasonable person would have suffered emotional distress under the circumstances that Heendeniya had to endure.

144. Heendeniya suffered damages, as a result of defendants' actions and/or omissions and thus should be compensated for a maximum pecuniary amount allowed by law and equity.

## COUNT IV
Negligent Misrepresentation.
(Against All Defendants)

145. Heendeniya repeats the allegations contained in Paragraphs 1 through 144 and, by this reference, incorporates them herein.

146. Defendants made a material misrepresentation of a presently existing or past fact about Heendeniya.

147. A duty was owed by the defendants to Heendeniya.

148. Heendeniya justifiably or reasonably relied on the representations made by defendants.

149. Consequently, Heendeniya suffered resulting in damages.

150. Heendeniya suffered damages, as a result of defendants' actions and/or omissions and thus should be compensated for the maximum pecuniary amount allowed by law and equity.

## COUNT V
Intentional Misrepresentation
(Against All Defendants)

151. Heendeniya repeats the allegations contained in Paragraphs 1 through 150 and, by this reference, incorporates them herein.

152. Defendants made a material misrepresentation of a presently existing or past fact about Heendeniya.

153. Knowledge by the defendants of its falsity or a reckless disregard as to whether it's true or false.

154. Intention that the other person rely on the statement.

155. Justifiable or reasonable reliance thereon by the other person.

156. Consequently, Heendeniya suffered resulting in damages.

157. Heendeniya suffered damages, as a result of defendants' actions and/or omissions and thus should be compensated for the maximum pecuniary amount allowed by law and equity.

**COUNT VI**
Civil Conspiracy
(Against All Defendants)

158. Heendeniya repeats the allegations contained in Paragraphs 1 through 157 and, by this reference, incorporates them herein.

159. There was an association of two or more of the defendants.

160. They (these defendants) had an unlawful objective.

161. The defendants had an agreement, understanding, or "meeting of the minds" regarding the objective and the means of pursuing it.

162. Pursuant to the agreement, the defendants perpetrated an unlawful act against Heendeniya.

163. Consequently, Heendeniya suffered resulting in damages.

164. Heendeniya suffered damages, as a result of defendants' actions and/or omissions and thus should be compensated for the maximum pecuniary amount allowed by law and equity.

**REQUESTS FOR RELIEF**

WHEREFORE, Heendeniya prays for judgment against defendants, and each of them, jointly and severally, as follows:

1. Order and treat Heendeniya's complaint and Court filings (motions, briefs, etc.) be liberally construed to less stringent standards than formal pleadings filed by bar members. See Erickson v. Pardus, 551 US 89, 94 (2007) ("petitioner has been proceeding, from the litigation's outset, without counsel. A

document filed *pro se* is 'to be liberally construed,' *Estelle*, 429 U. S., at 106, and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ('All pleadings shall be so construed as to do substantial justice')."); Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) ('We read pro se complaints with "special solicitude" and interpret them "to raise the strongest [claims] that [they] suggest[]."'");

2. Declare that 18 U.S.C. § 922(g)(4) (2006), its derivative regulations, and all related laws, policies, and procedures violate Heendeniya's right to keep and bear arms as secured by the Second Amendment to the United States Constitution;

3. Declare that 18 U.S.C. § 922(g)(4) (2006), its derivative regulations, and all related laws, policies, and procedures violate Heendeniya's rights to equal protection and due process under the Due Process Clause of the Fifth Amendment to the United States Constitution;

4. Declare that enforcement of 18 U.S.C. § 922(g)(4) (2006), its derivative regulations, and all related laws, policies, and procedures violates Heendeniya's rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution;

5. Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Heendeniya's right to due process under the Due Process Clause of the Fifth Amendment to the United States Constitution, as Heendeniya was not afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation;

6. Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures do not apply to Heendeniya's involuntary admission to SJHHC's psychiatric unit;

7. Declaratory judgment that NY MHL § 9.27, as applied, violates Heendeniya's constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the U.S. Constitution, to the extent they allow defendants to prohibit otherwise qualified private persons from purchasing and possessing "firearms" and ammunition for the purpose of self-defense in the home;

8.  Declaratory judgment that NY MHL § 9.27, as applied, violates Heendeniya's constitutional right to due process under the fifth and Fourteenth Amendments to the U.S. Constitution;

9.  Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 18 U.S.C. § 922(g)(4) against Heendeniya in relation to his SJHHC involuntary admission, as New York's Mental Hygiene Law scheme lacks the requisite standard as declared by the U.S. Supreme Court's holding in <u>Addington v. Texas</u>, 441 U.S. 418 (1979);

10. Declare defendants' refusal to grant Heendeniya permission to exercise fundamental protections to defend his home or himself to be unlawful;

11. Enjoin defendants from continuing to refuse to grant Heendeniya permission to exercise fundamental protections to defend his home or himself;

12. Order judgment in Heendeniya's favor in such amount as will fully compensate him for his losses to the greatest extent allowed by law;

13. Award such compensatory damages, punitive damages, reliance damages, expectation damages, consequential damages, incidental damages, and hedonic damages as allowed by law against defendants in an amount to be decided by a fair and impartial jury;

14. Award fees, costs and disbursements and attorneys' fees of this action pursuant to 42 USC § 1988 and 28 U.S.C. § 2412; and

15. Grant such further relief as this Court deems fair and just.

## TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Heendeniya hereby demands a trial by jury on all issues so triable.

Respectfully submitted,
*pro se*, mentally and physically disabled plaintiff,

Umesh Heendeniya
P. O. Box 5104
Spring Hill, FL-34611

(508)-263-0145
heendeniyavsjosephshospitalny@gmail.com

Dated : **O Ct. 15, 2015**



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 19 2015
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

To be filed with
the Court