# EXHIBIT E

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: Hon. Margaret A. Chan       PART 52
                     Justice                    INDEX 101088/12

                                                MOTION DATE  4/22/13
                                                MOTION SEQ. NO. 002

JOSEPH LOZITO and ANDREA LOZITO,
                    Plaintiffs,

          - vs. -

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, and NEW YORK TRANSIT
AUTHORITY,
                    Defendants.

FILED
JUL 25 2013
NEW YORK
COUNTY CLERK'S OFFICE

|  | PAPERS NUMBERED |
|---|---|
| Moving Papers | 1 |
| Opposition Papers | 2 |
| Reply Papers | 3 |

Defendant City of New York (the City) moved to dismiss this action and plaintiffs submitted opposition *pro se*, although they had an attorney of record. The City served its reply papers on the attorney of record. The motion was held in abeyance until the plaintiffs and their counsel submitted a Consent to Withdraw as Attorney dated April 10, 2013. The City has since provided its reply papers to the Lozitos. Plaintiffs also mailed an unsolicited letter to this Court dated April 23, 2013. The letter was not considered by the court as the motion was fully submitted. The decision on this motion to dismiss is as follows:

This is an action to recover for personal injuries sustained by Mr. Lozito and a derivative action by Ms. Lozito. Mr. Lozito was brutally attacked by a wanted fugitive while he was aboard an uptown bound number 3 train in the County, City and State of New York on February 12, 2011 at approximately 8:45 a.m. The then fugitive and now convicted felon with a 225 year sentence, Maksim Gelman (Gelman), boarded the train after murdering four (4) people and assaulting several others within a short twenty-eight (28) hour time span. During his last burst of terror, Gelman was inside the front-most subway car on the number 3 train at the same time as Mr. Lozito and two (2) New York City Police Officers, P.O. Terrance Howell and P.O. Tamara Taylor. The officers were notified of reports that Gelman was on foot in the subway tunnels between 34th Street and 42nd Street. In pursuit of Gelman, the officers boarded the first car and proceeded to enter the motorman's booth at the front end of the subway car. The subway car slowly proceeded into the tunnel between 34th Street and 42nd Street and came to a stop between stations. At this point, Mr. Lozito had no interaction with the police officers nor Gelman. Gelman, who was in fact on board the same subway car, approached the closed motorman's booth and claimed that he was a police officer. Denied from entering, Gelman turned around and walked towards Mr. Lozito. Another passenger approached the motorman's booth and excitedly motioned for the officers to come out. Gelman randomly confronted Mr. Lozito without provocation.

Check one:   ☒ FINAL DISPOSITION       ☐ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST       ☐ REFERENCE

By plaintiffs' account, Gelman stood before him and proclaimed "you're gonna die, you're gonna die." (Deft Mot, Exh E, p 17). Then Gelman lunged at Mr. Lozito with an eight (8) inch knife cutting and stabbing him on the face, hands, neck, and head (*see id* at 17-19). Mr. Lozito heroically maneuvered the knife away from Gelman and subdued him on the subway floor. The officers left the motorman's booth and restrained Gelman in handcuffs. Mr. Lozito claimed the police officers did not emerge from the motorman's booth to apprehend Gelman until the attack on him was underway.

Officer Howell's recollection of the events described how he observed something made of metal in Gelman's hands when Gelman approached the motorman's booth (*see* Deft Mot, Exh F, p 2). Officer Howell yelled "gun" and took cover in the motorman's booth (*see id.*). Officer Howell ordered Gelman to drop his weapon, an order that was ignored, and he proceeded to "physically remove and recover the knife from [Gelman's] hand." (*id.* at 2, para 9). Officer Howell placed Gelman in handcuffs.

The crux of Mr. Lozito's claim lies in the seconds that it took the police officers to intervene and eventually apprehend Gelman. Plaintiffs claimed that the officers negligently secured their own safety in the motorman's booth while observing the attack on Mr. Lozito. Plaintiffs also claimed the police officers were negligent in failing to recognize Gelman when they boarded the train and in failing to heed the warnings made by another passenger (*see* Deft Mot, Exh B, para 18).

The attack on Mr. Lozito was shocking and horrific, as was every confrontation that Gelman had during his twenty-eight (28) hour crime spree. The crimes against Mr. Lozito were made even more compelling by his own narrative provided in his opposition. Mr. Lozito's *pro se* opposition papers are thoughtful, eloquently written, and demonstrated his zest and love of life which propelled him to survive the attack by Gelman and defend himself. Mr. Lozito described in dramatic detail the blows and defensive maneuvers he used to disarm and take down Gelman. His statements ring true and appear highly credible.

However, it is well settled that absent a special relationship, discretionary governmental functions such as the provision of police protection are immune from tort liability (*see Valdez v City of New York*, 18 NY3d 69 [2011]; *Cuffy v City of New York*, 69 NY2d 255 [1987]; *Kircher v City of Jamestown*, 74 NY2d 251 [1989] *Yearwood v Town of Brighton*, 64 NY2d 667 [1984]). Despite even very sympathetic facts, public policy demands that a damaged plaintiff be able to identify the duty owed specifically to him or her, not a general duty to society at large (*see Lauer v City of New York*, 95 NY2d 95 [2000]; *Johnson v Jamaica Hosp.*, 62 NY2d 523, 527 [1984]; *Palsgraf v Long Is. R.R. Co.*, 248 NY 339 [1928]). "This is especially so where an individual seeks recovery out of the public purse." (*see Lauer v City of New York*, 95 NY2d at 100). The law is abundantly clear that no liability flows from negligence in the performance of a police function unless there is a special relationship (*see Yearwood v Town of Brighton*, 64 NY2d 667). Even giving Mr. Lozito every favorable inference (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308 [1987]), this court nonetheless is bound to grant the defendants' motion to dismiss; plaintiffs have failed to allege a *prima facie* case of negligence as these facts do not establish a special relationship.

   The criteria for establishing a special relationship were set forth by the Court of Appeals in *Cuffy v City of New York*, 69 NY2d 255. "The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Id.* at 260). While plaintiffs pointed to the officers' close proximity to the attack and their perceived ability to prevent it, proximity does not create a special relationship (*see id.*). Mr. Lozito conceded that he had no communication or contact with the police officers before the attack took place. The first prong of the *Cuffy* elements was not met here. No direct promises of protection were made to Mr. Lozito nor were there direct actions taken to protect Mr. Lozito prior to the attack. Therefore, a special duty did not exist.

   Ultimately, this case must be dismissed as a matter of law (*see id*; *Valdez v City of New York*, 18 NY3d 69; *Blackstock v Board of Educ. of the City of New York*, 84 AD3d 524 [1st Dept 2011]). The dismissal of this lawsuit does not lessen Mr. Lozito's bravery or the pain of his injuries. It merely provides a resolution to this litigation.

   Accordingly, the defendant's motion is granted and the complaint is dismissed.

Dated: July 18, 2013

_____
Margaret A. Chan, J.S.C.

MARGARET A. CHAN
J.S.C.

FILED
JUL 25 2013
NEW YORK
COUNTY CLERK'S OFFICE