# EXHIBIT I




January 12, 2015

Mr. Umesh Heendeniya

Dear Mr. Heendeniya:

Thank you for taking the time to share concerns related to your experience here at St. Joseph's. Each and every concern is taken seriously as we continuously strive to improve upon our patient care services.

I am very sorry for your experience and can assure you that your concerns are being thoroughly reviewed. Upon completion of the review, which may take up to 30 days, our findings will be communicated to you.

Prior to our follow up, if you have questions, please do not hesitate to contact me by phone at 448-5559.

Sincerely,

Mary Clare Ehde

Mary Clare Ehde, Manager
Office of Patient Experience




January 27, 2015

Mr. Umesh Heendeniya

Dear Umesh:

I would like to thank you for contacting us on January 9, 2015, with respect to your April 12- 17, 2013 admission. I have worked with the appropriate parties to review the issues you brought forward, concluding the review on January 14, 2015.

Your concerns were shared with the Sr. Vice President of Operations – COO/CNO, Vice President of Medical Affairs, Director of Quality Resources, Physician Quality Director, and the Service Line Administrator of Inpatient Behavioral Health. We have conducted a thorough review by reviewing your medical records and interviewing staff. Prior to your admission to Unit 3-6, you were evaluated by 2 medical Physicians and a Psychiatrist. Based on these evaluations, the recommendation was made for an involuntary admission to Unit 3-6. The appropriate paper work was completed for the admission. Our review has concluded that for your personal safety, the involuntary admission was an appropriate course of treatment for you.

Again, thank you for bringing forth your concerns. We will not be amending your medical records to change your admission status. At this time we consider the matter to be closed.

Sincerely,

Mary Clare Ehde

Mary Clare Ehde, Manager
Office of Patient Experience

# CORRECTION

**This is one of a series of companion documents to *The Nationwide Privacy and Security Framework for Electronic Exchange of Individually Identifiable Health Information* (Privacy and Security Framework). This guidance document provides information regarding the HIPAA Privacy Rule as it relates to the Correction Principle in the Privacy and Security Framework.**

**CORRECTION PRINCIPLE:** Individuals should be provided with a timely means to dispute the accuracy or integrity of their individually identifiable health information, and to have erroneous information corrected or to have a dispute documented if their requests are denied.

## CORRECTION AND THE HIPAA PRIVACY RULE

The Privacy Rule provides individuals with the right to have their protected health information (PHI) amended in a manner that is fully consistent with the Correction Principle in the Privacy and Security Framework. See 45 C.F.R. § 164.526. Both the Privacy Rule and the Correction Principle recognize that individuals have a critical stake in the accuracy of their individually identifiable health information and play an important role in ensuring the integrity of that data. Under the Privacy Rule, individuals have the right to have a covered entity amend their PHI in a designated record set, as defined in § 164.501, for as long as the entity maintains the records. The covered entity must act timely, usually within 60 days, to correct the record as requested by the individual or to notify the individual the request is denied. When a correction is made, the covered entity must make reasonable efforts to see that the corrected information is provided generally to its business associates, such as a health information organization (HIO), and others who are known to have the PHI that was amended.

A covered entity may deny a requested amendment if it determines that the information is complete and accurate, and on limited other grounds. When a request is denied, but the individual continues to dispute the accuracy of the information, the individual must be provided an opportunity to file a statement of disagreement with the covered entity and the covered entity must provide documentation of the dispute with any subsequent disclosure of the disputed PHI.





## Amendment and HIOs

One of the major benefits of being able to share information electronically to or through a HIO is the ability to perform a number of tasks in a more efficient and timely manner. For example, under the Privacy Rule, a covered entity has up to 60 days to act on a request for an amendment, with an additional 30 day extension in certain circumstances. The efficiencies of retrieving, verifying, and updating information in electronic form should enable covered entities to readily comply with this timeframe and, indeed, even to offer individuals a shorter timeframe for amending their medical records.

In addition, since the various requests and notifications required to effectuate an amendment or to deny a request can be done electronically, significant time can be saved in communicating and responding to requests for amendments. The following written exchanges are contemplated by the Privacy Rule: the individual's request for an amendment, the covered entity's notice to the individual that the amendment has been accepted or, if denied, the reasons for denial, the individual's statement of disagreement, the covered entity's rebuttal statement, if any, and the notification generally of others known to hold the data that is the subject of the correction. The Privacy Rule allows the covered entity and individual to agree to conduct any of these written exchanges electronically. Allowing individuals to make requests for amendment electronically, rather than using paper that must be mailed or delivered to the covered entity, and communicating the covered entity's actions on the requests electronically to the individual should expedite the process.

Moreover, when PHI has been electronically disclosed to or through a HIO, the covered entity's ability to notify other holders of the information can be expedited. For example, through the HIO, the covered entity should be able to identify other participants in the network that maintain information on the individual and who, therefore, should be notified of the amended information.

The Privacy Rule is flexible in how a covered entity amends the PHI, allowing the covered entity to effectuate corrections in the most efficient manner and to comply with recordkeeping requirements imposed by states or other authorities with respect to medical and other records of care. Thus, a covered entity should be able to adopt a reasonable method of amending electronic health records that will satisfy the Privacy Rule. When an amendment is denied and the individual continues to dispute the accuracy of the PHI, the Privacy Rule does require documentation of the dispute to be linked to the disputed information and for that documentation to accompany any future disclosure of the disputed information. Having all of the exchanges related to amendment in electronic form (e.g., as scanned images or electronic annotations) may facilitate compliance with these requirements when the information itself is subject to electronic disclosure to or through a HIO. However, if some or all of the documentation related to the disputed information remains in paper form, but the disclosure of the disputed information itself is done electronically, note that the covered entity still must





provide for a means of transmitting the non-electronic documentation to the recipient of a disclosure of the PHI and clearly linking this documentation to the disputed electronic PHI.

## Frequently Asked Questions

**Q1: Who is responsible for amendment of protected health information in an electronic health information exchange environment?**

A1: The HIPAA Privacy Rule designates a covered entity as the responsible party for acting on an amendment request. However, a health information organization (HIO), acting as a business associate of the covered entity, may be required by its business associate contract to perform certain functions related to amendments, such as informing other participants in the HIO's health information exchange who are known to have the individual's information, of the amendment. See 45 C.F.R. § 164.504(e)(2)(i)(F).

**Q2: What are a covered entity's responsibilities to notify others in a network if an amendment to protected health information is made?**

A2: Under the HIPAA Privacy Rule, a covered entity must make reasonable efforts to communicate an amendment to others in the network identified by the individual as needing the amendment, as well as generally to other parties that are known to have the information about the individual. It is also the entity's responsibility to communicate the amendment within a reasonable timeframe. A health information organization (HIO), with the ability to track where information was exchanged in the past, or to otherwise identify where an individual's information resides on the network, can assist the covered entity, as its business associate, in efficiently disseminating amended information to appropriate recipients throughout the electronic network.