UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UMESH HEENDENIYA,

                              Plaintiff,

                                                          5:15-CV-01238
v.
                                                          (GTS/TWD)
ST. JOSEPH'S HOSPITAL HEALTH CENTER,
et al.,

                              Defendants.

_____

APPEARANCES:

UMESH HEENDENIYA
Plaintiff, *pro se*
P.O. Box 5104
Spring Hill, FL 34611

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

        The Clerk has sent for review Plaintiff Umesh Heendeniya's *pro se* civil rights complaint,

brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S.

388 (1971) ("*Bivens*"), together with an application to proceed in *forma pauperis* ("IFP

Application") and an ex parte emergency motion to correct an error in his IFP application.  (Dkt.

Nos. 1, 2, and 4.)

        Plaintiff has sued thirty-three named defendants and ten John Does.  (Dkt. No. 1.)  The

lawsuit appears to arise out of the alleged prohibition under 18 U.S.C. § 922(g)(4)[1] on Plaintiff's

_____

        [1]  18 U.S.C. § 922(g)(4), a provision of the Gun Control Act of 1968, provides in relevant
part that "(g) It shall be unlawful for any person  . . . (4) who has been adjudicated as a mental
defective or who has been committed to a mental institution . . . to ship or transport in interstate

ability to receive any firearm shipped in interstate or foreign commerce as a result of his April 2013 involuntary commitment to the Psychiatric Ward at St. Joseph's Hospital Health Center in Syracuse, New York, pursuant to New York Mental Hygiene Law ("MHL") § 9.27. *Id.*

## I.      IFP APPLICATION

A court may grant *in forma pauperis* status if a party "is unable to pay " the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP Application (Dkt. No. 2) and the corrections thereto (Dkt. No. 4), the Court finds that he meets the standard and his IPF Application is granted solely for purposes of this initial review.

## II.     LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

---

or foreign commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. 924(a)(2) provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

(2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185,

191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINT

Plaintiff has named three distinct groups of Defendants: (1) St. Joseph's Hospital Health Center ("St. Joseph's") and St. Joseph's administrators, an attorney, physicians, nurses, a therapist, and five John Does; (2) two State agencies and number of New York State officials; and (3) the United States, the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and various federal officials and employees, a program of the FBI, and five John Does. (*See* Dkt. No. 1 at ¶¶ 1-3, 5-38.)

### A. The St. Joseph's Defendants[2]

In his complaint, Plaintiff alleges that he was brought to St. Joseph's on April 5, 2013, for prescription medication overdose and pneumonia, and that he was in the emergency room, intensive care, and general medical wing of the hospital until April 12, 2013. (Dkt. No. 1 at ¶ 75.) The admission note, signed by Defendant Wendy Briscoe ("Briscoe"), a registered nurse ("RN") at St. Joseph's, which has been submitted by Plaintiff as an exhibit to his complaint,

---

[2] St. Joseph's and the St. Joseph's administrators, attorney, physicians, nurses, a therapist, and five John Does named as defendants in Plaintiff's complaint are referred to collectively herein as the "St. Joseph's Defendants."

states that he was brought to St. Joseph's when his mother found him unresponsive at a local motel and called 911. (Dkt. No. 1-6.) The admission note further states that Plaintiff related that he had been living in Massachusetts away from his family and had been having trouble keeping a job and had been isolated at home. *Id.* Plaintiff had come to Syracuse on April 5, 2013. *Id.* Plaintiff stated that he had taken twelve Xanax .05 mg. and twelve Risperdal 2 mg. *Id.* The admission indicates that Plaintiff had written letters to his mother, sister, brother, and estranged father. *Id.* Plaintiff spoke of having Post Traumatic Stress Disorder ("PTSD"), which he indicated was centered on his having been charged with murder in 1995 and ultimately acquitted on the grounds of self defense. *Id.*

According to the admission note, Plaintiff "signed disclosures but declined his treatments and procedures stating his second amendment rights and that he [was] not an American citizen. He also added that on a pistol permit he would have to admit that he was involuntarily admitted and he believes that if he does not sign this, then he would not purjure (sic) himself and commit a felony." *Id.;* Dkt. No. 1-4 at 8.

Plaintiff has alleged that during the time he was in intensive care at St. Joseph's, Defendant Lisa Marie O'Connor, MD ("O'Connor"), a St. Joseph's psychiatrist, visited him on two separate occasions. (Dkt. No. 1 at ¶ 79.) O'Connor asked Plaintiff if he was suicidal or homicidal, both of which he denied. Id. at ¶ 81. O'Connor also questioned Plaintiff at length about his history, and he told her his complete biographic, physical and mental health, social, and educational history, including that he was being treated for Type-2 Bipolar Disorder and PTSD by a psychiatrist in Massachusetts *Id.* at ¶¶ 83-84. Plaintiff informed O'Connor of the medications prescribed for the past four years by the Massachusetts psychiatrist who had been

treating him for five years.  *Id.* at ¶¶ 85-86.

According to Plaintiff, Defendant Joanne French ("French"), a St. Joseph's RN, also saw him on two separate occasions while he was hospitalized at St. Joseph's.  *Id.* at ¶ 89. Plaintiff also spoke freely with French about his biographic, physical and mental health, social, and educational history and background, and his conversations with her covered the topics he had discussed with O'Connor.  *Id.* at ¶¶ 89-90.

Plaintiff has alleged in his complaint that on April 8, 2013, St. Joseph's physicians Defendants Roger Gary Levine, MD ("Levine") (Psychiatrist), George O. Tremiti, MD ("Tremiti") (Surgeon), and Horatius Roman, MD ("Roman") (Anesthesiologist), who had never visited Plaintiff throughout his stay at St. Joseph's to determine if he should be involuntarily committed under MHL § 9.27, fraudulently and negligently filled out the paper work necessary to have Plaintiff involuntarily committed under the provision.  (Dkt. Nos. 1 at ¶¶ 95-96, 100; 1-7 at 2-5.)  Defendant Rosaline Spunelka, RN ("Spunelka), the administrative coordinator in the St. Joseph's Psychiatric Ward, is alleged to have completed the application for "involuntary admission on medical certification" to be submitted to the New York State Department of Mental Health.  *Id.* at ¶ 100.  Plaintiff claims that he was never given any paper work or otherwise informed that he had a legal right to challenge the involuntary commitment.  *Id.* at ¶ 102. However, among the exhibits to his complaint is a Notification of Status and Rights Involuntary Admission of Medical Certification, dated April 12, 2013, which indicates that Plaintiff was given a copy on the date of the commitment.  (Dkt. No. 1-7 at 6.)  The Notification advised Plaintiff that: "If you or those acting on your behalf, believe that you do not need involuntary care and treatment, you or they may make a written request for a court hearing.  Copies of such a

request will be forwarded by the hospital director to the appropriate court and the Mental Hygiene Legal Service." *Id*. The Notification advises Plaintiff of his right to legal representation and provides the address for the Mental Hygiene Legal Service. *Id*.

Plaintiff has also alleged in his complaint that St. Joseph's physicians Levine, O'Connor, Tremiti, Roman, Robert Michael Constantine, MD ("Constantine") (Anesthesiologist"), and Bruce Feldman, MD ("Feldman") (Emergency Medicine); RNs French and Spunelka, and Defendant Cynthia A. Rybak ("Rybak"), a St. Joseph's nurse practitioner, negligently and/or fraudulently documented and continued to falsely assert, until his unlawful, involuntary commitment on April 12, 2013, that Plaintiff had a long history of Schizoeffective Disorder, even though he had never been so diagnosed. *Id*. at ¶¶ 91-92. According to Plaintiff, if the Defendants had made a reasonable effort from April 6 to April 8, 2013, they could have contacted his Massachusetts psychiatrist to verify whether he had Schizoeffective Disorder. *Id*. at ¶¶ 93-94.

Plaintiff was kept under the involuntary commitment for five days before being released on April 17, 2013. *Id*. at ¶ 104. Plaintiff has alleged that Defendants Levine, Tremiti, and Roman never visited him to observe or speak with him during the period of his involuntary commitment. *Id*. at ¶ 96. Plaintiff's Discharge Sheet, submitted as an exhibit to his complaint, sets forth diagnoses of drug overdose, suicide attempt, bipolar disorder, and PTSD. (Dkt. No. 1-6 at 2.)

In early 2015, Plaintiff contacted St. Joseph's informing the hospital that 18 U.S.C. § 922(g)(4) prohibited him from exercising his Second Amendment right to bear arms due to his unlawful involuntary commitment in the St. Joseph's Psychiatric Ward and asked that the

situation be rectified.  (Dkt. No. 1 at ¶ 107.)  In a letter dated January 12, 2015, from non-party

Mary Clare Ehde ("Ehde"), Manager of the Office of Patient Experience at St. Joseph's, Plaintiff

was informed that his concerns were being reviewed, and he would be contacted upon

completion of the review.  (Dkt. No. 1-9 at 2.)  On January 27, 2015, Ehde wrote to Plaintiff

informing him that his concerns had been reviewed by St. Joseph's Sr. Vice-President of

Operations-COO/CNO, Vice-President of Medical Affairs, Director of Quality Resources,

Physician Quality Director, and the Service Line Administrator of Inpatient Behavioral Health.

*Id*.  In addition, a thorough review of Plaintiff's medical records had been undertaken and staff

interviewed.  The outcome of the investigation was explained to Plaintiff as follows:

> Prior to your admission to Unit 3-6, you were evaluated by 2
> medical Physicians and a Psychiatrist.  Based on these evaluations,
> the recommendation was made for an involuntary admission to
> Unit 3-6.  The appropriate paper work was completed for the
> admission.  Our review has concluded that for your personal safety,
> the involuntary admission was an appropriate course of treatment
> for you.

(Dkt. No. 1-9 at 3.)

      In addition to the St. Joseph's Defendants identified above, Plaintiff has named a number

of St. Joseph's Defendants with regard to whom the complaint, other than identifying them, is

silent.  Those Defendants include Susan Lyn Cate ("Cate"), LMFT; Kathryn Howe Ruscitto

("Ruscitto"), President and CEO; Lowell A. Seifter ("Seifter"), JD and General Counsel;

Meredith Price ("Price"), VP and CFO; Deborah Welch ("Welch"), VP for People; Gael Gilbert

("Gilbert"), RN and Director of St. Joseph's Psychiatric Ward; and St. Joseph's John Does 1-5.

(*See generally* Dkt. No. 1.)

### B.  New York State Defendants

Plaintiff has named as Defendants New York Office of Mental Hygiene ("OMH"); Ann Marie Sullivan, MD ("Sullivan"), OMH Commissioner; NYS Division of Criminal Justice Services ("NYDCJS"); Joshua Benjamin Pepper, Esq. ("Pepper"), Deputy Commissioner and Counsel to NYDCJS; Michael C. Green ("Green"), Executive Deputy Commissioner of NYDCJS; and Eric T. Schneiderman ("Schneiderman"), New York State Attorney General (collectively referred to herein as "State Defendants").  (Dkt. No. 1 at ¶¶ 33-38.)

Plaintiff has alleged in conclusory fashion that the State Defendants were acting within the scope of their employment and in their capacity as employees of their respective state agencies and departments in furtherance of their employer's interest and under color of state law. *Id*. at ¶¶ 39-40.  The complaint is devoid of specific facts alleging the official or personal involvement of any of the New York State Defendants with regard to the claims asserted by Plaintiff.

### C.  Federal Defendants

In addition to the United States, DOJ, FBI, and ATF, Plaintiff has named as defendants Loretta E. Lynch ("Lynch"), United States Attorney General; James B. Comey, Jr. ("Comey"), Director of the FBI; Thomas E. Brandon ("Brandon"), Acting Director of ATF; National Instant Background Check System ("NICS"); Regina Lombardo ("Lombardo"), Special Agent in Charge (SAC) of the FBI Tampa Office; and Paul Wysopal ("Wysopal"), Special Agent in Charge (SAC) of the FBI Tampa Office; and Federal John Does 1-5 (collectively referred to herein as the "Federal Defendants").  (Dkt. No. 1 at ¶¶ 3, 23-32.)

Plaintiff's complaint includes general allegations regarding the authority and responsibilities of the Defendant federal departments and agencies and individual federal defendants with regard to the interpretation and enforcement of the Federal Gun Control Act, 18 U.S.C. § 921, et seq. *Id.* The complaint does not include any specific factual allegations showing that any of the Federal Defendants were personally involved in depriving Plaintiff of his constitutional rights. Moreover, the complaint does not allege that Plaintiff has at any time been charged with a violation of 18 U.S.C. § 922(g)(4).

**D.     Claims Asserted by Plaintiff**

In Paragraph 4 of his complaint, Plaintiff sets forth a laundry list of claims, including the following: the violation of his rights under the Second Amendment and his rights to due process and equal protection under the Fifth and Fourteenth Amendments via 42 U.S.C. § 1983 and *Bivens*; violation of the Federal Tort Claims Act, §§ 1346(b), 1402(b), 2401(b), and 2671-2680; violation of the New York Court of Claims Act; unjust enrichment; negligent hiring, supervision, or retention; negligence; injurious falsehood; fraudulent misrepresentation; fraud    negligent misrepresentation; fraud    fraudulent inducement; fraud; false imprisonment; estoppel, promissory; equitable estoppel; emotional distress; negligent infliction of emotional distress; emotional infliction; intentional infliction of emotional distress; defamation, slander; defamation, libel; civil conspiracy; breach of fiduciary duty; breach of implied warranty of fitness for a particular purpose; breach of express warranty; breach of third party beneficiary contract; breach of contract; defamation per se; and prima facie tort. (Dkt. No. 1 at ¶ 4.)

In his Statement of Claims, however, Plaintiff has asserted only the following claims against Defendants:

<u>Against St. Joseph's Defendants Only</u>

Count I        Medical negligence    involuntary commitment unwarranted    against St. Joseph Defendants

<u>Against All Defendants</u>

Count II       Reckless infliction of emotional distress

Count III      Negligent infliction of emotional distress

Count IV       Negligent misrepresentation

Count V        Intentional Misrepresentation

Count VI       Civil Conspiracy

(Dkt. No. 1 at ¶¶ 117-164.)

Construing Plaintiff's complaint liberally for purposes of this initial review, the Court will assume that in addition to his state law claims, Plaintiff intends to assert federal claims under § 1983 against the St. Joseph's and State Defendants and claims under *Bivens*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 18 U.S.C. § 925A against the Federal Defendants for violation of his rights under the Second, Fifth, and Fourteenth Amendments to the United States Constitution.

**E.     Relief Sought**

Plaintiff is seeking the following relief:

1.      Liberal construction of pleadings;

2.      Declaration that 18 USC ¶ 922(g)(4)(2006) violates his right to bear arms under the Second Amendment;

3.      Declaration that 18 USC ¶ 922(g)(4)(2006) and its derivative regulations and all related laws, policies, and procedures violate his rights to equal protection and due process under Fifth Amendment;

4.      Declaration that 18 USC ¶ 922(g)(4)(2006) and its derivative regulations and all related laws, policies, and procedures violate his rights to equal protection and due process under Fourteenth Amendment;

5.      Declaration that 18 USC ¶ 922(g)(4)(2006) and its derivative regulations and all related laws, policies, and procedures violate his rights to due process under Fifth Amendment because he was not afforded notice and an opportunity to be heard prior to the deprivation or through a post-deprivation proceeding to seek review and relief;

6.      Declaration that 18 USC ¶ 922(g)(4)(2006), its derivative regulations and all related laws, policies, and procedures do not apply to his involuntary commitment to St. Joseph's Psychiatric Unit;

7.      Declaration that MHL § 9.27, as applied, violates constitutional right to keep and bear arms under the Second and Fourteenth Amendments to the extent it allows defendants to prohibit otherwise qualified private persons from purchasing and possessing firearms and ammunition for self-defense at home;

8.      Declaration that NY MHL 9.27, as applied, violates constitutional right to due process under Fifth and Fourteenth Amendments;

9.      Permanent injunction enjoining defendants from enforcing 18 USC ¶ 922(g)(4) against him in relation to involuntary admission to St. Joseph's as the § MHL 9.27 scheme lacks requisite standard under *Addington v. Texas*, 441 U.S. 418;

10.      Declaration that defendants' continuing refusal to grant him permission to exercise fundamental right to defend his home is unlawful;

11.      Enjoin defendants from continuing to refuse to grant him permission to exercise fundamental right to protect his home;

12.      Judgment compensating him for his losses to the greatest extent allowed by law;

13.      Compensatory, punitive, reliance, expectation, consequential, incidental and hedonic damages as allowed by law to be decided by a jury; and

14.      Costs and attorneys' fees.

(Dkt. No. 1 at 22-24.)

## IV.    ANALYSIS

### A.    Section 1983 Claims Against St. Joseph's Defendants

To state a claim under § 1983, a plaintiff must allege that defendants violated his federal rights while acting under color of state law.  *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).  "[P]rivate conduct, no matter how discriminatory or wrongful, is not controlled by § 1983."  *Am. Mfrs. Mut, Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).  The pivotal issue with regard to Plaintiff's § 1983 claims against the St. Joseph's Defendants is whether they were state actors when they involuntarily committed Plaintiff under MHL § 9.27.  *See Doe v. Rosenberg*, 996 F. Supp. 343, 348 (S.D.N.Y. 1998), *aff'd*, 166 F.3d 507 (2d Cir. 1999).

St. Joseph's is a private non-profit regional health care system located in Syracuse, New York.[3]  Individual St. Joseph's Defendants Levine, O'Connor, Tremiti, Roman, French, Briscoe, Cate, Spunelka, Constantine, Feldman, Rybak, Ruscitto, Seifter, Price, Welch, and Gilbert are all identified as working at St. Joseph's in a medical, administrative, or legal capacity, and are thus deemed to be private actors for purposes of this initial review.  (Dkt. No. 1 at ¶¶ 7-22.)

A private actor can be found to act under color of state law for purposes of § 1983 when "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."  *Hogan v. A.O. Fox Memorial Hosp.*, 346 F. App'x 627, 628 (2d Cir. 2009) (citing *Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008).  "The fundamental question under each test is whether the private [actor's]

---

[3]  *See* http://sjhsyr.org/who-we-are (last visited on November 30, 2015).

challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

In *Rosenberg*, the plaintiff sued a private hospital and members of its staff under § 1983 arising out of her involuntary commitment under MHL § 9.27. The district court carefully analyzed whether the hospital and staff could be considered state actors under any of the three tests before concluding that they were not state actors with respect to the involuntary commitment for § 1983 purposes. *Rosenberg*, 996 F.Supp. at 349-358. Analyzing the language of MHL § 9.27, the district court in *Rosenberg* found that the hospital defendants were not state actors under the state compulsion test because "[e]ven though the MHL provides the legal framework under which physicians may involuntarily commit a patient by creating procedures and standards for commitment . . . it leaves the decision to commit completely to the physician's discretion." *Id*. at 350-51.

The district court also found that the MHL did not create a sufficiently close nexus between the State and hospital defendants to mandate their classification as state actors even though the hospital defendant had a contract with the OMH that allowed the hospital to operate a psychiatric wing and was licensed by OMH to serve as a primary psychiatric emergency care provider. *Id*. at 352. The district court noted the Supreme Court finding that "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* (quoting *Jackson v. Metropolitan Edison C*., 419 U.S. 345, 350 (1974)). Finding that the case "did not involve a situation where the State has "'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise,'" [quoting *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir.

14

1992)], the district court concluded that "because the MHL merely licenses private physicians and hospitals to commit involuntary commitments yet in no way influences the decision to commit, the relationship with the Hospital Defendants is insufficient to pass the close nexus/joint action test." 996 F.Supp. at 352-53.

Under the public function test, as pointed out by the district court in *Rosenberg*, "the relevant question is not simply whether a private group is serving *a* 'public function.'" *Id*. at 353 (quoting *Rendell-Baker*, 457 U.S. at 842) (emphasis in original). "The question is whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Id*. (quoting *Rendell-Baker*, 457 U.S. at 842). The district court in *Rosenberg* found that involuntary commitment under the MHL failed the public function test because the powers exercised by the hospital defendants were not the sort that were traditionally the exclusive prerogative of the State. *Id*. at 353.

The district court concluded that

> The application of the state compulsion, close nexus/joint action, and public function tests establish that the MHL, at most, provides a licensing provision enabling the private hospital to receive mental patients. Licensing and regulations are insufficient to transform the Hospital Defendants into state actors for § 1983 purposes. Holding otherwise would expose private physicians and private hospitals to § 1983 liability whenever they act pursuant to the MHL, despite the fact that their actions reflect medical judgments made according to generally accepted professional standards that are not established by New York State.

*Id*. at 356-57.

The Second Circuit affirmed in *Rosenberg* for substantially the same reasons set forth in the district court's "comprehensive and scholarly opinion." 116 F.3d at 507. More recently, in *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), the Second Circuit, following

15

*Rosenberg*, held that a private hospital and its medical personnel did not engage in state action for purposes of § 1983 in forcibly medicating plaintiff and involuntarily committing her under MHL § 9.39.  *See also Andersen v. North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital*, No. 12-CV-1049, 2015 WL 1443254, at * 13, 2015 U.S. Dist. LEXIS 39631, at * 17 (E.D.N.Y. March 26, 2015) (citing *Rosenberg* and dismissing § 1983 claims against private hospital and medical personnel on the grounds they were not acting under color of state law in involuntarily committing plaintiff under the MHL); *Antwi v. Montefiore Medical Center*, No. 14 Civ. 840(ER), 2014 WL 6481996, at * 6, 2014 U.S. Dist. LEXIS 161904, at * 18 (S.D.N.Y. Nov. 18, 2014) (dismissing § 1983 claim brought against private medical center that had involuntarily committed plaintiff under MHL 9.27 for failure to show state action); *Doe v. Harrison*, 254 F.Supp. 2d 338, 342 (S.D.N.Y. 2003) (civil commitment under MHL § 9.27 by a private physician does not constitute state action).

The Court finds that Plaintiff's § 1983 claims against the St. Joseph's Defendants raise substantially the same questions considered and decided in *Rosenberg* and *McGugan*, and that there is no basis for finding state action.  Following Second Circuit precedent, the Court recommends that Plaintiff's § 1983 claims against all of the St. Joseph's Defendants be dismissed with prejudice for failure to state a claim.

### B.    State Law Claims Against St. Joseph's Defendants

Plaintiff has also asserted a medical negligence or malpractice claim, along with an assortment of what at first glance appear to be largely frivolous state law claims against the St. Joseph's Defendants.  (Dkt. No. 1 at ¶¶ 4, 117-164.)  "It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been

imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009). Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332). *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002).

The Court has concluded that Plaintiff has failed to state a claim under § 1983, leaving no federal question jurisdiction. It appears from the complaint that there may be complete diversity of citizenship between Plaintiff, alleged to be a resident of Florida, and St. Joseph's and the St. Joseph's Defendants, who are all alleged to be working at St. Joseph's in New York State.[4] (Dkt. No. 1 at ¶¶ 5-22.) However, St. Joseph's and the St. Joseph's Defendants are not the only defendants named in this action, and Plaintiff concedes that two of the named Defendants, Regina Lombardo and Paul Wysopal, are both Special Agents in Charge of ATF's Tampa, Florida office, and may therefore very well be Florida residents, thus destroying complete diversity. (Dkt. No. 1 at ¶ 3.)

In addition, even if complete diversity were clear from the complaint, Plaintiff has not alleged that the amount in controversy exceeds $75,000. In fact, he has failed to plead any amount in controversy. *See Lupo v. Human Affairs, Int'l, Inc.*, 28 F.3d 269, 273 (2d Cir. 1994) ("[T]he party asserting diversity jurisdiction in federal court has the burden of establishing the existence of the jurisdiction amount in controversy.").

Because there is no federal question jurisdiction, there is not complete diversity between

---

[4] Because Plaintiff has not alleged the state of residence of any of the St. Joseph's Defendants, complete diversity among those parties is not clear from the complaint.

the Plaintiff and Defendants, and Plaintiff has failed to include allegations showing that the amount in controversy satisfies § 1332, the Court finds that there is no subject matter jurisdiction over Plaintiff's state law claims against the St. Joseph's Defendants and recommends dismissal on that ground.[5]

### C. Section 1983 Claims Against New York State Defendants

Plaintiff has sued State Defendants New York OMH, OMH Commissioner Sullivan, NYDCJS, NYDCJS Deputy Commissioner and Counsel Pepper, NYDCJS Executive Deputy Commissioner Green, and New York State Attorney General Schneiderman. (Dkt. No. 1 at ¶¶ 33-38.) Plaintiff has alleged in conclusory fashion that OMH and NYDCJS are State agencies and that the State Defendants were acting within the scope of their employment and in their capacity as employees of their respective state departments in furtherance of their employer's interest and under color of state law. *Id*. at ¶¶ 33-40. Plaintiff has also alleged that Attorney General Schneiderman is responsible for "executing and administering laws, customs, practices, and policies of the State of New York, including the Mental Hygiene Law." *Id*. at ¶ 33.

Plaintiff has sued the State Defendants under § 1983 solely in their official capacities.[6]

---

[5] Inasmuch as the Court is recommending dismissal of Plaintiff's § 1983 claims against the St. Joseph's Defendants with prejudice, it is not recommending that the District Court exercise supplemental jurisdiction over his state law claims against those Defendants.

[6] The Court has concluded that Plaintiff's § 1983 claims against the State Defendants are brought against them solely in their official capacities because he has not alleged that they are being sued in their individual capacity as he has with the Federal Defendants, and there are no allegations of personal involvement in Plaintiff's involuntary commitment by the State Defendants. *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.") (citations omitted).

*Id.* at ¶¶ 33-40.  The complaint is devoid of allegations of involvement, official or otherwise, in Plaintiff's involuntary commitment at St. Joseph's by any of the State Defendants.  Presumably, Plaintiff has named the State Defendants for the purpose of seeking declarations that MHL § 9.27, as applied, violates his right to keep and bear arms under the Second and Fourteenth Amendments, and his right to procedural and substantive due process under the Fourteenth Amendment.  *Id.* at 23-24.

In *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983), the Second Circuit upheld the facial constitutionality of MHL § 9.27, the statute under which Plaintiff was involuntarily committed to the St. Joseph's Psychiatric Ward, against a procedural due process challenge.  *Project Release* did not include an as-applied analysis of the statute because, as the Second Circuit explained, plaintiffs' case "did not amount to an attack on the *application* of the statutory provisions at issue [therein], whether the statute is *applied* constitutionally remains an open question, the resolution of which may be accomplished only in the context of an appropriate 'as applied' challenge."  *Id.* at 971; *see also Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006) ("An 'as-applied' challenge . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right.").

None of the allegations in the complaint relevant to Plaintiff's as-applied challenge to the constitutionality of MHL § 9.27 implicate any of the State Defendants.[7]  Rather his claim that the

---

[7]  This case is distinguishable from *Project Release*, 722 F.2d 960, in which the plaintiff had been involuntarily committed to Creedmoor Psychiatric Center, which is a State OMH facility, not a private hospital.  *See* https://www.omh.ny. omhweb/facilities/crpc (last visited on November 30, 2015).

provision was applied in an unconstitutional manner is directed to the actions of the St. Joseph's Defendants, who allegedly (1) negligently, fraudulently, and unlawfully had him involuntarily committed under the provision; (2) failed to give him any paperwork informing him of his legal right to challenge the involuntary commitment; and (3) failed to rectify the situation when Plaintiff informed them that because of the allegedly unlawful involuntary commitment, he was prohibited from having a firearm by 18 U.S.C. § 922(g)(4).[8] (Dkt. No. 1 at ¶¶ 75-108.)

As noted above, "private conduct, no matter how discriminatory or wrongful, is not controlled by § 1983." *Am. Mfrs. Mut, Ins.,* 526 U.S. at 20. Therefore, even if, as Plaintiff claims, the St. Joseph's Defendants violated his due process rights in applying MHL § 9.27 in his particular case, he has no claim under § 1983. Given Plaintiff's failure to allege the involvement of any of the State Defendants in Plaintiff's involuntary commitment under MHL § 9.27, or any unconstitutional application of the provision on their part, the Court recommends that Plaintiff's § 1983 claim as against Defendants New York OMH, Sullivan, NYDCJS, Pepper, Green, and Schneiderman be dismissed with prejudice.[9]

---

[8] As noted above, Plaintiff's claim that he was not given paperwork informing him of his legal right to challenge the involuntary commitment is contradicted by the Notification of Status and Rights Involuntary Admission on Medical Certification date April 12, 2013, informing him of his right to a court hearing and counsel, submitted by him as an exhibit to his complaint. (Dkt. No. 1-7 at 6.) Not only does a staff physician's signature, dated April 12, 2013, appear on the Notification under the statement "THE ABOVE PATIENT HAS BEEN GIVE A COPY OF THIS NOTICE," Plaintiff would have to have been in possession of the Notification in order to include it as an exhibit to his complaint. *Id*.

[9] In addition to his procedural due process claim, Plaintiff seems to have alleged that MHL § 9.27, as-applied, violated his Second Amendment right to bear arms, substantive due process rights, and the equal protection clause of the Fourteenth Amendment. Any substantive due process as-applied claim would relate to the actions of the St. Joseph's Defendants, private actors, and substantive due process does not require state actors to protect against such conduct by a private actor. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195

### D.    State Law Tort Claims Against the State Defendants

As with the St. Joseph's Defendants, Plaintiff has asserted a variety of state tort law

claims against the State Defendants.  (Dkt. No. 1 at ¶¶ 4, 132-164.)  "The Eleventh Amendment

prevents a federal court from granting relief against state officials sued in their official capacities

on the basis of state law, be the requested relief prospective or retroactive, injunctive or monetary

in nature.  *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 105 (1984) ("A

federal court's grant of relief against state officials in the basis of state law, whether prospective

[injunctive relief] or retroactive [monetary relief on a claim for damages], does not vindicate the

supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on

state sovereignty than when a federal court instructs state officials on how to conform their

conduct to state law."); *Kennedy v. U.S.*, 643 F.Supp. 1072, 1077 (E.D.N.Y. 1986) ("the Eleventh

Amendment prevents a federal court from granting relief against state officials on the basis of

state law, be the requested relief prospective or retroactive, injunctive or monetary in nature.")

(citation omitted).  Furthermore, the power of federal courts to adjudicate such state law claims

against state officials is equally lacking whether the claimed basis for jurisdiction is said to lie in

federal question jurisdiction, diversity jurisdiction, or the doctrines of pendent or ancillary

[supplemental] jurisdiction." *Id.*  The Eleventh Amendment likewise bars state law claims

_____

(1989) (substantive due process does not "require[ ] the State to protect the life, liberty, and property of its citizens against invasion by private actors.")  Plaintiff has failed to allege any facts supporting an equal protection violation as-applied claim that would apply to the State Defendants. To the extent Plaintiff may be attempting to claim more broadly that MHL § 9.27, as-applied, violated his Second Amendment rights because an involuntary commitment subjects him to the prohibition under § 922(g)(4), the Court notes that the Supreme Court has made it clear that the right to bear arms under the Second Amendment is not unlimited and that nothing in its opinion in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) should be "taken to cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill."

seeking money damages against state agencies. *See Limwongse v. NYS Office of Mental Health*, 249 F. App'x 862 (2d Cir. 2007) (state agencies protected by the Eleventh Amendment from suit for money damages).

Therefore, the Court recommends that Plaintiff's state law claims seeking money damages against the State Defendants be dismissed with prejudice under the Eleventh Amendment.

### E. *Bivens* Claims Against the Federal Defendants

Plaintiff has asserted *Bivens* claims for violation of his Second Amendment right to bear arms, and procedural and substantive due process and equal protection under the Fifth Amendment against Federal Defendants United States, the DOJ, Lynch, the FBI, Comey, AFT, Brandon, NICS[10], Lombardo, Wysopal, and Federal John Does 1-5. (Dkt. No. 1 at at ¶¶ 3-4, 23-32.) With the exception of Defendants Lombardo and Wysopal, the Federal Defendants have all been sued solely in their official capacity. As with the State Defendants, Plaintiff's complaint is devoid of specific factual allegations of wrongdoing by any of the Federal Defendants. As noted above, the complaint includes only general allegations regarding the authority and responsibilities of the Federal Defendants with respect to the interpretation and enforcement of the Federal Gun Control Act ("GCA"), 18 U.S.C. § 921, *et seq*. *Id*.

### 1. Plaintiff's Official Capacity Claims for Money Damages Under *Bivens*

In *Bivens*, the Supreme Court authorized lawsuits for money damages against federal officials in their individual capacities for the intentional deprivation of constitutional rights.

---

[10] Plaintiff concedes that NICS is not an entity but rather a computerized system operated by the FBI which contains information to be checked by firearms sellers. (Dkt. No. 1 at ¶ 30.)

*Bivens*, 403 U.S. 388.  *Bivens* money damages claims may not be brought against the United

States, federal agencies, or federal agents in their official capacities.  *See FDIC v. Meyer*, 510

U.S. 471, 484-86 (1994) (confirming that under *Bivens*, a "direct action against the Government

[is] not available," and further declining to recognize a "*Bivens*-type cause of action directly

against a federal agency"); *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("A]n official

capacity suit is, in all respects other than name, to be treated as a suit against the entity);

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (A *Bivens* action

"must be brought against the federal officers involved in their individual capacities.  Under the

doctrine of sovereign immunity, an action for damages will not lie against the United States

absent consent.  Because an action against a federal agency or federal officers in their official

capacities is essentially a suit against the United States, such suits are barred under the doctrine

of sovereign immunity, unless such immunity is waived.") (citations omitted).

Therefore, as to Plaintiff's *Bivens* claims against the United States, DOH, FBI, ATF,

NICS, Lynch, Comey, Brandon, the federal John Does, and Lombardo and Wysopal in their

official capacities, the Court recommends that they be dismissed with prejudice on sovereign

immunity grounds.[11]

2.      Individual Capacity Claims for Money Damages Against Defendants
        Lombardo and Wysopal

Unlike the other Federal Defendants, Lombardo and Wysopal are being sued in both their

individual and official capacities.  *Id*. at ¶¶ 31-32.  To establish a *Bivens* claim, a plaintiff must

---

[11]  Unless Plaintiff can allege facts plausibly showing that Lynch, Comey, and Brandon
actively participated in the constitutional violations alleged by Plaintiff, amendment of his
complaint to assert his *Bivens* claims against them in their individual capacities would be futile.
*See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

plausibly allege that the individual defendant actively participated in the alleged constitutional violation. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). The complaint does not include a single allegation showing personal involvement by either Lombardo or Wysopal in the alleged violation of Plaintiff's constitutional rights. Therefore, the Court recommends the dismissal without prejudice of Plaintiff's *Bivens* claim against Defendants Lombardo and Wysopal for failure to state a claim.[12]

**F.      Plaintiff's Challenge to the Constitutionality of 18 U.S.C. § 922(g)(4)
        and to the Inclusion Therein of an Involuntary Commitment under MHL
        § 9.27**

Plaintiff is challenging the constitutionality of § 922(g)(4) of the GCA. 18 U.S.C. § 921 *et seq*. More specifically, Plaintiff is seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that § 922(g)(4) violates his constitutional right to bear arms under the Second Amendment and his rights to equal protection and due process under the Fifth Amendment.[13]  (Dkt. No. 1 at ¶¶ 2-3.)  Plaintiff also seeks a declaration

---

[12]  Although not an issue to be determined on this initial review, because both Lombardo and Wysopal work in the Tampa, Florida FBI Office, this court may well have no personal jurisdiction over them. Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits. Therefore, in the event Plaintiff is granted leave to amend his complaint against Lombardo and Wysopal, he would be well advised to consider whether personal jurisdiction could be asserted over them in the Northern District of New York under N.Y. CPLR § 302, and whether his claims against them are properly venued in the Northern District of New York.

[13]  In *U.S. v. One (1) Vyatskie Polyany Mach. Bldg. Plant "MOLOT" VEPR Rifle*, 473 F. Supp. 2d 374, 377 (E.D.N.Y. 2007), the court rejected a claim that Section 922(g)(4) violated the Equal Protection Clause, finding that the Congressional intent in enacting the GCA to keep firearms away from persons considered potentially dangerous constituted a rational basis to prohibit the possession of firearms by individuals who have been committed to mental health institutions. The Court finds no basis for concluding otherwise. As to Plaintiff's Fifth Amendment due process claim, § 922(g)(4), does not set forth a required procedure for involuntary commitment but rather relies upon the state procedures for commitment. As pointed out by the Second Circuit in *U.S. v. Waters*, 23 F.3d 29, 32 (2d Cir. 1994), the involuntary

that § 922(g)(4) does not apply to involuntary commitments under MHL § 9.27.  *Id*. at ¶ 6.  In

addition, Plaintiff is seeking relief against the United States under 18 U.S.C. § 925A , which

allows a person denied a firearm under § 922(s) or (t), who is not prohibited from receipt of a

firearm pursuant to § 922(g) to seek relief.

The GCA imposes restrictions on the possession of firearms.  In *Huddleston v. United*

*States*, 415 U.S. 814, 824 (1974), the Supreme Court explained that "[t]he principal purpose of

the federal gun control legislation . . . was to curb crime by keeping 'firearms out of the hands of

those not legally entitled to possess them because of age, criminal background, or

incompetency.'" (citation omitted).  Section 922(g)(4) makes it unlawful for any person "who has

been committed to a mental institution" to, *inter alia*, "receive any firearm or ammunition which

has been shipped or transported in interstate or foreign commerce."

Plaintiff claims that the provision violates his right to bear arms under the Second

Amendment.  However, in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the

Supreme Court acknowledged that the right to bear arms is limited and made it clear that nothing

in its opinion recognizing a right to bear arms under the Second Amendment "should be taken to

cast doubt on longstanding prohibitions on the possession of firearms by . . . the mentally ill."

*See also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller*

that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on

the possession of firearms by felons and the mentally ill.'") (quoting *Heller*, 554 U.S. at 626);

---

commitment scheme under MHL § 9.27 and § 9.31, which provides for notice of the right to a
judicial hearing upon request for an involuntarily committed individual, withstood a challenge
that it was facially unconstitutional on procedural due process grounds in *Project Release*, 722
F.2d at 971-81.

*Petramala v. United States Dept. of Justice*, 481 F. App'x 395, 396 (9th Cir. 2012) (relying on

*Heller* in determining that § 922(g)(4) imposed constitutionally permissible limits on the right to

bear arms under the Second Amendment); *U.S. v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010)

(noting that in *Heller* and *McDonald*, "the [Supreme] Court endorsed the exclusion of the

mentally ill from firearm possession as presumptively valid.").

With regard to Plaintiff's claim that § 922(g)(4) does not apply to involuntary

commitments under MHL § 9.27, the law is clear that whether an individual was "committed to a

mental institution" for purposes of § 922(g)(4) is a question of federal law. *U.S. v. Waters*, 23

F.3d 29, 31 (2d Cir. 1994). In *Waters*, the Second Circuit held that the involuntary admissions

procedures under MHL § 9.27 do constitute a "commitment" within the meaning of § 922(g)(4).

The Court noted in reaching that conclusion that "[t]he federal gun control statute is designed to

prohibit the ownership of firearms not only by individuals who have already committed

dangerous acts, but also by those with a potential for violence as well. . . . A perusal of the

legislative history of the statute indicates that Congress would broadly apply the prohibition

against ownership of firearms by 'mentally unstable' or 'irresponsible persons.'" *Id*. at 35.

The Second Circuit found in *Waters* that "§ 9.27 permit[ted] only the involuntary

confinement of dangerous individuals who cannot survive in the community." *Id*. (citing *Project

Release*, 722 F.2d at 973-74). The Court noted that "Congress made no exception for subsequent

curative events," and that several federal courts had held that the statutory provisions of the GCA

"regarding possession of firearms apply to persons who have been committed to mental health

facilities and are later released or found incompetent." *Id*. *See, e.g., Redford v. United States

Dep't of Alcohol, Tobacco and Firearms*, 691 F.2d 471, 473 (10th Cir. 1982) (the prohibition of

the GCA against those adjudicated mentally incompetent "provides no exceptions for people who have regained their competency or sanity or who have been released from confinement.").

In light of (1) the Supreme Court's assurances in *Heller* and *McDonald* that the Court did not intend to cast doubt on longstanding regulatory measures prohibiting the possession of firearms by felons and the mentally ill; (2) the rational basis for keeping firearms away from persons considered potentially dangerous; and (3) the Second Circuit determination in *Waters* that involuntary commitment under MHL § 9.27, with "its attendant requirements of notice and judicial proceedings," constitutes commitment to a mental institution under § 922(g)(4), the Court finds that Plaintiff has failed to state a claim for a declaration that § 922(g)(4) violates his constitutional rights under the Second and Fifth Amendments or for relief under 18 U.S.C. § 925A.

### G. Plaintiff's State Law Tort Claims Against the Federal Defendants

As with the St. Joseph's and State Defendants, Plaintiff has asserted a large number of what appear to be largely frivolous state law torts against the Federal Defendants. Under the Federal Tort Claim Act ("FTCA"), a plaintiff's exclusive remedy for nonconstitutional torts committed by federal employees in their official capacity and federal agencies is a lawsuit against the United States. *See* 28 U.S.C. §§ 1346(b), 2679(b)(1); *Salmon v. Schwartz*, 948 F.2d 1131, 1141 (10th Cir. 1991). As noted above, with the exception of Lombardo and Wysopal, against whom no factual allegations supporting Plaintiff's tort claims have been asserted, all of the individual Federal Defendants have been sued in their official capacities only. Therefore, the Court recommends that Plaintiff's state law tort claims be dismissed with prejudice as against all of the Federal agencies and the individual Federal Defendants sued in their official capacities

under the immunity provided by 28 U.S.C. §§ 1346(b), 2679(b)(1). Inasmuch as Plaintiff has failed to allege facts showing diversity jurisdiction over his state law tort claims against Lombardo and Wysopal in their individual capacities, the Court recommends that those claims be dismissed for lack of subject matter jurisdiction.

Before an action can be commenced against the United States under the FTCA, a claimant is required to exhaust administrative remedies by presenting claims to the appropriate agency. *See* 28 U.S.C. § 2675. Plaintiff has not alleged exhaustion, and the Court therefore recommends dismissal of the state law tort claims against the United States without prejudice.

## V.    SUMMARY

### A.    St. Joseph's Defendants

Because the St. Joseph's Defendants are private actors not acting under color of state law with respect to Plaintiff's § 1983 claims against them, the Court recommends that Plaintiff's § 1983 claims against the St. Joseph's Defendants be dismissed with prejudice. The Court recommends dismissal of Plaintiff's state law tort claims against the St. Joseph's Defendants for lack of subject matter jurisdiction and further recommends that the dismissal be without prejudice.

### B.    State Defendants

Plaintiff has sued the OMH, NYDCJS, and the Defendant State officials solely in their official capacities. The Court has recommended dismissal with prejudice of Plaintiff's § 1983 claims. Given the Second Circuit determination in *Project Release*, 722 F.3d at 971, that MHL § 9.27 is facially constitutional, the State Defendants' lack of involvement in Plaintiff's involuntary commitment by the St. Joseph's Defendants, and the absence of any unconstitutional

application of MHL § 9.27 on the State Defendants' part, the Court concludes that the deficiencies in Plaintiff's § 1983 claim are substantive and cannot be corrected by a better pleading. Therefore, the Court recommends dismissal of Plaintiff's § 1983 claim with prejudice. Because Plaintiff's state law claims against the State Defendants are barred by the Eleventh Amendment, the Court also recommends that they be dismissed with prejudice.

### C. Federal Defendants

Because *Bivens* claims against the United States, DOJ, FBI, AFT, NICS, Lynch, Comey, and Brandon are asserted against them solely in their official capacities and thus are barred under the doctrine of sovereign immunity, the Court recommends that Plaintiffs' *Bivens* claims against those Defendants be dismissed with prejudice. The Court also recommends that the *Bivens* claims against Lombardo and Wysopal in their official capacities be dismissed with prejudice.

Although the Plaintiff has asserted *Bivens* claims against Federal Defendants Lombardo and Wysopal in their individual capacities, the complaint is devoid of factual allegations as to the basis for the claims. Therefore, the Court recommends that the *Bivens* claims against those Defendants be dismissed for failure to state a claim. Because the complaint has given no hint of the basis, if any, for Plaintiff's *Bivens* claim against Lombardo and Wysopal, the Court cannot assess with certainty whether given the opportunity to amend, Plaintiff could state a *Bivens* claim. Thus, the Court recommends that the dismissal be without prejudice, and that Plaintiff be granted leave to amend as against Lombardo and Wysopal in the event he is able to assert facts supporting a *Bivens* claim, showing some basis for personal jurisdiction in the Northern District

of New York, and establishing that venue would be proper in the District.[14]

The Court has recommended dismissal of Plaintiff's claims against the Federal Defendants challenging the constitutionality of 18 U.S.C. § 922(g)(4) under the Second and Fifth Amendments, as well as his claim that involuntary commitment under MHL § 9.27 does not fall within the federal provision for failure to state a claim. The Court further recommends that the dismissal be with prejudice in that the Court finds, based upon Supreme Court and Second Circuit precedent cited herein, that the deficiencies in Plaintiff's claims are substantive and cannot be corrected by a better pleading.

The Court has found that the exclusive remedy for Plaintiff's state law claims against the federal agencies and federal officials and employees acting in their official capacities is an action against the United States under the FTCA. Therefore, the Court recommends that Plaintiff's state law claims be dismissed with prejudice against all of the Federal Defendants except for the United States and Lombardo and Wysopal in their individual capacities. As to the United States, the Court recommends that the claims be dismissed for failure to exhaust.[15] The Court further recommends that the state law tort claims against Lombardo and Wysopal in their individual capacities be dismissed for lack of subject matter jurisdiction.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's IFP Application, as corrected (Dkt. Nos. 2 and 4), be

---

[14] Plaintiff should also be directed to keep in mind that he will not be able to obtain diversity jurisdiction over his state law claims against the St. Joseph's Defendants if Lombardo and Wysopal are residents of Florida, as is Plaintiff, and are included as defendants in the action.

[15] The Court also notes that Plaintiff's complaint is devoid of factual allegations stating a claim against any of the Federal Defendants on any of his state law claims.

**GRANTED** solely for purposes of this initial review; and it is

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) **BE DISMISSED IN ITS ENTIRETY** on initial review under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); and it is further

**RECOMMENDED** that the following claims **BE DISMISSED WITH PREJUDICE**: (1) Plaintiff's § 1983 claim against St. Joseph's Defendants, St. Joseph's Hospital Health Center, Briscoe, O'Connor, French, Levine, Tremiti, Roman, Spunelka, Constantine, Feldman, Rybak, Cate, Ruscitto, Seifter, Price, Welch, Gilbert, and John Does 1-5 ; (2) Plaintiff's § 1983 and state law claims against State Defendants OMH, NYDCJS, Sullivan, Pepper, Green, and Schneiderman; (3) Plaintiff's *Bivens* claims against Federal Defendants the United States, DOJ, FBI, ATF, Lynch, Comey, Brandon, NCIS, the Federal John Does 1-5 and Lombardo and Wysopal in their official capacities; (4) Plaintiff's claim against all of the Federal Defendants that 18 U.S.C. § 922(g)(4) violates his constitutional rights under the Second and Fifth Amendments and that MHL § 9.27 does not fall within § 922(g)(4); and (5) Plaintiff's state law claims against all Federal Defendants with the exception of the United States and Defendants Lombardo and Wysopal sued in their individual capacities; and it is further

**RECOMMENDED** that the following claims **BE DISMISSED WITHOUT PREJUDICE**: (1) Plaintiff's state law claims against the St. Joseph's Defendants, St. Joseph's Hospital Health Center, Briscoe, O'Connor, French, Levine, Tremiti, Roman, Spunelka, Constantine, Feldman, Rybak, Cate, Ruscitto, Seifter, Price, Welch, Gilbert, and John Does 1-5 for lack of subject matter jurisdiction; (2) Plaintiff's *Bivens* claims against Federal Defendants Lombardo and Wysopal in their individual capacities for failure to state a claim; (3) Plaintiff's state law claims against the United States for failure to exhaust under the FTCA; and (4)

Plaintiff's state law claims against Lombardo and Wysopal for lack of subject matter jurisdiction; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: November 30 , 2015
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

KeyCite Blue Flag – Appeal Notification

**Appeal Filed by** ANDERSEN v. NORTH SHORE LONG ISLAND JEWISH, 2nd Cir., April 23, 2015

2015 WL 1443254
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Lauren ANDERSEN, Plaintiff,

v.

NORTH SHORE LONG ISLAND JEWISH
HEALTHCARE SYSTEM'S ZUCKER
HILLSIDE HOSPITAL, et al., Defendants.

No. 12–CV–1049 (JFB)(ETB).
|
Signed March 26, 2015.

**Attorneys and Law Firms**

Kevin T. Mulhearn, Orangeburg, NY, for Plaintiff.

Jonathan B. Bruno, Alex Nathan Niederman, James F. Horton, Kaufman, Borgeest & Ryan LLP, John Thomas Seybert, Sedgwick LLP, New York, NY, for Defendants.

## ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Before the Court is a Report and Recommendation ("R & R") from Magistrate Judge Lindsay, advising the Court to grant the following defendants' motions to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b) (6): (1) North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital, Joseph M. Schulman, Dr. Alan J. Mendelowitz, Dr. Paul Pankal, Dr. Lyudmila Karlin, Dr. Harsimran Brar, Dr. Lauren Hanna, Nurse Catherine Ames, Nurse Soosamma Kompancaril, Nurse Abraham Lopez, and Psychologist Shveta Mittal (collectively, the "Hillside Defendants"); (2) United Health Group, Inc. ("United"); and (3) the City of New York. For the reasons set forth below, the Court adopts the thorough and well-reasoned R & R in its entirety, and dismisses the plaintiff's claims against those defendants with prejudice.

## I. PROCEDURAL HISTORY

On March 2, 2012, plaintiff filed a complaint against North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital ("Hospital") and numerous individual defendants, bringing various claims arising out of her alleged involuntary admission to the Hospital on June 12, 2011 and commitment for a period of eighteen days. Plaintiff has since amended the complaint four times.

Plaintiff filed her Third Amended Complaint on March 29, 2013. On June 21, 2013, plaintiff filed a motion to withdraw the Third Amended Complaint and substitute a revised Third Amended Complaint. Defendants filed motions to dismiss the Third Amended Complaint, and this Court referred those motions to Magistrate Judge Lindsay. By R & R issued on February 12, 2014, Judge Lindsay recommended that defendants' motions be granted and plaintiff's motion for leave to amend her complaint be denied. (Docket Entry 168.) Plaintiff retained counsel shortly thereafter and counsel conveyed to the Court that plaintiff would not oppose adopting the R & R if plaintiff were granted leave to amend the complaint. By Order dated March 13, 2014, this Court adopted the R & R and granted the defendants' motions to dismiss, but also granted plaintiff leave to amend. (Docket Entry 174.)

Plaintiff filed her Fourth Amended Complaint on April 14, 2014. (Docket Entry 176.) In the Complaint, plaintiff continues to assert claims against the Hillside Defendants, but dropped the New York State parties and Michael Bloomberg as defendants, and added the City of New York and United as defendants. Hillside Defendants and the City of New York separately moved to dismiss the Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on May 9, 2014. United moved to dismiss on August 8, 2014. (Docket Entries 179, 183, and 195.) By order dated September 30, 2014, this Court referred the motions to dismiss to Magistrate Judge Lindsay for a R & R. (Docket Entry 199.)

On January 12, 2015, Magistrate Judge Lindsay issued an R & R, recommending that all of the motions to dismiss be granted. (R & R, dated January 12, 2015.) The R & R further instructed that any objections to the R & R be submitted within fourteen (14) days of service of the R & R. (*Id.* at 27.) Plaintiff filed her objections to the R & R on January 26, 2015. All defendants filed responses to the plaintiff's objections: the City of New York on January 30, 2015; the Hillside

Defendants on February 9, 2015; and United on February 9, 2015. (Docket Entries 203–05.)

## II. STANDARD OF REVIEW

**\*2** A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988). As to those portions of a report to which no "specific written objections" are made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). When a party submits a timely objection to a report and recommendation, the district judge will review the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed.R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.").

## III. ANALYSIS

### A. MAGISTRATE JUDGE LINDSAY'S R & R

In her R & R, Magistrate Judge Lindsay recommends that the Court grant the Hillside Defendants, the City of New York, and United's motions for dismissal under Federal Rule of Civil Procedure 12(b)(6). Specifically, for the Hillside Defendants, Magistrate Judge Lindsay finds dismissal of all claims warranted on the following grounds: (1) plaintiff fails to allege requisite state action by the private defendants to support her 42 U.S.C. § 1983 claim; (2) plaintiff did not plead sufficient facts to demonstrate a conspiracy between the Hillside Defendants and the Port Authority Police and EMS, or to suggest that defendants were motivated by racial or other class-based animus to

support her claim under 42 U.S.C. § 1985 (and beyond that, the claim is likely waived because plaintiff neglected to address it in her opposition papers); (3) plaintiff fails to establish a plausible claim of discrimination based upon her psychiatric and physical disabilities to support her claims under both Title III of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act; (4) plaintiff's Health Insurance Portability and Accountability Act ("HIPAA") claims should be dismissed because they include the same verbatim allegations that were dismissed in the Third Amended Complaint, and plaintiff has conceded that there is no private right of action under HIPAA; and (5) the Court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. (R & R, dated January 12, 2015, at 7–23.)

**\*3** Magistrate Judge Lindsay recommends dismissal of the Section 1983 claim against United, on the grounds that plaintiff fails to plead sufficient facts to demonstrate state action by United, or a conspiracy between United and a state actor, especially given that the Magistrate Judge Lindsay already concluded that were no allegations in the complaint plausibly suggesting that Hillside Defendants were state actors. Accordingly, having recommended dismissal of the federal claims against United, Judge Lindsay advised the Court to decline to exercise supplemental jurisdiction over the state law claims against United. (*Id.* at 24–25.)

Finally, Magistrate Judge Lindsay recommends that the Court dismiss the plaintiff's Section 1983 *Monell* claim against the City of New York, which alleges that members of the New York City Police Department failed to investigate her alleged mistreatment while at the Hospital. Judge Lindsay found that plaintiff set forth no facts supporting a plausible municipal policy, custom or usage that violated her constitutional rights. (*Id.* at 26–27.)

### B. PLAINTIFF'S OBJECTIONS

Plaintiff filed timely objections to the R & R on the grounds that Magistrate Judge Lindsay "erred in finding that Plaintiff failed to allege the requisite 'state action' and recommending that her 42 U.S .C. § 1983, Title II of the ADA and § 504 of the Rehabilitation Act claims be dismissed."(Objections, dated January 26, 2015, at 2.) Notably, plaintiff's objections only address Magistrate Judge Lindsay's recommendations regarding those two claims against the Hillside Defendants. Plaintiff files no objections with respect to the portions of the

R & R that deal with the other claims against the Hillside Defendants, or the claims against United and the City of New York. In any event, the Court has conducted *de novo* review of the entire R & R and adopts the R & R in its entirety.

#### 1. Section 1983 Claim against Hillside Defendants

With respect to her Section 1983 claim against the Hillside Defendants, plaintiff objects to Magistrate Judge Lindsay's finding that she failed to plead sufficient facts to plausibly allege that the Hillside Defendants are state actors. In large part, plaintiff repeats the arguments set forth in her briefing papers, maintaining that the Hillside Defendants are state actors because they assumed a public function by "determining whether Plaintiff should be involuntarily committed and forcibly medicated"—when she alleges she was not a threat to herself or others—without providing her with a State-supervised judicial hearing. (Objections, dated January 26, 2015, at 9.) She also claims that Magistrate Judge Lindsay did not give sufficient weight to New York case *Rivers v. Katz,* 67 N.Y.2d 485, 504 N.Y.S.2d 74, 495 N.E.2d 337 (1986), and misconstrued the relevance of *Doe v. Rosenberg,* 166 F.3d 507 (2d Cir.1999).

Having reviewed plaintiffs objections, the relevant law, and the R & R, the Court agrees with Magistrate Judge Lindsay's conclusion that "involuntary confinement has traditionally been a private remedy and thus is not a public function ... [and that plaintiff has made] ... no allegations in [this case] to justify bringing this action."(R & R, dated January 12, 2015, at 13.) Furthermore, as Magistrate Judge Lindsay points out, even if the plaintiff's allegations were true (namely, "that the Hospital improperly committed her because the requirements of New York's Mental Hygiene Law—that a doctor certify that Plaintiff is a danger to herself or others—were not met in this case"), plaintiff still fails to allege "how this transforms the Hospital's private conduct in involuntarily committing her ... to a function traditionally performed by the state."(*Id.* at 13–14). As such, the Court fully adopts Magistrate Judge Lindsay's recommendation regarding the plaintiff's Section 1983 claim against the Hillside Defendants.

#### 2. ADA and Rehabilitation Act Claims against Hillside Defendants

**\*4** Plaintiff also objects to Magistrate Judge Lindsay's findings with respect to her claims under Title III of the ADA

and Section 504 of the Rehabilitation Act. Plaintiff asserts that the Hospital's "refusal to provide accommodations for Plaintiff's treatment request (access to emergency services to evaluation her back for potential injury) was based on Plaintiff's alleged mental illness."(Objections, dated January 26, 2015, at 14.) Plaintiff disputes Judge Lindsay's conclusion that "plaintiff fails to allege that she was treated differently *because of* her alleged disability" and that her allegations regarding "the adequacy of the services she received ... are insufficient to state a claim for discrimination under either statute."(R & R, dated January 12, 2015, at 20.) Plaintiff maintains that the Hillside Defendants' "denial of reasonable inquiry into Plaintiff's valid injury, accommodations, without any demonstration of genuine concern, was due to the fact that Hospital personnel assumed Plaintiff, because of her mental [illness], was fabricating the complaint" and "simply because they tend to treat involuntarily committed patients as less deserving of quality care than voluntary and medical ward patients."(Objections, dated January 26, 2015, at 16.)

However, upon review, the Court agrees with Judge Lindsay's finding that plaintiff fails to "provide any specific allegations in the Fourth Amended Complaint that would permit a plausible inference that Plaintiff has suffered from disability discrimination ."(R & R, dated January 12, 2015, at 20.) Though plaintiff asserts that the Hillside Defendants "sterotyp[ed] Plaintiff as not credible based on her alleged mental illness[ ]" and as a result "den [ied] her request for reasonable and necessary accommodations" (Objections, dated January 26, 2015, at 17), plaintiff fails to allege any facts indicating that she was treated differently because of any disability. As a result, plaintiff's assertions in her Fourth Amended Complaint, briefing papers, and Objections are speculative at best. The Court also notes that plaintiff's disability claims were copied nearly verbatim from those asserted in the Third Amended Complaint, which this Court previously dismissed for failing to establish a plausible claim of discrimination. (Docket Entry 168.)

The Court notes the plaintiff also objects to the R & R on the grounds that Judge Lindsay "failed to acknowledge the Complaint's allegations pertaining to discrimination against Plaintiff based on her gender, race, age, body habitus, and political views."(Objections, dated January 26, 2015, at 19.) However, similar to her disability discrimination claims, the Court finds that plaintiff also fails to make any plausible allegations demonstrating that the quality of treatment she received resulted from discrimination based on any other protective status.

Accordingly, the Court adopts Magistrate Judge Lindsay's recommendation and dismisses the plaintiff's ADA and Rehabilitation Act claims against the Hillside Defendants, because plaintiff fails to set forth a plausible claim of discrimination.

### 3. Remaining Claims

**\*5** Plaintiff does not file any objections to Magistrate Judge Lindsay's recommendations regarding the 42 U.S.C. § 1985 conspiracy claim and the other federal claims against the Hillside Defendants, the claims against United, and the claims against the City of New York, and thus *de novo* review of these claims is not required. However, the Court has conducted a *de novo* review of the full R & R in an abundance of caution and HEREBY ADOPTS the well-reasoned and thorough R & R in its entirety with respect to these remaining claims.

### C. LEAVE TO REPLEAD

Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires ."Fed.R.Civ.P. 15(a). Thus, in dismissing plaintiff's claims, the Court has considered whether to dismiss with or without prejudice. However, as stated *supra*, the Court declines to provide plaintiff with an opportunity to re-plead and dismisses the claims with prejudice for two reasons.

First, plaintiff has not requested an opportunity to re-plead, and has failed to explain how any amendment could possibly state a plausible legal claim. Thus, the Court declines to grant leave to re-plead. *See, e.g., Ackermann v. Doyle,* 43 F.Supp.2d 265, 275 (E.D.N.Y.1999) ("[T]he Court is unable to discern a viable cause of action from the complaint, and the plaintiff did not request leave to replead. The Court declines to *sua sponte* afford the plaintiff leave to amend on the ground of futility. In the Court's view, granting leave to amend would be unproductive and dismissal with prejudice is appropriate.")

Second, plaintiff has been given ample opportunity to allege a claim—in fact, this is the plaintiff's Fourth Amended Complaint—and has failed to do so. In the March 13, 2014 Memorandum and Order, dismissing the Third Amended Complaint, the Court identified various pleading defects, but granted plaintiff one more opportunity to amend given that

plaintiff was newly represented and her counsel "expressed his intention to narrow the complaint and bring the amended complaint against fewer defendants."(Docket Entry 174 at 2.) However, in the Fourth Amended Complaint filed after the Court's decision, plaintiff failed to cure those pleading defects, and repeated certain claims contained in the prior complaint verbatim. Under these circumstances, the Court declines to grant plaintiff yet another opportunity. *See De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 72 (2d Cir.1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim" (*citing Armstrong v. McAlpin,* 699 F.2d 79, 93–94 (2d Cir.1983)).

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Court adopts the R & R in its entirety. Accordingly, the defendants' motions to dismiss the Fourth Amended Complaint are granted. Plaintiff's federal claims against the Hillside Defendants, United, and the City of New York are dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006). The Clerk of the Court shall enter judgment accordingly and close the case.

**\*6** SO ORDERED.

LAUREN ANDERSEN, Plaintiff,

-against-

THE NORTH SHORE LONG ISLAND JEWISH HEALTHCARE SYSTEM's ZUCKER HILLSIDE HOSPITAL, JOSEPH M. SCHULMAN, DR. ALAN J. MENDELOWITZ, DR. PAUL PANKAL, DR. LYUDMILA KARLIN, DR. HARSIMRAN BRAR, DR, LAUREN HANNA, NURSE CATHERINE AMES, NURSE SOOSAMMA KOMPANCARCIL, NURSE ABRAHAM LOPEZ, PSYCHOLOGIST SHVETA MITTAL, JOHN and JANE DOES # 1–10, the CITY OF NEW YORK, comprising the New York Police Department "NYPD" and the Fire Department of New York's Emergency Medical Services "FDNY–EMS", and individual employees: NYPD Detective Michael T. O'BRIEN, and NYPD Lieutenant

Antoinette PETRUZZELLO, and Joh Doe FDNY–EMS technician known as "Frank 50" and THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and John Doe officer known as "P.O. CORWIN 2524", and "T.C. CARBANARO", and Jane Doe officer known as "LIANTONIO", AND Lt. Michelle SERRANO, and UNITEDHEALTH GROUP, INC., Defendants.

## REPORT AND RECOMMENDATION

LINDSAY, United States Magistrate Judge.

This action arises out of the involuntary confinement of plaintiff Lauren Andersen ("Plaintiff") at North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital (the "Hospital"). Before the Court, on referral from District Judge Bianco, are the motions to dismiss by defendants (1) the Hospital, Joseph M. Schulman, Dr. Alan J. Mendelowitz, Dr. Paul Pankal, Dr. Lyudmila Karlin, Dr. Harsimran Brar, Dr. Lauren Hanna, Nurse Catherine Ames, Nurse Soosamma Kompancarcil, Nurse Abraham Lopez, and Psychologist Shveta Mittal (collectively, the "Hillside Defendants"); (2) United Health Group, Inc. ("United"); and (3) the City of New York, all pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court respectfully reports and recommends that the defendants' motions be granted in their entirety.

## I. BACKGROUND

### A. Factual Background

The Court presumes familiarity with the underlying facts and procedural history of this case, which are set forth in great detail in Judge Boyle's Report and Recommendation dated January 23, 2013, and this Court's Report and Recommendation dated February 12, 2014. Accordingly, the Court will summarize only those facts relevant to the pending motions.

Plaintiff identifies herself as a 50–year old woman with psychiatric disabilities stemming from a rape experience, a problematic medical history, physical disabilities from a proctolectomy and spine surgery, severe depression, and "a history of self-injury ... having attempted suicide via an overdose in 2001."Fourth Am. Compl. ¶¶ 1–2. This action arises out of Plaintiff's admission to the Hospital on June 12, 2011 and her involuntary commitment to the Hospital for a period of eighteen days. *Id.* ¶ 6.

Briefly, Plaintiff's hospitalization was precipitated by her attempt to purchase an airline ticket to the United Kingdom without a passport from British Airways at John F. Kennedy International Airport on June 12, 2011.*Id.* When British Airways refused to permit Plaintiff to travel without a passport, Plaintiff requested to speak to the press. *Id.* ¶ 7. British Airways called the Port Authority Police for assistance who informed Plaintiff she could either return to her home or go to the Hospital. *Id.* Plaintiff states that the officers told her that if she went to the Hospital, she could be cleared to travel and would be able to speak to the press, so she agreed to go to the hospital voluntarily. *Id* . EMS transported Plaintiff to the Hospital for evaluation, accompanied by the Port Authority Police. *Id.* ¶ 8.

 **\*7**  Upon her arrival at the psychiatric emergency room at the Hospital, Plaintiff was denied the opportunity to speak with the press and "one or more of the [Port Authority Police] officers had conversations with people believed to be nurses and doctors employed by HILLSIDE, openly collaborating with them about further detention of the Plaintiff."*Id.* ¶ 9. Despite her request to be treated as an out-patient, Plaintiff was involuntarily admitted as an in-patient several hours later by Dr. Harsimran Brar. *Id.* ¶¶ 10–14. Plaintiff alleges that she was admitted in violation of New York Mental Hygiene Law § 9.39—which requires a finding that a patient is either a danger to herself or to others—because Plaintiff did not meet either criteria. *Id.* ¶ 15. Plaintiff further alleges that she was never served with written notice of her status, as required pursuant to this law, *id.* ¶ 17, and that the decision by the Hospital to retain her after 48 hours "in the exercise of medical judgment on the part of all the defendant psychiatrists" constituted negligence and medical malpractice, *id* . ¶ 21.

On June 14, 2011, Plaintiff tried to escape the Hospital by climbing a chain link fence, but Hospital employees pulled her off the fence and forced her indoors. *Id.* ¶¶ 66–67. Pursuant to Hospital policy, Hospital staff insisted that Plaintiff take off her clothing and put on a gown. *Id.* ¶ 67. When staff members refused to provide Plaintiff with a copy of the policy, Plaintiff refused to disrobe and was thereafter forcibly stripped her jeans and locked in a cell. *Id.* ¶¶ 69–70, 72. When she was eventually let out of the cell, she was forced to walk down the hallway in her panties to her room, where she directed to change into a gown in the presence of Hospital staff. *Id.* ¶ 74.

During her 18–day stay, Plaintiff repeatedly requested to be discharged, but her requests were denied. *Id.* ¶ 22. In addition, the Hospital "ignored all of her complaints and requests for hearings."*Id.* ¶ 26; *see also id.* ¶ 25. "In desperation," Plaintiff contacted defendant United to try to cancel her medical coverage so the "Hospital would be financially motivated to discharge her."*Id.* ¶ 22. United "told her she would have to personally visit their office to do so, and the Hospital would not allow her to go."*Id.* ¶ 22. As a result, the Hospital detained Plaintiff the maximum period for which United agreed to pay and discharged Plaintiff on the "last reimbursable day." *Id.* ¶ 24.

At some point during her hospitalization, Plaintiff contacted Mental Hygiene Legal Service ("MHLS") by a payphone. *Id.* ¶ 27. She spoke with an "Andrew Murray" at MHLS who told her that attorney Brian Wellington would meet with her. *Id.* On June 29, 2011, attorney Wellington met with Plaintiff but "by that time it was too late for Wellington to do anything to ameliorate the situation because the damage had been done in the previous seventeen days, and the staff scheduled the Plaintiff to be discharged the next day."*Id.* ¶¶ 31–32. On June 30, 2011, Plaintiff was discharged from the Hospital. *Id.* ¶ 120.

**B. Procedural Background**

 **\*8** Plaintiff, appearing *pro se,* commenced this action on March 2, 2012, and filed an Amended Complaint on March 12, 2012. DE 1, 6. On April 12, 2012, Plaintiff moved for leave to file a Second Amended Complaint. DE 16. The district court granted Plaintiff's motion without making any findings as to the merits of the amendments in light of Plaintiff's *pro se* status on April 23, 2012, and granted defendants leave to file a motion to dismiss the Second Amended Complaint. DE 19. On April 30, 2012, Plaintiff moved for leave to file a Revised Second Amended Complaint. DE 23. By Order dated May 3, 2012, the district court granted Plaintiff's motion without making any findings as to the merits of the amendments in light of Plaintiff's *pro se* status, and granted defendants leave to file a motion to dismiss the Revised Second Amended Complaint. DE 24.

On June 6, 2012, Plaintiff moved for leave to file a Third Amended Complaint, DE 39, but by Order dated June 15, 2012, the district court stayed any response to Plaintiff's June 6, 2012 motion to amend pending the Court's review of the motion to dismiss the Revised Second Amended Complaint, DE 45. The district court referred the motion

to dismiss to Magistrate Judge Boyle, and by Report and Recommendation dated January 23, 2013, Magistrate Judge Boyle recommended that defendants' motion to dismiss be granted and Plaintiff be granted leave to amend her complaint. DE 75. The district court adopted this portion of the Report and Recommendation in its entirety on March 1, 2013, dismissed the Revised Second Amended Complaint, and granted Plaintiff "an opportunity to amend her complaint one final time."DE 81.

Plaintiff filed her Third Amended Complaint on March 29, 2013. DE 87. The Third Amended Complaint was 146 pages long—comprised of 84 pages of pleading and 62 pages of exhibits—and asserted claims against the Hillside Defendants, various state defendants, and Michael Bloomberg. *Id.* On May 13, 2013, the district court gave defendants leave to file motions to dismiss the Third Amended Complaint. DE 101. On June 21, 2013, Plaintiff filed a motion to withdraw the Third Amended Complaint and substitute a new Third Amended Complaint. DE 123. Thereafter, Plaintiff requested a stay of the pending motions to dismiss until the Court ruled on Plaintiff's pending motion to file an amended complaint. DE 130. By Order dated August 1, 2013, the district court denied Plaintiff's requests, ruling that Plaintiff's motion to amend would be treated as a motion for leave to re-plead once the Court determined whether the initial Third Amended Complaint survived the motions to dismiss. DE 132. The district court referred defendants' motions to dismiss to the undersigned, and by Report and Recommendation dated February 12, 2014, this Court recommended that defendants' motions be granted and that Plaintiff's motion for leave to replead be denied. DE 168.

Thereafter, Plaintiff retained counsel. The district court held a conference on March 13, 2014, at which time Plaintiff's counsel "expressed his intention to narrow the complaint and bring the amended complaint against fewer defendants."DE 174. Counsel made clear that if Plaintiff was granted leave to amend the complaint, she had no objections to the Court adopting the Report and Recommendation in its entirety. By Order dated March 13, 2014, the district court adopted the Report and Recommendation in its entirety, granted the defendants' motions to dismiss, and denied the *pro se* motion to amend. *Id.*However, Plaintiff was granted leave to amend the complaint "in accordance with counsel for plaintiff's representations and the Court's instructions during the ... conference."*Id.*

**\*9** Plaintiff filed the Fourth Amended Complaint on April 14, 2014. DE 176. The Fourth Amended Complaint is 70 pages long, including a 1–page exhibit. *Id.* The pleading continues to assert claims against the Hillside Defendants but has dropped the state defendants and Michael Bloomberg from the lawsuit. *Id.* Instead, several new defendants have been added, including the City of New York and United. With the exception of a few paragraphs which have been omitted, and several which have been added, the Fourth Amended Complaint is a nearly verbatim copy of the Third Amended Complaint, causing this Court to again expend its resources addressing many of the same deficiencies. The Hillside Defendants, United, and the City of New York now move to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the undersigned recommends that the motions be granted. [1]

## II. STANDARD OF REVIEW

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."*Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."*Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."*Id.*"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a[d]efendant has acted unlawfully."*Id.* at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556–57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted)).

## III. DISCUSSION

### A. The Hillside Defendants

The Fourth Amended Complaint asserts five federal claims against the Hillside Defendants: (1) constitutional violations under 42 U.S.C. § 1983; (2) conspiracy under 28 U.S.C. § 1343 and 42 U.S.C. § 1985; (3) disability claims under Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.;* (4) disability claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and (5) violations under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Each claim will be addressed in turn.

### 1. 42 U.S.C. § 1983

In her Fourth Amended Complaint, Plaintiff continues to assert claims pursuant to 42 U.S.C. § 1983 premised upon alleged violations of her First, Fourth, Fourteenth, and Eighth Amendment rights. *See* Fourth Am. Compl. ¶¶ 158–170, 252–317. However, for the first time, Plaintiff now also bases her Section 1983 claim upon an alleged violation of her Second Amendment rights. *Id.* at ¶ 168. As discussed below, Plaintiff fails to state a valid Section 1983 cause of action because she has not sufficiently alleged that the Hillside Defendants —a private hospital and its employees—engaged in "state action."

**\*10** Section 1983 of Title 42 of the United States Code provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."*Filarsky v. Delia,* —— U.S. ——, ——, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under state law," and (2) that such conduct "deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."*Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (internal quotation marks and citation omitted)."The first inquiry [under Section 1983], therefore, is whether the actions alleged by the plaintiff[ ] come within the definition of under color of state law."*Garcia v. Paylock,* No. 13–CV–2868, 2014 WL 298593, at \*6 (E.D.N.Y. Jan.28, 2014) (internal

quotation marks and citation omitted). That is, the critical issue is whether Plaintiff has properly alleged that the Hillside Defendants, as private parties, were state actors when they involuntarily hospitalized her and engaged in the alleged unlawful conduct.

"A private actor may be liable under § 1983 only if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."*Sykes v. Bank of Am.,* 723 F.3d 399, 400 (2d Cir.2013) (internal quotation marks and citation omitted); *see also Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 744 (2d Cir.2003) ("The Supreme Court has recognized that an individual is acting under color of state law when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'") (quoting *Polk Cnty. v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981)). As the Second Circuit has explained:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

*Sybalski v. Indep. Group Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (per curiam) (citation omitted); *see Doe v. Harrison,* 254 F.Supp.2d 338, 342 (E.D.N.Y.2003) ("[A] private party's conduct has been recognized as constituting state action where the action is (a) the result of state compulsion, (b) public function, or (c) a joint action as a result of a close nexus between public and private actors.") (internal quotation marks and citation omitted).

**\*11** In the Court's January 23, 2013 Report and Recommendation (which was later adopted by the district court), Judge Boyle found that "[a]lthough plaintiff maintains that defendants were acting in concert with local law enforcement at the time that she was involuntarily hospitalized," Plaintiff failed to allege any facts to support her claim that defendants acted under color of state law. DE 75. Similarly, in this Court's February 12, 2014 Report and Recommendation (which was also adopted by the district

court), the undersigned found that Plaintiff had failed to plead that any of defendants' actions constituted state action. DE 168. Specifically, the Court found that Plaintiff provided no facts to support her conclusory assertions that the Port Authority Police delegated a public function to the Hospital or that there was joint action between the Hospital and the Port Authority Police to involuntarily commit Plaintiff to the Hospital's psychiatric unit. In addition, the Court found that the fact that the Hillside Defendants may have received state funding did not suffice to plead state action absent any allegation of concerted action with state officials. *Id.*

The Fourth Amended Complaint now alleges that the Hillside Defendants are state actors under all three tests. First, Plaintiff alleges that the Hillside Defendants are state actors under the compulsion test because "the hospital employees act[ed] under the compulsion of, and in concert with, the Port Authority police and FDNY–EMS to detain the Plaintiff."*Id.* ¶ 303. Second, Plaintiff alleges that the Hillside Defendants are state actors under the joint action test because the Hospital acted jointly with the Port Authority Police, who initiated the evaluation process, arranged for Plaintiff's transport to the Hospital, and received federal funding. *Id.* ¶¶ 289–307. Lastly, Plaintiff alleges that the Hillside Defendants are state actors under the public function test because the Hospital "performed a 'public function' such as to constitute state action in committing Plaintiff involuntarily and in compelling Plaintiff to take antipsychotic drugs against her will."Fourth Am. Compl. ¶ 254; *see also id.* ¶ 256 ("The civil commitment and treatment of the mentally ill is a 'public function' in New York."). For the reasons that follow, the Court finds that Plaintiff's arguments concerning state action are foreclosed by Second Circuit precedent.

In *Doe v. Rosenberg,* 996 F.Supp. 343, 351–55 (S.D.N.Y.1998), the court held that private health care professionals and a private hospital did not engage in state action under all three of these tests when they involuntarily committed Doe to the psychiatric ward of Columbia Presbyterian Medical Center. The court found that the compulsion test was not met because although New York Mental Hygiene Law granted the defendant the authority to involuntarily hospitalize and medicate plaintiff, it did not compel defendant to do so. *Id.* at 350–52. The court further held that the close nexus test was not met because the State's relationship with private hospitals was not sufficiently close; the Mental Hygiene Law merely authorizes private physicians and hospitals to commit involuntary commitments but "in no way influences the decisions to commit."*Id.* at

352–53. Lastly, the court found that the public function test was not satisfied because civil commitment by a private physician was not a "public function" that constitutes state action when performed by a private actor.*Id.* at 353–54. Rather, after an extensive review of the historical record of involuntary confinement in New York State, the court determined that civil commitment had traditionally been a private remedy. *Id.* The *Doe* decision was affirmed by the Second Circuit "for substantially the reasons set forth in the district court's comprehensive and scholarly opinion."*Doe v. Rosenberg,* 166 F.3d 507 (2d Cir.1999). Recently, the Second Circuit reaffirmed its holding in *Doe* in a new decision. *McGugan v. Aldana–Bernier,* 752 F.3d 224, 229 (2d Cir.2014) ("Here, the question is whether the forcible medication and hospitalization of McGugan by private health care providers can fairly be attributed to the state. Our resolution of this question is circumscribed by prior authority."); *see also Antwi v. Montefiore Med. Ctr.,* No. 14 Civ. 840, 2014 WL 6481996, at *5 (S.D.N.Y. Nov.18, 2014) ("[I]t is well-settled in the Second Circuit that a private hospital confining a patient under the New York [Mental Hygiene Law] is not acting under color of state law.").

**\*12** Here, as in *Doe,* Plaintiff has failed to allege state action by the Hillside Defendants. Beyond unsupported conclusory allegations, there are no allegations that the State "compelled" the Hillside Defendants to commit Plaintiff or that the decision to commit was the result of a "joint" decision between the Hillside Defendants and the State. Rather, the Fourth Amended Complaint alleges that it was the Hillside physicians who used their own discretion to commit her. The fact that the Port Authority Police "initiate[d] the evaluation process," Fourth Am. Compl. ¶ 291, consulted with a Hospital doctor before deciding to transport Plaintiff to the Hospital, *id.* ¶ 295, and accompanied Plaintiff to the Hospital, *id.* ¶ 297, does not suggest that the Port Authority Police played any role in the challenged action in this case—Plaintiff's commitment by the Hillside Defendants. *See McGugan,* 752 F.3d at 230 (rejecting plaintiff's claim that state action existed when plaintiff's involuntary hospitalization occurred after state actors transported her to private hospital where there were no allegations that "the state actors requested, much less compelled [the hospital] to voluntarily hospitalize her and Circuit could not "discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors"). Indeed, this Court has already found that the allegations of the Third Amended Complaint—which are substantially the same as the present allegations—failed to

support a claim of joint action. *See* February 12, 2014 Report and Recommendation at 31–32. Plaintiff's argument that the recent *McGugan* decision now supports her claim of state action is simply incorrect.

In addition, to the extent Plaintiff alleges that her involuntary commitment and forced medication was a public function, that argument has already been considered and rejected several times in this Circuit. *See McGugan,* 752 F.3d 224; *Hogan v. A.O. Fox Memorial Hosp.,* 346 F. App'x 627, 629 (2d Cir.2009); *Doe,* 166 F.3d 507. As stated by the district court in *Doe,*"[t]hat the State can authorize commitment through its *parens patriae* or police powers does not make it the exclusive prerogative of the State."996 F.Supp. at 356. Rather, involuntary confinement has traditionally been a private remedy and thus is not a public function. *Id.* at 355–56. There are no allegations in the present case to justify bringing this action outside of the reasoning set forth in *Doe.*In her quest to convert the Hillside Defendants into state actors, Plaintiff now argues that "[t]he Hospital, by prescribing antipsychotic medication to Plaintiff, when she was unquestionably not a danger to herself or others, ... exercised power exclusively reserved to New York in derogation of Plaintiff's rights," DE 190 at 9, and did so "without affording her the State required judicial hearing and due process of law,"*id.* at 10. Essentially, Plaintiff is alleging that the Hospital improperly committed her because the requirements of New York's Mental Hygiene Law—that a doctor certify that Plaintiff is a danger to herself or others—were not met in this case.[2] Even assuming Plaintiff's allegation are true, Plaintiff does not explain how this transforms the Hospital's private conduct in involuntarily committing her—no matter how wrongful—to a function traditionally performed by the state. *See Antwi,* 2014 WL 6481996, at *5 ("[P]rivate conduct, no matter how discriminatory or wrongful, is not controlled by § 1983 except in the limited situations where a private entity's challenged actions are fairly attributable to the state.") (internal citations and quotation marks omitted).

**\*13** Plaintiff's reliance on *Kia P. v. McIntyre,* 235 F.3d 749 (2d Cir.2000) and *Fabrikant v. French,* 691 F.3d 193 (2d Cir.2012) is wrong. As an initial matter, the Second Circuit explicitly held that neither case "casts doubt on the validity of our holding in [*Doe* ]" and that neither case was "inconsistent with [*Doe* ]." *McGugan,* 752 F.3d at 230. Moreover, both cases are distinguishable from the present action. In *Kia,* the Second Circuit held that a private hospital did not engage in state action when it refused to release an infant who tested

positive for methadone because those actions were taken by the hospital in its capacity as a private provider of medical care. 235 F.3d at 756. Once the infant obtained medical clearance, however, and the hospital continued to hold her as part of its reporting and enforcement role for the state Child Welfare Administration because of its concern about the infant's mother, the hospital did engage in state action. *Id.* at 756–57.

In *Fabrikant,* the court held that an animal rescue organization and its employees were state actors when they performed spayed and neutered seized animals without the owner's consent because the surgeries "were part of the state function of animal control delegated to the [rescue organization] by state law." 691 F.3d at 208–09 ("In operating on [plaintiff's] dogs following their seizure ... the ... defendants were not acting in a private capacity, but were exercising powers traditionally exclusively reserved to the State. Animal control is part of the state's police power.") (internal citation and quotation marks omitted). Here, in contrast to both of these decisions, it is well settled in the Second Circuit that involuntary confinement is not a public function.

Lastly, to the extent Plaintiff attempts to allege state action by claiming that the Hillside Defendants acted in concert with attorneys at MHLS who failed to "exercise [their] duty to advise the Plaintiff of her legal rights and request a hearing," Fourth Am. Compl. ¶ 308, Plaintiff's claim is unavailing. It is well settled that an attorney employed by MHLS is not a state actor pursuant to Section 1983. *Williams v. New York State Office of Mental Health,* No. 10–cv–1022, 2014 WL 1311405, at *4 (E.D.N.Y. Mar.31, 2014) (finding that attorneys employed by the Mental Hygiene Legal Services are not state actors even though MHLS is a "state-funded legal services agency under the direction of the New York State Office of Court administration") (citing *Fisk v. Letterman,* 401 F.Supp.2d 362, 378 (S.D.N.Y.2005)). The only exception to this rule is if "a court-appointed attorney conspires with a state official to violate the plaintiff's constitutional rights." *Fisk,* 401 F.Supp.2d at 378. Here, there are no such allegations.

Inasmuch as there is no basis in the Fourth Amended Complaint's factual allegations for inferring that the Hillside Defendants were state actors, Plaintiff fails to establish a Section 1983 claims against the Hillside Defendants. [3] Accordingly, the undersigned reports and

recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims pursuant to Section 1983 be granted.

## 2. 42 U.S.C. § 1985

**\*14** Plaintiff seeks damages pursuant to 28 U.S.C. § 1343, which gives federal courts original jurisdiction over conspiracy claims brought pursuant to 42 U.S.C. § 1985. Although the Fourth Amended Complaint asserts some allegations in support of a purported conspiracy between the Hillside Defendants and the Port Authority Police and EMS, Fourth Am. Compl. ¶¶ 303, 305–06, the pleading expressly deletes the Section 1985 claim previously asserted on pages 62–63 of the Third Amended Complaint. In addition, Plaintiff fails to address this claim in her opposition papers. Thus, it appears that Plaintiff has withdrawn this claim. In any event, to the extent Plaintiff is still pursuing a Section 1985 conspiracy claim, such claim would fail.

Section 1985 creates a cause of action where "two or more persons in any State of Territory conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. To maintain A § 1985 conspiracy action, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003)."[A] complaint containing only conclusory, vague, or general allegations of the conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Bod die v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997). Here, Plaintiff's allegations are wholly conclusory; she has failed to allege any facts sufficient to show the existence of a conspiracy designed to deprive her of her rights or any act taken in furtherance of such a conspiracy. Moreover, Plaintiff has failed to plead that defendants acted with racial or other class-based animus. *Britt v. Garcia,* 457 F.3d 264, 270 n. 4 (2d Cir.2006). In her opposition brief, Plaintiff asserts that the Hillside Defendants discriminated against her on the basis of race, gender and religion. DE 190 at 12. However, these allegations appear for the first time in her opposition to the instant motion and are not incorporated into her complaint. *See Shah v. Helen Hayes Hosp.,* 252 F. App'x 364, 366 (2d Cir.2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Brenner v. Brenner,* 821 F.Supp.2d 533, 538 (E.D.N.Y.2011) ("It is well-settled that in examining the sufficiency of the Complaint, the allegations

in the pleading—not the arguments advanced by counsel—control."). Even if the Court could consider these allegations, Plaintiff asserts no facts in her brief or complaint which suggest that her membership in a protected class was the basis for the alleged violation of her rights. The Court therefore recommends that any Section 1985 claims asserted against the Hillside Defendants be dismissed.

### 3. Title III of the ADA and the Rehabilitation Act

 **\*15** In Judge Boyle's January 23, 2013 Report and Recommendation, he found (and the district court adopted his findings) that Plaintiff's Revised Second Amended Complaint failed to establish a plausible claim of discrimination based upon her psychiatric and physical disabilities under both Title III of the ADA and Section 504 of the Rehabilitation Act. DE 75. Thereafter, this Court found (and the district court adopted) that the Third Amended Complaint similarly failed to allege a claim of discrimination under either statute. DE 168. Plaintiff now reasserts these claims in the Fourth Amended Complaint. Essentially, Plaintiff alleges numerous instances in which the Hillside Defendants failed to accommodate her psychological and physical disabilities and discriminated against her in violation of the ADA. With the exception of newly added paragraphs 182 and 188, however, Plaintiff's ADA and Rehabilitation claims have been copied verbatim from her Third Amended Complaint, which this Court has already found to be deficient. Paragraphs 182 and 188 allege as follows:

> The Defendants' prevention of the Plaintiff from access to emergency services to evaluate her back for potential injury after the forcible stripping incident constituted a violation of the ADA Act, because they failed to make a reasonable accommodation for her spine condition.
>
> ....
>
> The municipal and law enforcement entities are individuals equally liable under this law. PAPD's and EMS' policy or custom of working together to falsely arrest mentally disabled people, without provision for reconsideration, reasonable accommodation or waiver, violated the prohibition in Section 504 on methods of administration that have the effect of subjecting [Plaintiff] to discrimination on the basis of handicap. The NYPD's and DAs policy or custom of ignoring complaints from mental patients is also discriminatory.

Fourth Am. Compl. ¶¶ 182, 188. Even assuming that Plaintiff's spine condition constitutes a disability under the ADA, the addition of these two paragraphs fails to cure the pleading defects of the previous complaints.

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of any public place. 42 U.S.C. § 12182(a)."In order to state a claim for violation of Title III ... a plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."*Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 94–95 (2d Cir.2012).

Section 504 of the Rehabilitation Act provides in pertinent part that: "No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his [or her] handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."29 U.S.C. § 794; *see Bryant v. New York State Educ. Dept.,* 692 F.3d 202, 216 (2d Cir.2012). Section 504 is narrower than the ADA in that its provisions apply only to programs receiving federal financial assistance. *McInerney v. Rensselaer Polytechnic Inst.,* 977 F.Supp.2d 119, 125 (N.D.N.Y.2013)."To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege [1] that he or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits of or excluded from participating in a federally funded program or special service, [3] solely because of his or her disability."*Bryant,* 692 F.3d at 216. The ADA and Section 504 provide similar protections to individuals with disabilities and the merits of such claims are generally considered together. *McGugan,* 752 F.3d at 233 n. 4 (noting that claims under both statutes are generally treated identically).

 **\*16** The Court assumes for purposes of this motion, as it did with regard to the prior two motions to dismiss, that Plaintiff has satisfied the first element of both statutes, to wit, Plaintiff is disabled by virtue of her psychiatric disabilities (depression, post traumatic stress disorder caused by a history of rape, a history of self-injury and suicidal behavior) and physical disabilities (from a proctocolectomy and spine surgery). The Court further assumes, as it did before, that the defendant Hospital is a place of public

accommodation and that defendant Schulman (the Executive Director of the Hospital and a potential policy maker) and the Hospital are potentially subject to liability under the ADA. Under both statutes, however, Plaintiff must additionally show that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants by reason of [her] disabilities." [4] *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003) (citation omitted).

Even assuming the truth of Plaintiff's allegation that she was denied access to emergency services to evaluate her back for potential injury after the stripping incident, Plaintiff fails to show how the failure to accommodate was discriminatory. In other words, Plaintiff fails to allege that she was treated differently *because of* her alleged disability. Instead, she is simply challenging the adequacy of the services she received. Such allegations are insufficient to state a claim for discrimination under either statute. *See Goonewardena v. N. Shore Long Island Jewish Health Sys.,* No. 11 CV 2456, 2012 WL 7802351, at *6 (E.D.N.Y. Nov.5, 2012)* ("The Second Circuit Court of Appeals and courts within the Circuit have repeatedly held that [ADA and Rehabilitation Act] claims challenging the quality of care provided to disabled persons [are] not ... cognizable discrimination claim[s] absent an allegation that better care is provided, or more easily accessible, to the nonhandicapped"). Accordingly, having failed to provide any specific allegations in the Fourth Amended Complaint that would permit a plausible inference that Plaintiff has suffered from disability discrimination, Plaintiff's claims under the ADA and the Rehabilitation Act fail.

That is not the end of the Court's inquiry, however. In Plaintiff's opposition to the instant motion, Plaintiff raises a new theory of liability. Citing the Second Circuit's recent decision in *McGugan,* Plaintiff argues that the Hillside Defendants discriminated against her in violation of the ADA and the Rehabilitation Act by forcing hospitalization and medicating her for "reasons having no relevance to medical appropriateness," DE 190 at 13, since their own medical assessment indicated that Plaintiff did not pose a substantial risk of harming herself or others, *id.* at 16. Instead, Plaintiff argues that "the Hospital's decisions to continue Plaintiff's forced hospitalization *and* medication were motivated by considerations (monetary gain) ... that were unrelated to proper medical decision-making about Plaintiff's case."*Id.* at 15.

**\*17** Because this new theory of liability is not asserted in the actual pleading, the Court could decline to consider it on that basis alone. *See Shah,* 252 F. App'x at 366; *Brenner,* 821 F.Supp.2d at 538. Even assuming *arguendo* that such a claim had been pled, however, it would still fail as a matter of law.

In *McGugan,* the Second Circuit examined whether McGugan "was subject to 'discrimination' by reason of her disability" when, in following the state law governing civil commitment, a hospital concluded that McGugan "posed a risk of serious harm based on stereotyping persons who suffer from mental illness, rather than making a medically appropriate, individualized assessment."752 F.3d at 232. The court rejected this argument, explaining that while McGugan may have alleged medical malpractice, she had not alleged discrimination.*Id.* at 232–33. Instead, the Court explained, "a plaintiff pleads an actionable claim of discrimination in the medical treatment context under the ADA or the Rehabilitation Act if she alleges that the defendants made treatment decisions based on factors that are 'unrelated to, and thus improper to consideration of the inquiry in question."*Id.* at 234. Plaintiff latches onto this language in her brief and argues that here, the Hospital's decision to commit her violated the ADA and the Rehabilitation Act because it was based on unrelated and inappropriate factors, i.e., monetary gain. The language relied upon by Plaintiff, however, does not mean that a plaintiff pleads disability discrimination anytime it is alleged that a defendant was motivated by *any* improper considerations. To the contrary, a claim under the ADA or the Rehabilitation Act is actionable only where a plaintiff can show that she was discriminated against *based on her disability. See id.* at 232 (" '[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's *handicap* is unrelated to, and thus improper to consideration of, the services in question.'") (quoting *United States v. Univ. Hosp.,* 729 F.2d 144 (2d Cir.1984) (emphasis added)). Here, Plaintiff's purported claim that the Hospital committed her for financial reasons does not plausibly allege discrimination based upon disability. Accordingly, the undersigned reports and recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims pursuant to Title III of the ADA and Section 504 of the Rehabilitation Act be granted.

### 4. Remaining Claims Under Federal Law

Despite counsel's representation that the new pleading would narrow Plaintiff's claims, the Fourth Amended Complaint asserts the same verbatim HIPAA allegations as did the Third

Amended Complaint. *Compare* Fourth Am. Compl. ¶¶ 94–95 *with* Third Am. Compl. at 36–37. This is so despite the fact that in her opposition papers to the last motion to dismiss, Plaintiff conceded that there is no private cause of action under HIPAA and stated that she had dropped this claim. *See* DE 168 at 41; *see also Mallgren v. Burkholder,* ——F.Supp.3d ——, No. 14–CV–2189, 2014 WL 5025900, at \*4 (E.D.N.Y. Oct. 8, 2014), at \*4 ("HIPAA regulations are enforceable by the Secretary of Health and Human Services, and they do not provide a private cause of action to which individuals can enforce its provisions."). Accordingly, the undersigned reports and recommends that the Hillside Defendants' motion to dismiss Plaintiff's claims under HIPAA be granted.

**5. State Claims**

**\*18** "[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims, if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction and the complaint's federal claims are dismissed in the litigation's 'early stages.' "*Pelt v. City of New York,* No. 11–CV–5633, 2013 WL 4647500, at \*19 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks and citations omitted); *see Choe v. Fordham Univ. Sch. of Law,* 81 F.3d 319, 319 (2d Cir.1996) (holding it is clear a district court holds discretion to "decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed"); *see also* 29 U.S.C. § 1367(c) (3). Moreover, while a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state law claims."*Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (internal quotation marks and citation omitted).

Here, the Hillside Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claims. In response, Plaintiff agrees that the Court should not exercise supplemental jurisdiction over her state claims if the Court finds that there are no viable federal claims. Accordingly, in light of the recommended dismissal of all claims over which it has original jurisdiction, *see infra,* the undersigned reports and recommends that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**B. United**

The Fourth Amended Complaint adds United as a defendant, asserting that United violated (1) N.Y. General Business Law § 349 by engaging in deceptive practices in administering its mental health insurance policies, Fourth Am. Compl. ¶¶ 235–237; and (2) Section 1983 by conspiring with the Hillside Defendants to deprive Plaintiff of her constitutional rights. The Court begins with an analysis of Plaintiff's federal claim.

Plaintiff alleges that during her 18–day confinement at the Hospital, she called United to cancel her medical coverage in an effort to provide the Hospital with a motivation to discharge her. Fourth Am. Compl. ¶ 22. United, however, advised Plaintiff that it could not terminate her coverage unless she personally visited their office, but the Hospital would not let her go. *Id.* As a result, the Hospital detained Plaintiff for the maximum number of days for which United agreed to pay and discharged her on the last reimbursable day. *Id.* ¶ 24. The one paragraph alleging specific misconduct by United provides as follows:

> United[ ], by refusing to terminate the Plaintiff's policy at her urgent request, participated in the conspiracy to falsely imprison her, discriminate against her on the basis of disability, and deprive her of her 1st, 4th and 14th amendment rights. This constituted, at a minimum, negligence, [United] continues to violate her privacy today by stating that it has the right to share any of the information that it had obtained about her health and psychiatric treatment (her "health information"), without notice or due process, and by failing to respond to her request for a list of the parties that have received her health information to date from [United].

**\*19** *Id.* ¶ 157.

In her opposition brief, Plaintiff concedes that United is a private entity and not a state actor. However, Plaintiff argues that she pleads a valid Section 1983 claim against United because she alleges that United conspired with the Hillside

Defendants to keep her detained against her will. DE 198 at 4. Plaintiff is mistaken.

To support a claim against a private party on a Section 1983 conspiracy theory, a plaintiff must show "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."*Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002). Because the Court has already found that there are no allegations in the Fourth Amended Complaint plausibly suggesting that the Hillside Defendants were state actors, Plaintiff's conspiracy claims against United must necessarily fail. Moreover, aside from her conclusory allegations that United and the Hillside Defendants "participated in the conspiracy to falsely imprison her," Fourth Am. Compl. ¶ 157, Plaintiff alleges no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate her constitutional rights. In this regard, Plaintiff's suggestion that United must have conspired with the Hillside Defendants to illegally detain her because United provided coverage for her treatment—which it was contractually obligated to do— despite Plaintiff's request to terminate her plan is not plausible in the absence of any factual allegations supporting such an agreement. In addition, Plaintiff's allegations that United continues to violate her right to privacy by claiming it can share her personal information without notice and by failing to advise her which parties have already received her health information suggest misconduct engaged in by United alone and do not allege a conspiracy with a state actor. Accordingly, the undersigned reports and recommends that United's motion to dismiss Plaintiff's Section 1983 claims be granted. [5]

### C. The City of New York

The Fourth Amended Complaint adds the City of New York as a defendant. The City has moved to dismiss the complaint. Plaintiff has submitted no opposition to the City's motion. [6]

The Fourth Amended Complaint alleges that members of the New York City Police Department ("NYPD") failed to investigate Plaintiff's alleged mistreatment while she was in the custody of the Hillside Defendants. Fourth Am. Compl. ¶ 204. Even if Plaintiff's allegations regarding the

NYPD's failure to investigate her complaints are taken as true, they are not sufficient to create liability under Section 1983. The Second Circuit has held that an individual does not hold a " 'legitimate claim of entitlement' to a police investigation."*Harrison v. County of Suffolk,* 607 F.3d 31, 35 (2d Cir.2010) (quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)). Because Plaintiff is not entitled to a police investigation with regards to complaints she may have made, there is no constitutional violation for which the City of New York may be found municipally liable. Moreover, to state a Section 1983 claim against a municipality, a plaintiff must allege that a governmental custom, policy, or usage caused her injury. *See Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Jones v. Town of E. Haven,* 691 F.3d 72, 80 (2d Cir.2012). Here, the Fourth Amended Complaint sets forth no facts supporting a municipal policy which caused a violation of Plaintiff's constitutional rights. *See Gordon v. City of New York,* No. 10– CV–5148, 2012 WL 1068023, at \*4 (E.D.N.Y. Mar. 29, 2012) ("[M]ere conclusory references to a policy or custom, with no supporting facts, will not suffice to state a claim of § 1983 municipal liability."). Accordingly, the undersigned reports and recommends that the City's motion to dismiss Plaintiff's Section 1983 claims be granted.

### OBJECTIONS

**\*20** A copy of this Report and Recommendation is being served by the Court on all parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. *See*28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir.1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996).

Dated: January 12, 2015.

**All Citations**

Slip Copy, 2015 WL 1443254

Footnotes

1    The Fourth Amended Complaint also names several other defendants in the caption, including the Port Authority of New York and New Jersey, NYPD Detective Michael T. O'Brien, NYPD Lieutenant Antoinette Petruzzello, T.C. Carbonaro, Lt. Michelle Serrano, and several John Doe defendants. There is no indication in the docket sheet that any of these defendants have been served or have appeared in the action.

2    New York Mental Hygiene Law § 9.39(a) provides that a hospital may receive and retain a patient alleged to have a mental illness for up to fifteen days "only if a staff physician of the hospital upon examination of such person finds that such person" has "a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and *which is likely to result in serious harm to himself or others"* and "such finding is confirmed after examination by another physician [within forty-eight hours]." N.Y. Mental Hyg. L. § 9.39(a) (emphasis added). If the patient does not agree to remain, she may be retained involuntarily beyond the 15–day period through medical certification procedures described in the statute. *Id.* §§ 9.27, 9.39(b).

3    This Court has also already found that the allegation that the Hillside Defendants received public funds does not demonstrate that they are state actors. *See* February 12, 2014 Report and Recommendation at 29 (citing *White v. St. Joseph's Hosp.,* 368 F. App'x 225, 226 (2d Cir.2010)).

4    Under the Rehabilitation Act, Plaintiff has the added burden of identifying a federally funded benefit or program from which she was denied benefits. *See Bryant,* 692 F.3d at 216.

5    Because the undersigned reports and recommends that the district court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court does not address Plaintiff's state law claim against United.

6    According to the City, Detective Michael T. O'Brien and Lieutenant Antoinette Petruzzello have not been served in this action and, therefore, they are neither represented by the Office of the Corporation Counsel nor is the City's motion made on their behalf. The City notes, however, that its arguments apply equally to Detective Michael T. O'Brien and Lieutenant Antoinette Petruzzello in the event these officers are properly served at some future time.

---

**End of Document**        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

**Declined to Extend by** *Bryant v. Steele,* E.D.N.Y., March 21, 2015

2014 WL 6481996
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Beverly Diane ANTWI, Plaintiff,

v.

MONTEFIORE MEDICAL CENTER, Defendant.

No. 14 Civ. 840(ER).    |    Signed Nov. 18, 2014.

*OPINION AND ORDER*

RAMOS, District Judge.

**\*1** This action is one of two, related to substantially similar parties and events, brought in this Court by *pro se* litigant Beverly Diane Antwi ("Plaintiff"). In an ongoing, earlier-filed action, Plaintiff alleges that Health & Human Services Systems (Centers) F.E.G.S. ("FEGS"), a non-profit health center where she resides and receives care, denied her benefits from government programs, misappropriated federal funds intended for her use, and made reports that resulted in her unlawful hospitalization at Montefiore Medical Center in violation of her human rights and civil liberties. *See Antwi v. Health & Human Servs. Sys. (Centers) F.E .G.S.,* No. 13 Civ. 835(ER), 2014 WL 4548619, at \*1 (S.D.N.Y. Sep. 15, 2014) (denying Plaintiff's motion for summary judgment).

In the instant case, Plaintiff alleges that psychiatrists employed by Montefiore Medical Center ("Defendant" or "Montefiore") involuntarily hospitalized her, placed her in a mandatory outpatient treatment program due to a "mix-up of records," and forcibly medicated her. *See* Compl., Doc. 2 at 3–5 . [1] Liberally construed, the Complaint asserts claims against Montefiore for defamation, gross negligence, intentional infliction of emotional distress, and civil rights violations pursuant to 42 U.S.C. § 1983. *Id.* Defendant now moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Def.'s Mot., Doc. 17. For the reasons discussed below, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. However, Defendant's motion to dismiss for failure to state a claim is hereby GRANTED.

## I. Background

### A. Factual Background

The following facts, accepted as true for purposes of the instant motion, are based on the allegations in the Complaint, Plaintiff's Opposition to Defendant's motion to dismiss, exhibits attached to her Complaint and Opposition, [2] and affidavits submitted by the parties. *See Koch v. Christie's Int'l PLC,* 699 F.3d 141 (2d Cir.2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004) (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998)) (evaluating a Rule 12(b)(1) motion). [3]

Plaintiff is a 40–year–old woman with a history of psychiatric disorders and hospitalizations. Doc. 2–1 at 1. Defendant is a private, not-for-profit hospital corporation organized and established under the laws of the State of New York. Pl.'s Opp'n, Doc. 21 at 30. On multiple occasions, Plaintiff has been hospitalized and treated in the psychiatric unit at Defendant's Montefiore North Medical Center ("Montefiore North"), which provides inpatient and outpatient services. *Id.*

On July 11, 2012, Plaintiff was involuntarily admitted to the psychiatric unit at Montefiore North pursuant to § 9.39 of the New York Mental Health Law (MHL), which permits short-term confinement on an emergency basis. [4] Doc. 21 at 12, 25. She was "continued on involuntary status" at Montefiore on July 17, 2012, pursuant to MHL § 9.27. [5] *Id.* at 25. Prior to her July 11 admission, Plaintiff had been hospitalized at Montefiore North on several other occasions: January 1 to January 6, 2011; January 25 to February 21, 2012; and March 16 to March 22, 2012. Doc. 21 at 36. According to Dr. Willy Alexis, whose affirmation Plaintiff includes among her exhibits, "Upon discharge from each of the above hospitalizations, [Plaintiff] was to receive outpatient services from the Montefiore North Clinic, but did not comply, stopped taking her medications, and decompensated as a result of non-compliance with treatment."*Id.* [6]

**\*2** Plaintiff was hospitalized for several months following her July 11 admission. During that time, Dr. Alexis, "after consultation with [Plaintiff] and other members of her treatment team," devised a treatment plan providing for care coordination among an Assertive Community Treatment (ACT) Team, supportive housing at FEGS, and a course of many medications. *Id.* at 37. Dr. Alexis stated that Plaintiff

was "in need of Assisted Outpatient Treatment ["AOT"] in order to prevent a relapse or deterioration which would likely result in serious harm to [her] or others ...," and that Plaintiff, to his belief, could not "be safely maintained in any less restrictive placement...."*Id.*

On October 11, 2012, Defendant submitted an application to the New York State Supreme Court, Bronx County, seeking an AOT program pursuant to MHL § 9.60.[7] Doc. 21 at 26. Also known as "Kendra's Law," § 9.60 authorizes courts to order that patients "self-administer psychotropic drugs or accept the administration of such drugs by authorized personnel" and participate in outpatient programs including "case management or case coordination services, medication, substance abuse counseling and testing, and therapy."*Coleman v. State Supreme Ct.,* 697 F.Supp.2d 493, 498–99 (S.D.N.Y.2010) (quoting MHL § 9.60). Defendant supported its application for an AOT program with Dr. Alexis' affirmation and testimony, describing Plaintiff's history of noncompliance with treatment and episodes in which Plaintiff had become "psychotic, paranoid, agitated, delusional, threatening, loud, belligerent, and hyperreligious."Doc. 21 at 36; Doc. 23–1 at 1.[8] A hearing was held before the Honorable Sharon Ann Aarons in the Mental Hygiene Part of the Supreme Court of the State of New York, Bronx County, on October 17, 2012, at which Plaintiff was represented by counsel. Doc. 21 at 41–42. Judge Aarons found, by clear and convincing evidence, that Plaintiff met the MHL criteria for AOT, and that AOT was the "least restrictive treatment that [was] appropriate and feasible."*Id.* She issued a court order for the treatment plan devised by Dr. Alexis.*Id.*

Although Judge Aarons' order states that she approved Defendant's treatment plan pursuant to MHL § 9.60 based on the evaluations and diagnoses of Dr. Alexis and the staff at Montefiore North, Doc. 21 at 41–44, Plaintiff alleges that her hospitalization and AOT both resulted from Defendant's faulty record-keeping. *See, e.g.,* Doc. 21 at 3 ("*Kendra's law* criteria wouldn't have been satisfied if my real records were used at the time of trial.") (emphasis in original); Doc. 2 at 3 (claiming that her hospitalization resulted from a "mix-up of records" and "faulty paperwork" claiming that she was "somebody dangerous" or "criminally minded"); *id.* at 22 (claiming that Montefiore "mixed up" her records "by Hospitalizing 2 other women under [her] name and chart number As [her]"); Doc. 21 at 2–3 (claiming that on January 6, 2011, "Montefiore admitted 3 people under [her] name and information, all at the same time on the same day"). She explains that Defendant's "years of ruined records" amount to

"defamation, gross negligence, and psychological abuse."*Id.* She further states that her hospitalization and court-ordered treatment plan, which includes biweekly injections of what she describes as "horse pill amounts" of anti-psychotic medications,[9] constitute civil rights violations and wrongful punishments. *Id.;* Doc. 2 at 3. Additionally, Plaintiff asserts that she should not have been subjected to treatment supervised by an ACT Team because she was hospitalized for four months prior to her hearing. *Id.* at 3.

**B. Procedural History**

 **\*3** Plaintiff commenced this action on February 6, 2014. Doc. 2. Originally assigned to the Honorable Richard J. Sullivan, the case was transferred to the undersigned on May 21, 2014 based on its relatedness to Plaintiff's earlier-filed suit, *Antwi v. FEGS Health and Human Services System.*Doc. 11; *see also* Doc. 21 at 3 ("I sued FEGS my residence for the *application* of admission and seek to sue Montiefore [sic] for the actual admission (which because it is a form of incarceration) is a civil rights violation.") (emphasis and parentheses in original).

Although the Complaint does not identify specific causes of action, Doc. 2, the Court construes her allegations as asserting substantive and procedural due process claims under 42 U.S.C. § 1983 and state law claims for gross negligence, defamation, and intentional infliction of emotional distress. *See, e.g.,* Doc. 21 at 2–3 (discussing defamation, gross negligence, "psychological abuse," "civil rights violations," and her "inability to refuse treatment"). She seeks more than $50 million in damages: $250,000 for each intra-muscular anti-psychotic injection, $15 million for her involuntary hospitalization from July to October 2012, and $5 million for each hospitalization from 2010 to 2012. Doc. 2 at 5. Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331 and asks the Court to exercise jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

Defendant now moves to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that this Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. Doc. 17.

**II. Relevant Legal Standards**

**A. Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed.R.Civ.P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.*Morrison v. Nat'l Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000); *see also Morrison,* 547 F.3d at 170 (citing *Makarova,* 201 F.3d at 113). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004) (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998)).

**\*4** Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,* 820 F.Supp.2d 490, 499 (S.D.N.Y.2011), *aff'd sub nom.Baldessarre ex rel. Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,* 496 F. App'x 131 (2d Cir.2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction ." *Chambers v. Wright,* No. 05 Civ. 9915(WHP), 2007 WL 4462181, at \*2 (S.D.N.Y. Dec. 19, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)).

## B. Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013). However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations.*Ashcroft v.. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.* (citing *Twombly,* 550 U.S. at 570). Pleadings that tender "naked assertions devoid of

further factual enhancement,"*Id.* (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted), or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Id.* (quoting *Twombly,* 550 U.S. at 555).

In addition to requiring sufficient factual matter to state a plausible claim to relief, Rule 8 requires a "short and plain statement" of a plaintiff's claim in order to "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial."*Salahuddin v. Cuomo,* 861 F.2d 40, 41–42 (2d Cir.1988). It is within the court's discretion to dismiss a complaint "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."*Shomo v. New York,* 374 Fed. App'x 180, 182 (2d Cir.2010) (quoting *Salahuddin,* 861 F.2d at 42).

## C. *Pro Se* Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers,"*Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (quoting *Hughes v. Rowe,* 449 U.S. 5, 9 (1980)), and liberally construes their pleadings "to raise the strongest arguments that they suggest ."*McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (citations omitted). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue."*Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D.N.Y.2010) (citing *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). Nonetheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law."*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)); *see also Zapolski v. Federal Republic of Germany,* 425 Fed. App'x 5, 6 (2d Cir.2011) (*pro se* plaintiffs must plead sufficient facts to establish a plausible claim to relief and establish subject matter jurisdiction).

## III. Discussion

### A. Section 1983

**\*5** To state a claim under § 1983, a plaintiff must allege that: (1) a right secured to them by the Constitution or federal law was violated; and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established."*Sykes v.*

*James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted). It is well-established that involuntary confinement and forced medication constitute significant deprivations of liberty requiring due process protection. *See Addington v. Texas,* 441 U.S. 418, 425 (1979) (citing numerous cases in which the United States Supreme Court affirmed this principle with regard to involuntary commitment); *see also Washington v. Harper,* 494 U.S. 210, 229 (1990) ("The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty."). The pivotal issue in this case is whether Defendants were state actors when they hospitalized and medicated Plaintiff against her will. *See Doe v. Harrison,* 254 F.Supp.2d 338, 342 (S.D.N.Y.2003).

"[P]rivate conduct, no matter how discriminatory or wrongful," is not controlled by § 1983, *Am. Mfrs.,* 526 U.S. at 50, except in the limited situations where a "private entity's challenged actions are 'fairly attributable' to the state."*Fabrikant v. French,* 691 F.3d 193, 207 (2d Cir.2012) (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982))."The conduct of private actors can be attributed to the State" for § 1983 purposes if: "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State."*Hogan v. A.O. Fox Memorial Hosp.,* 346 Fed. App'x. 627, 629 (2d Cir.2009).

Plaintiff offers no facts or arguments to establish that Defendant, a private hospital, meets the state action requirement of § 1983. [10] Regardless, had she provided any such arguments, they would have proven unavailing, for it is well-settled in the Second Circuit that a private hospital confining a patient under the New York MHL is not acting under color of state law. *See McGugan v. Aldana–Bernier,* 752 F.3d 224, 229 (2d Cir.2014) (reaffirming the principle that "forcible medication and hospitalization ... by private health care providers" cannot be attributed to the state); *Hogan,* 346 Fed. App'x at 629 (affirming district court's grant of summary judgment to private hospital and physician that involuntarily committed patient, finding that conduct could not be attributed to the state); *Doe v. Rosenberg,* 166 F.3d 507 (2d Cir.1999) (holding that private health care professionals and a private hospital had not functioned as state actors when they involuntarily committed a patient to their psychiatric ward).

**\*6** In numerous § 1983 cases involving private hospitals and health care professionals, Southern District courts have found that none of the three tests for state action-"state compulsion," "public function," and "close nexus"-are satisfied. *See, e.g.,McGugan v. Aldana–Bernier,* No. 11 Civ. 342(TLM), 2012 WL 1514777, at \*4 (E.D.N.Y. Apr. 30, 2012)*aff'd*752 F.3d 224 (2d Cir.2014); *Amofa v. Bronx–Lebanon Hosp. Center,* No. 05 Civ. 9230(SHS), 2006 WL 3316278, at \*4 (S.D.N.Y. Nov. 13, 2006); *Turturro v. Continental Airlines,* 334 F.Supp.2d 383, 395–97 (S .D.N.Y.2004); *Doe v. Harrison,* 254 F.Supp.2d 338, 342–45 (S.D.N .Y.2003); *Doe v. Rosenberg,* 996 F.Supp. 343, 353 (S.D.N.Y.1998), *aff'd*166 F.3d 507; *Alcena v. Raine,* 692 F.Supp. 261, 266–67 (S.D.N.Y.1988). Nor are they satisfied in the case of Plaintiff. The MHL provisions supporting her hospitalization and treatment do not "compel" or encourage action by private hospitals and health care professionals; the statute merely permits such action under certain circumstances. *See Doe,* 996 F.Supp. at 349; *McGugan,* 2012 WL 1514777, at \*4–5. Civil commitment pursuant to the MHL does not constitute the exercise of a power "traditionally the exclusive prerogative of the State."*Id.* Rather, involuntary confinement has been a traditionally "private remedy" in New York. *Id.* at \*4; *see also Doe,* 996 F.Supp. at 355–56. There is no "sufficiently close nexus" between Defendant and the state, because Defendant chose to commit Plaintiff based on the evaluations and diagnoses of its own employees, without consultation or direction from state officials. *See Doe,* 254 F. Supp 2d at 343; *Doe,* 996 F.Supp. at 353; *McGugan,* 2012 WL 1514777, at \*5–6. Because Plaintiff cannot establish state action, her § 1983 claims must be dismissed.

Defendant asks the Court to dismiss this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure but declines to offer specific grounds for dismissal under each. To the extent that Defendant's motion to dismiss for lack of subject matter jurisdiction is based upon the deficiency in Plaintiff's § 1983 allegations, Rule 12(b)(1) is the improper vehicle for such an argument. *See Sisak v. Nat'l R.R. Passenger Corp. (Amtrak),* No. 91 Civ. 1030(JFK), 1992 WL 42245, at \*2 (S.D.N.Y. Feb. 24, 1992) (quoting *AVC Nederland B.V. v. Atrium Inv. Partnership,* 740 F.2d 148, 152–53 (2d Cir.1984)) ("[A] section 1983 claim should not be dismissed for want of jurisdiction except when 'it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.' "). Even where the Court anticipates that dismissal under Rule 12(b) (6) would be proper, it should not dismiss an action for lack of jurisdiction. *Spencer v. Casavilla,* 903 F.2d

171 (1990). Dismissal pursuant to Rule 12(b)(6), however, is necessary.[11] Plaintiff's inability to allege that Defendant acted under color of state law when it hospitalized and medicated her, or when it applied for a court-ordered assisted outpatient treatment plan, renders her unable to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

### B. Remaining Claims

**\*7** In addition to her § 1983 claims, Plaintiff's Complaint may be liberally construed as alleging claims for gross negligence, defamation, and intentional infliction of emotional distress. Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all of the claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction. Subject matter jurisdiction in the instant action is based on federal question jurisdiction. 28 U.S.C. § 1331. Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate her state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well."); *McGugan,* 2012 WL 1514777, at *8 ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining

to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."). Therefore, all non-federal claims in the Amended Complaint are hereby dismissed as well.[12]

### IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's § 1983 claims is GRANTED. The Court declines to exercise supplemental jurisdiction over her remaining claims pursuant to 28 U.S.C. § 1367(c)(3) and therefore DISMISSES them without prejudice. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 17, to mail a copy of this Opinion and Order to Plaintiff, and to close this case.

Furthermore, the Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

### All Citations

Slip Copy, 2014 WL 6481996

### Footnotes

1   Plaintiff has attached numerous documents to her Complaint and Opposition, including copies of Defendant's pleadings in this action. Because these exhibits are provided without a clear ordering or labeling convention, the Court's citations herein refer to ECF documents and page numbers.

2   Plaintiff's many exhibits appear to include doctors' notes, "progress notes" written by FEGS social workers and case managers, Social Security Income payment stubs, and copies of Defendant's pleadings in this proceeding. Many of the exhibits contain Plaintiff's handwritten remarks in the margins and on top of statements by the documents' original authors and preparers. Certain of these annotations are indecipherable.

3   As a matter of course, courts may consider documents outside the pleadings when ruling on a 12(b)(1) motion. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000). When ruling on a 12(b)(6) motion, the Court generally must confine itself to the four corners of the complaint and look only to the allegations therein. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). However, a court may also consider allegations in documents or statements that are either attached to the complaint, incorporated by reference or integral to the complaint, provided that there is no dispute regarding their authenticity, accuracy or relevance. *DiFolco v. MSNBC Cable L.L.C .,* 622 F.3d 104, 111 (2d Cir.2010) (citations omitted); *see also Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering allegations in *pro se* plaintiff's opposition to motion to dismiss). The Court finds that certain of Plaintiff's many exhibits may properly be considered in connection with the instant motion to dismiss, to the extent that their accuracy is not called into question by Plaintiff's annotations.

4   Section 9.39 permits emergency psychiatric hospitalization where there is "reasonable cause" to believe someone has "a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm" to him/herself or others. N.Y. MENT. HYG. (MHL) § 9.39 (McKinney 2013); *see also Project Release v. Prevost,* 722 F .2d 960, 963–64 (citing MHL § 9.39). Hospitalization under § 9.39 may be initiated by, among others,

police officers and psychiatrists supervising or providing treatment in facilities licensed or operated by the Office of Mental Health (OMH). *See* N.Y. OFFICE OF MENTAL HEALTH, MENTAL HYGIENE LAW—ADMISSIONS PROCESS, https:// www.omh.ny.gov/omhwe b/forensic/manual/html/mhl_admissions.htm (last visited Nov. 17, 2014). A patient may be held pursuant to MHL § 9.39 for no more than 15 days, after which time the hospitalization may be continued pursuant to MHL § 9.27 if the patient meets the standard for that section. *Id.*

5    Section 9.27 permits involuntary hospitalizations of up to 60 days, based on the approval and signatures of two physicians, where a "person has a mental illness for which care and treatment in a mental hospital is essential to his/her welfare," the "person's judgment is too impaired for him/her to understand the need for such care and treatment," and "as a result of his/her mental illness, this person poses a substantial threat of harm to self or others."*Id.; see also Project Release,* 722 F.2d at 965–66 (citing MHL § 9.27). The involuntary hospitalization may continue beyond 60 days, pursuant to MHL § 9.33, if the hospital applies for a court order of retention and the court finds that the patient still meets the standard for involuntary hospitalization. *See* N.Y. OFFICE OF MENTAL HEALTH, https://www .omh.ny.gov/omhweb/forensic/manual/ html/mhl_ admissions.htm. Neither party presents facts regarding whether such an order was sought or obtained.

6    Plaintiff alleges that certain of these hospitalizations were unlawful and that others did not actually occur or involved other patients wrongly admitted for hospitalization under her name. *See, e.g.,* Doc. 2 at 4 (noting that all hospitalizations in Defendant's "lockdown psychiatric ward" were based on Defendant's belief that she was "being delusional about missing funds," despite that she "produced receipts and showed them to the doctors and refused voluntary admission"); Doc. 21 at 51 ("All Hospitalizations were Unwarranted FEGS Applied Under false Pretenses ...."); *id.* at 52 ("All hospitalizations except 2007 Grandiose, Delusional About people stealing SSI benefits. I showed Alexis Receipts He knew I wasn't Delusional."); Doc. 2 at 22 ("THEY Mixed up my Records, by Hospitalizing 2 other women under My Name and chart number As me."); Doc. 21 at 25 (circling a reference to a hospitalization from "March 16, 2012 until March 22, 2012" on a copy of Defense Counsel's Declaration, attached as an exhibit to Plaintiff's Opposition, and adding the annotation "NOT ME"); *id.* at 60 ("The person who called in A confession of murder was Released from the hospital on the 22nd, but my social worker places me in her office on the 20th.").

7    Section 9.60 outlines the criteria under which a court may order an adult suffering from mental illness to receive AOT. MHL § 9 .60. Petitions for an order authorizing AOT may be filed in the supreme or county court by, among others, the director of a hospital in which the subject of the petition is hospitalized; the director of any public or charitable organization, agency or home providing mental health services to the subject of the petition or in whose institution the subject of the petition resides; or a qualified psychiatrist, psychologist, or social worker who is either supervising the treatment of or treating the subject of the petition for a mental illness. *Id.*

8    Section 9.60 requires petitions seeking AOT to be supported by the affirmation or affidavit of a physician who has examined the patient or certifies that he/she was unable to persuade the patient to permit an examination. MHL § 9.60. In order for the court to direct AOT, a physician who has personally examined the patient must testify and provide detail to establish that an AOT program would be the "least restrictive alternative" for the patient's care. *See Coleman,* 697 F.Supp.2d at 510–11.

9    It is unclear whether this course of treatment is ongoing. Plaintiff asserts that, as of the filing of her Opposition, she was still receiving bi-weekly injections. Doc. 21 at 21.

10   The closest Plaintiff comes to an argument on this integral component of a § 1983 claim is an annotation in the margins of a copy of Defendant's motion to dismiss that she has attached to her opposition to that motion. She writes, "Dr. Alexis was An Actor of the defense with [Defense Counsel] Acting in A State Supreme Trial as Dr. Alexis 👉 Montefiore's Representative."Doc. 21 at 20. Even assuming that Plaintiff is asserting that Dr. Alexis is a state actor, the assertion is conclusory.

11   Defendant also argues that Plaintiff's claims regarding her AOT are barred by the doctrine of collateral estoppel. Doc. 18. Because dismissal is mandated by Plaintiff's inability to state a cause of action under § 1983, the Court need not address Defendant's argument regarding collateral estoppel.

12   To the extent that Plaintiff intended to plead any federal causes of action besides the § 1983 claim the Court construes her complaint to allege, the complaint falls short of Rule 8's requirement that a complaint provide a short and plain statement of a plaintiff's claim in order to allow the adverse party to contest the plaintiff's allegations.

---