UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UMESH HEENDENIYA,

                                 Plaintiff,

                                                          5:15-CV-01238
v.
                                                          (GTS/TWD)
ST. JOSEPH'S HOSPITAL HEALTH CENTER,
et al.,

                                 Defendants.
_____

APPEARANCES:                              OF COUNSEL:

UMESH HEENDENIYA
Plaintiff, pro se
P.O. Box 5104
Spring Hill, FL 34611

COSTELLO, COONEY LAW FIRM                 ROBERT J. SMITH, ESQ.
Attorneys for Defendants St. Joseph's Hospital
    Health Center, French, Briscoe, Cate,
    Spinella, Rybak, Ruscitto, Seifter, Price,
    Welch, and Gilbert
500 Plum Street - Suite 300
Syracuse, NY 13204

MARTIN, GANOTIS LAW FIRM                  BRIAN M. GARGANO. ESQ.
Attorneys for Defendants Tremiti, Roman,
    Constantine, and Feldman
5790 Widewaters Parkway
Syracuse, NY 13214

SMITH, SOVIK, KENDRICK & SUGNET, P.C.     KEVIN E. HULSLANDER, ESQ.
Attorneys for Defendant Levine            JOHN P. COGHLAN, ESQ.
250 South Clinton Street, Suite 600
Syracuse, NY 13202  1252

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>DECISION AND ORDER</u>

Plaintiff has filed what has been described by him as an "emergency motion" requesting that I recuse myself from this action pursuant to 28 U.S.C. § 455(a) on the grounds of bias against the Second Amendment rights of mentally disabled people such as Plaintiff. (Dkt. No. 111 at 2.[1]) Counsel for Defendant Roger Gary Levine, M.D. has filed a letter memorandum opposing the motion. (Dkt. No. 114.) For reasons explained below, Plaintiff's motion is denied.

## I. BACKGROUND

### A. Initial Review of Plaintiff's Complaint

Plaintiff originally commenced this action against thirty-three named defendants and ten John Does. (Dkt. No. 1.) The lawsuit arose out of the alleged prohibition under 18 U.S.C. § 922(g)(4)[2] on Plaintiff's ability to receive any firearm shipped in interstate or foreign commerce as a result of his April 2013 involuntary commitment to the Psychiatric Ward at St. Joseph's Hospital Health Center in Syracuse, New York, pursuant to New York Mental Hygiene Law ("MHL") § 9.27. *Id.*

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2] 18 U.S.C. § 922(g)(4), a provision of the Gun Control Act of 1968, provides in relevant part that "(g) It shall be unlawful for any person . . . (4) who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. 924(a)(2) provides that "[w]hoever knowingly violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

Plaintiff named three distinct groups of defendants: (1) St. Joseph's Hospital Health Center and St. Joseph's administrators, an attorney, physicians, nurses, a therapist, and five John Does ("SJHHC Defendants"); (2) two State agencies and number of New York State officials; and (3) the United States, the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and various federal officials and employees, a program of the FBI, and five John Does. (*See* Dkt. No. 1 at ¶¶ 1-3, 5-38.) The Court construed Plaintiff's complaint as alleging § 1983 and state law claims against the SJHHC Defendants; § 1983 claims against the State Defendants; and claims under *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388 (1971) ("*Bivens*") for violation of Plaintiff's Second, Fifth, and Fourteenth Amendments, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 18 U.S.C. § 925A, and state law claims against the Federal Defendants.

The Court recommended dismissal of Plaintiff's complaint on initial review under 28 U.S.C. § 1915(e). (Dkt. No. 6 at 13.) The Court recommended dismissal with prejudice of Plaintiff's civil rights claims under 42 U.S.C. § 1983 as against all of the SJHHC Defendants on the grounds that they were not acting under color of state law. (Dkt. No. 6 at 16.) The Court recommended dismissal of Plaintiff's state law claims against the SJHHC Defendants without prejudice and with leave to amend on the grounds that the complaint failed to show that the amount in controversy exceeded $75,000 for purposes of diversity jurisdiction under 28 U.S.C. § 1332. *Id*. at 17-18.

The Court recommended dismissal with prejudice of Plaintiff's § 1983 claims against

State Defendants New York Office of Mental Hygiene ("OMH"); Ann Marie Sullivan, MD ("Sullivan"), OMH Commissioner; NYS Division of Criminal Justice Services ("NYDCJS"); Joshua Benjamin Pepper, Esq. ("Pepper"), Deputy Commissioner and Counsel to NYDCJS; Michael C. Green ("Green"), Executive Deputy Commissioner of NYDCJS; and Eric T. Schneiderman ("Schneiderman"), New York State Attorney General (collectively referred to herein as "State Defendants"), brought against them solely in their official capacities. (Dkt. No. 6 at 18-20.) The grounds for the recommendation were the complaint's complete absence of specific facts alleging the official or personal involvement of any of the State Defendants in the involuntary commitment of Plaintiff under MHL § 9.27, or any unconstitutional application of the provision on their part. *Id*. at 20. The Court further recommended dismissal of the state law claims asserted against the State Defendants with prejudice on the grounds that they were barred under the Eleventh Amendment. *Id*. at 21-22.

The Court also recommended dismissal with prejudice of the *Bivens* claims asserted against all of the Federal Defendants in their official capacities on sovereign immunity grounds. (Dkt. No. 6 at 22-23.) The Court, noting that there were no allegations showing personal involvement by either in the alleged violation of Plaintiff's constitutional rights, recommended dismissal without prejudice of the *Bivens* claims asserted against Federal Defendants Lombardo and Wysopal in their individual capacities. *Id*. at 23-24. The Court also recommended dismissal with prejudice of Plaintiff's claim that 18 U.S.C. § 922(g)(4) violates his constitutional rights under the Second and Fifth Amendments, and claim that MHL § 9.27 does not fall within § 922(g)(4).

The Court recommended that Plaintiff's state law claims be dismissed with prejudice against all of the federal agency Defendants and the individual federal defendants. However, dismissal without prejudice and with leave to amend Plaintiff's state law claims against the United States was recommended for failure to exhaust under the Federal Tort Claims Act, and as against Defendants Lombardo and Wysopal in their individual capacities. *Id*. at 23-24.

The Hon. Glenn T. Suddaby, Chief United States District Judge, adopted this Court's Report-Recommendation on initial review in its entirety and granted Plaintiff leave to amend the following claims: (1) Plaintiff's state law claims against the SJHHC Defendants; (2) Plaintiff's *Bivens* claims against Defendants Lombardo and Wysopal in their individual capacities; (3) Plaintiff's state law claims against the United States; and (4) Plaintiff's state law claims against Defendants Lombardo and Wysopal. *See Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC)*, No. 5:15-CV-1238 (GTS/TWD), 2016 WL 756537, at * 4-5 (N.D.N.Y. Feb. 25, 2016).[3]

### B.    Plaintiff's Amended Complaint

Plaintiff elected to file an amended complaint solely against the SJHHC Defendants. (Dkt. No. 21.)   Plaintiff asserted various state law claims, including a claim for medical malpractice, against the SJHHC Defendants. *Id.*   Finding that the pleading deficiencies in the original complaint had been corrected sufficiently to survive initial review under 28 U.S.C. § 1915(e), the Court ordered the Defendants to respond to Plaintiff's amended complaint. (Dkt.

---

[3] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

No. 24.)  Plaintiff subsequently filed a second amended complaint. (Dkt. No. 55.)  Motions by some Defendants to dismiss the second amended complaint are pending before Judge Suddaby. (Dkt. Nos. 59 and 62.)

## II.    ANALYSIS

A judge must recuse "[herself or] himself in any proceeding in which [her or] his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Specifically, the Court must consider "whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." *S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013); *see also U.S. v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007) (the "central focus is on whether [the] allegations [of bias and partiality], when coupled with the judge's rulings on and conduct regarding them, would lead the public reasonably to believe that [the judge's bias or partiality] affected the manner in which [she or] he presided.").

"A recusal decision rests within the sound discretion of the judge whose recusal is sought." *Neroni v. Coccoma*, No. 3:13-cv-1340 (GLS/DEP), 2014 WL 2532482, at * 4 (N.D.N.Y. June 5, 2014).  The Second Circuit has, however, instructed that when "the standards governing disqualification have not been met, disqualification is not optional; rather it is prohibited." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).  In other words, "[a] judge is as much obliged not to recuse [herself or] himself when it is not called for as [she or] he is obliged to when it is." *Id*.  (citation and internal quotations marks omitted).

Plaintiff claims that I showed bias by placing his original complaint under "very harsh

scrutiny" in my Order and Report-Recommendation (Dkt. No. 6) recommending dismissal of

Plaintiff's original complaint (in part with prejudice and in part without prejudice and with leave

to amend) under 28 U.S.C. § 1915(e)(2)(B)(i)-(iii), despite: (1) a notation on the civil cover sheet

that "due to plaintiff's documented mental and physical disabilities, he respectfully requests

disability accommodation from the court and defendants pursuant to the ADA (42 USC 12101 et

seq.)"; (2) numerous allegations in his original complaint that due to his two mental disabilities,

it takes him longer to complete complex tasks; and (3) his having alleged in ¶ 116 of the

complaint that he would be "amending his complaint, pursuant to Fed.R.Civ. P. 15(a)(1), and

serving process on the defendants, per Fed.R.Civ. 4(m) and L.R. 4.1(b)." (Dkt. Nos. 1 at ¶ 116;

111 at 2; 111-1 at ¶¶ 3-6.)

     The Supreme Court has found that "judicial rulings alone almost never constitute a valid

basis for a bias or partiality motion . . . and can only in the rarest circumstances evidence the

degree of favoritism or antagonism required . . . when no extrajudicial source is involved."

*Liteky v. U.S.*, 510 U.S. 540, 554 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563,

583 (1966)); *see also Chen v. Chen Qualified Settlement Fund*, 552 F.3d 218, 227 (2d Cir. 2009)

("Generally, claims of judicial bias must be based on extrajudicial matters, and adverse rulings,

without more, will rarely suffice to provide a reasonable basis for questioning a judge's

impartiality.").

     My initial review of Plaintiff's original complaint shows no bias on my part. I was

required to undertake the initial review of Plaintiff's original complaint before Plaintiff could

proceed with the action, and to make a report-recommendation for the District Judge, who would

then determine whether claims alleged in the complaint should be dismissed or the action should be allowed to go forward in whole or in part based upon criteria set forth in 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; [ ] fails to state a claim . . .; or [ ] seeks monetary relief against a defendant who is immune from such relief").

District courts have been instructed by the Second Circuit that a pro se complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Where, however, "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it, [r]epleading would be futile . . . and a request to replead should be denied." *Id.* On initial review, I made a determination from the allegations in the complaint and applicable law that a number of Plaintiff's alleged claims were deficient in ways that could not be cured by an amended complaint and recommended dismissal of those claims with prejudice. (Dkt. No. 6.) However, with respect to the remaining claims alleged in Plaintiff's complaint, while he had failed to state a claim in his original complaint, I did recommend that he be granted leave to amend. *Id.* As noted above, the District Court adopted my Report-Recommendation, including the recommendation that Plaintiff be allowed to amend his complaint, which he has now done. *Heendeniya*, 2016 WL 756537, at * 4-5.

Based upon the foregoing, I find that "an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could [not] reasonably question [my] impartiality" in this case. *Razmilovic*, 738 F.3d at 29.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for recusal pursuant to 28 U.S.C. § 455(a) (Dkt. No. 111) is **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Decision and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED.**

Dated: January 19, 2017
      Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)

2016 WL 756537

2016 WL 756537
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Umesh Heendeniya, Plaintiff,
v.
St. Joseph's Hosp. Health Ctr. (SJHHC); Roger
Gary Levine, MD; Lisa Marie O'Connor, MD;
George E. Tremiti, MD; Horatius Roman, MD;
Joanne Mary French, RN; Wendy Briscoe, RN;
Susan Lynn Cate, Lmft; Rosaline Spunelka, RN;
Robert Michael Constantine, MD; Mitchell Bruce
Feldman, MD; Cynthia A. Rybak, NP; Kathryn
Howe Ruscitto, President and CEO of SJHHC;
Lowell A. Seifter, JD, Senior VP and Gen. Counsel
of SJHHC; Meredith Price, VP of Fin. Servs. and
CFO of SJHHC; Deborah Welch, VP for People
at SJHHC; Gael Gilbert, RN and Dir. of SJHHC's
Psychiatric Ward; SJHHC Does 1-5, Inclusive;New
York State Office of Mental Health (OMH); Ann
Marie T. Sullivan, M.D., Comm'r of OMH; Joshua
Benjamin Pepper, Esq., Deputy Comm'r and
Counsel; New York State Div. of Crim. Justice Servs.
(DCJS); Michael C. Green, Exec. Deputy Comm'r
of DCJS; Eric T. Schneiderman, Esq., New York
State Atty. Gen.; U.S. Dep't of Justice; Loretta E.
Lynch, Atty. Gen. of the United States; Fed. Bur. of
Investigation (FBI); James B. Comey, Jr., Dir. of
the FBI; Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF); Thomas E. Brandon, Dir. of the
ATF; Nat'l Instant Background Check Sys. (NICS);
United States of America; Regina Lombardo, Special
Agent in Charge (SAC) of ATF's Tampa, FL Office;
Paul Wysopal, Special Agent in Charge (SAC) of
FBI's Tampa Office; and Fed. Does 1-5, Defendants.

5:15-CV-1238 (GTS/TWD)
|
Signed 02/25/2016

**Attorneys and Law Firms**

UMESH HEENDENIYA, Plaintiff, Pro Se, P.O. Box
5104, Spring Hill, Florida 34611.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District
Judge

**\*1** Currently before the Court, in this *pro se* action filed
by Umesh Heendeniya ("Plaintiff") against the forty-three
above-captioned entities and individuals ("Defendants")
pursuant to, *inter alia*, 42 U.S.C. § 1983 and *Bivens v.
Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)
("Bivens") arising out of 18 U.S.C. § 922(g)(4)'s alleged
prohibition on Plaintiff's ability to receive a firearm
shipped in interstate or foreign commerce as a result of
his involuntary commitment to a psychiatric ward, are
the following: (1) United States Magistrate Judge Thérèse
Wiley Dancks' Report-Recommendation recommending
that Plaintiff's Complaint be *sua sponte* dismissed (in part
with prejudice and in part without prejudice) pursuant
to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); (2) Plaintiff's motion
for reconsideration of the Report-Recommendation; (3)
Plaintiff's Objections to the Report-Recommendation; (4)
Plaintiff's motion to amend his Objections to the Report-
Recommendation; (5) Plaintiff's motion to enlarge the
time for service of process; (6) Plaintiff's first motion to
amend his Complaint; (7) Plaintiff's motion to withdraw
his first motion to amend his Complaint; and (8) Plaintiff's
second motion to amend his Complaint. (Dkt. Nos. 6, 13,
14, 15, 16, 17, 18, 19.)

For the reasons set forth below, Plaintiff's motion
for reconsideration of the Report-Recommendation is
denied; Plaintiff's motion to amend his Objections
to the Report-Recommendation is granted; Plaintiff's
Objections to the Report-Recommendation are rejected;
Magistrate Judge Dancks' Report-Recommendation is
accepted and adopted in its entirety; the claims asserted in
Plaintiff's Complaint are either dismissed with prejudice
or conditionally dismissed as explained below in this
Decision and Order; Plaintiff's motion to enlarge the
time for service of process is denied without prejudice
to renewal before Magistrate Judg Dancks after she has
determined whether he has, in his Amended Complaint,
corrected the pleading defects identified in her Report-
Recommendation; Plaintiff's motion to withdraw his first
motion to amend his Complaint is granted; Plaintiff's first
motion to amend his Complaint is deemed withdrawn;
and Plaintiff's second motion to amend his Complaint is
denied without prejudice.

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)

2016 WL 756537

# I. RELEVANT BACKGROUND

## A. Magistrate Judge Dancks' Report-Recommendation

Because this Decision and Order is primarily intended for the review of the parties, the Court will assume the reader's familiarity with the specifics of Magistrate Judge Danck's Report-Recommendation, including which entities and individuals constitute each of the three groups of Defendants in this action: (1) the St. Joseph's Defendants, (2) the New York State Defendants, and (3) the Federal Defendants.

Generally, in her Report-Recommendation, Magistrate Judge Dancks determined that Plaintiff's Complaint should be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). More specifically, Magistrate Judge Dancks made the following ten recommendations: (1) that Plaintiff's § 1983 claims against the St. Joseph's Defendants be dismissed **with prejudice** for failure to state a claim; (2) that Plaintiff's state law claims against the St. Joseph's Defendants be dismissed **without prejudice** for lack of subject-matter jurisdiction;[1] (3) that Plaintiff's § 1983 claims against the New York State Defendants be dismissed **with prejudice** for failure to state a claim; (4) that Plaintiff's state law tort claims seeking money damages against the New York State Defendants be dismissed **with prejudice** based on the Eleventh Amendment; (5) that Plaintiff's *Bivens* claims against the Federal Defendant in their official capacities be dismissed **with prejudice** based on sovereign immunity; (6) that Plaintiff's *Bivens* claims against Defendants Lombardo and Wysopal in their individual capacities be dismissed **without prejudice** for failure to state a claim; (7) that Plaintiff's claim for a declaratory judgment against all Federal Defendants regarding 18 U.S.C. § 922(g)(4) (e.g., that the statute violates his rights under the Second and Fifth Amendments and that the statute does not apply to involuntary commitments under N.Y. Mental Hygiene Law § 9.27) be dismissed **with prejudice** for failure to state a claim; (8) that Plaintiff's state law tort claims against the federal agency Defendants and the individual Federal Defendants (except for Defendants Lombardo and Wysopal) sued in their official capacities be dismissed **with prejudice**; (9) that Plaintiff's state law tort claims against Defendants Lombardo and Wysopal be dismissed **without prejudice** for lack of subject-matter jurisdiction; and (10) that Plaintiff's state law tort claims against the United States be dismissed **without prejudice** for failure

to exhaust his administrative remedies under the FTCA. (Dkt. No. 6, at Part IV.)

## B. Plaintiff's Objections to the Report-Recommendation

**\*2** Generally, in his Objections (and Amended Objections), Plaintiff argues that the Court should reject the Report-Recommendation for 16 reasons:[2] (1) Magistrate Judge Dancks erred in finding that Plaintiff's state law claims against the St. Joseph's Defendants should be dismissed without prejudice, because (a) those claims are legally sufficient and (b) dismissing them without prejudice would effectively preclude him from refiling them due to the governing statute of limitations; (2) despite that Plaintiff nowhere alleged that he had been involuntarily *committed* (but *admitted*), Magistrate Judge Dancks erred in finding that he had been involuntarily committed; (3) because Plaintiff is proceeding *pro se*, the Court should grant him an opportunity to amend his Complaint to cure its legal deficiencies, which he can easily do; (4) Magistrate Judge Dancks erred in finding that the St. Joseph's Defendants provided Plaintiff with paperwork during his involuntary state at the psychiatric ward when (in Paragraph 102 of his Complaint) he alleges they did not; (5) to the extent that various of Plaintiff's claims are barred by sovereign immunity and the Eleventh Amendment, Plaintiff should be permitted to amend those claims so that they seek only injunctive and/or declaratory relief; (6) Plaintiff can correct the defects in his claims arising from diversity jurisdiction by discontinuing his claims against the non-diverse Defendants and by alleging damages in excess of $75,000; (7) it is fundamentally unfair to require Plaintiff to allege the personal involvement of the Federal Defendants in order to seek injunctive and/or declaratory relief from them; (8) when the Supreme Court spoke of the "mentally ill" in *D.C. v. Heller*, 554 U.S. 570 (2008), it was referring to mental disorders more serious than those that afflict Plaintiff; (9) Magistrate Judge Dancks erred in finding that the Equal Protection Clause has been held not to protect the Second Amendment rights of those who are allegedly prohibited under 18 U.S.C. § 922(g)(4); (10) Magistrate Judge Dancks erred in finding that SAC Regina Lombardo works for the FBI (when in fact Plaintiff has alleged that she works for the ATF), and in finding that Plaintiff alleged that Dr. Levine did not personally examine him during his stay at the psychiatric ward; (11) Magistrate Judge Dancks erred in granting him *in forma pauperis* status "solely for the purpose of [her] review" of his Complaint; (12) Magistrate Judge Dancks

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)

2016 WL 756537

erred in finding that his state law claims against the St. Joseph's Defendants fail to state a claim because Plaintiff should be allowed to amend them; (13) Magistrate Judge Dancks erred in finding that he failed to allege facts plausibly suggesting that the New York State Defendants were acting within the scope of their employment; (14) Magistrate Judge Dancks erred in finding that his *Bivens* claims against all Federal Defendants should be dismissed, because he can correct those claims; (15) Magistrate Judge Dancks erred in finding that most of his claims against the Federal Defendants and New York State Defendants should be dismissed with prejudice, because Plaintiff can correct those claims; and (16) Magistrate Judge Dancks erred in finding that Plaintiff has failed to state a claim of declaratory judgment regarding 18 U.S.C. § 922(g)(4), because it is hard to fathom that in 1791 the Founders considered ex-soldiers displaying symptoms of post-traumatic stress disorder as being prohibited from having firearms for self-defense in their homes. (Dkt. Nos. 14, 15.)

### C. Plaintiff's Various Motions

For the sake of brevity, the Court will assume the reader's familiarity with the nature of and bases for Plaintiff's various motions, because (as previously stated) this Decision and Order is intended primarily for the review of the parties.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing
### Review of a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [3] When performing such a *de novo* review, "[t]he judge may ... receive further evidence. ..." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [4] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first

instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

**\*3** When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [5] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [6]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

### B. Legal Standards Governing Plaintiff's Various Motions

Again, for the sake of brevity, the Court will assume the reader's familiarity with the legal standards governing Plaintiff's various motions, because (as previously stated) this Decision and Order is intended primarily for the review of the parties.

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)

2016 WL 756537

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Dancks' thorough Report-Recommendation, the Court can find no error in those parts of the Report-Recommendation to which Plaintiff has specifically objected, and no clear error in the remaining parts of the Report-Recommendation: Magistrate Judge Dancks employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. To those reasons, the Court adds six points.

First, given the legal analysis (and "Blue Booked" citations) contained in Plaintiff's numerous memoranda of law, the Court doubts that he is actually proceeding *pro se* in this action sufficient to warrant an extension of special solicitude (rendering his repeated representations of that fact both false and material);[7] however, the Court will assume he is proceeding *pro se* for the sake of brevity.

 **\*4** Second, Plaintiff argues that the written notice attached to his Complaint (informing of his right to a court hearing and counsel) was received by him only after his stay at the psychiatric ward. (Dkt. No. 14, at ¶ 4.) The problem is that the notice contains a staff physician's signature confirming that Plaintiff had been provided with a copy of the notice. (Dkt. No. 1, Attach. 7, at 6.) In his Objections, Plaintiff does not point to any portion of his Complaint in which he alleges facts plausibly suggesting that the physician's signature was fraudulent. (Dkt. No. 14, at ¶ 4.) Rather, he appears to argue that his own signature should have been required. (*Id.*) However, such a requirement does not appear to be contained in N.Y. Mental Hygiene Law §§ 9.27 or 9.29.

Third, Plaintiff's motion for reconsideration (which was not expressly submitted to Magistrate Judge Dancks) is denied on each of the following three grounds: (1) it is improper in that the only Order issued by Magistrate Judge Dancks was her Order granting his motion to proceed *in forma pauperis*, but he is not challenging that Order; (2) the procedural mechanism for challenging a Report-Recommendation is an Objection, which he pursued, and which is redundant of the relief requested by his motion for reconsideration; and (3) the motion is unsupported by a showing of cause.

Fourth, Plaintiff's motion to amend his Objections to the Report-Recommendation is granted. Although Plaintiff had previously been given a generous extension of time in which to file all of his Objections, and although his proposed Amended Objections are somewhat redundant of his original Objections, the Court has carefully considered them in reviewing the Report-Recommendation.

Fifth, Plaintiff's motion to enlarge the time for service of process is denied without prejudice as premature. Plaintiff may renew his motion before Magistrate Judg Dancks after she has determined whether he has, in his Amended Complaint, corrected the pleading defects identified in her Report-Recommendation.

Sixth, Plaintiff's second motion to amend his Complaint is denied on each of the following three grounds: (1) by her Text Orders of December 21 and 29, 2015, Magistrate Judge Dancks denied Plaintiff's motion for an extension of time in which to file a motion to amend without prejudice to renewal after the undersigned has acted on her Report-Recommendation (which had not yet occurred when Plaintiff filed his second motion to amend on February 16, 2016); (2) Plaintiff's motion does not identify the amendments in his proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means, in violation of Local Rule 7.1(a)(2) (nor is Plaintiff's motion supported by an *unsigned* copy of the proposed amended pleading, in violation of Local Rule 7.1[a][4] ); and (3) Plaintiff's proposed Amended Complaint appears to attempt to re-assert various claims that the Court has dismissed with prejudice in this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for reconsideration of the Report-Recommendation (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to amend his Objections to the Report-Recommendation (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Magistrate Judge Dancks' Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)

2016 WL 756537

**ORDERED** that all of the claims asserted in Plaintiff's Complaint (Dkt. No. 1) are <u>**DISMISSED**</u> **with prejudice EXCEPT** for the following four claims, which **shall be** <u>**DISMISSED**</u> **with prejudice UNLESS**, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff files an **AMENDED COMPLAINT** that corrects the pleading defects identified in Magistrate Judge Dancks' Report-Recommendation:

> **\*5** (1) Plaintiff's state law claims against St. Joseph's Defendants St. Joseph's Hospital Health Center, Briscoe, O'Connor, French, Levine, Tremiti, Roman, Spunelka, Constantine, Feldman, Rybak, Cate, Ruscitto, Seifter, Price, Welch, Gilbert, and John Does 1-5;

> (2) Plaintiff's *Bivens* claims against Defendants Lombardo and Wysopal in their individual capacities;

> (3) Plaintiff's state law claims against the United States;

> (4) Plaintiff's state law claims against Defendants Lombardo and Wysopal; and it is further

**ORDERED** that Plaintiff's Amended Complaint shall be a complete pleading that supersedes his original Complaint in all respects (and does not incorporate by reference any portion of that Complaint), and shall not attempt to reassert any claims that have been dismissed with prejudice in this Decision and Order; and it is further

**ORDERED** that Plaintiff's motion to enlarge the time for service of process (Dkt. No. 16) is <u>**DENIED** without prejudice</u> to renewal before Magistrate Judg Dancks after she has determined whether he has, in his Amended Complaint, corrected the pleading defects identified in her Report-Recommendation; and it is further

**ORDERED** that Plaintiff's motion to withdraw his first motion to amend his Complaint (Dkt. No. 18) is <u>**GRANTED**</u>, and Plaintiff's first motion to amend his Complaint (Dkt. No. 17) is deemed <u>**WITHDRAWN**</u>; and it is further

**ORDERED** that Plaintiff's second motion to amend his Complaint (Dkt. No. 19) is <u>**DENIED**</u> without prejudice.

**All Citations**

Slip Copy, 2016 WL 756537

---

Footnotes

1    The Court construes the Report-Recommendation's recommendation of a dismissal of certain claims without prejudice to refiling in this Court to mean a *conditional* dismissal of those claims with prejudice, i.e., a dismissal of those claims with prejudice if the defects identified in them are not corrected in an Amended Claims filed in this Court during the pendency of this action. The Court so construes the Report-Recommendation because the dismissal of the Complaint in its entirety before the filing of an Amended Complaint would deprive the Court of jurisdiction to consider the Amended Complaint; similarly, the dismissal of any portion of the Complaint without prejudice to refiling in another action in this Court would unnecessarily duplicate this action.

2    The Court has combined Plaintiff's third and eighth challenges, which it finds are largely redundant of each other.

3    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

4    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's

**Heendeniya v. St. Joseph's Hosp. Health Ctr. (SJHHC), Slip Copy (2016)**

2016 WL 756537

credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

5    *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

6    *See also Batista v. Walker,* 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

7    The Court notes that such an offense would also appear to implicate his "ghostwriting" attorney, given the existence of Fla. Bar Op. 79-7 (2000) ("[P]leadings or other papers prepared by an attorney and filed with the court on behalf of a pro se litigant must indicate 'Prepared with Assistance of Counsel.' +").

---

**End of Document**                                        © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2532482
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederick J. NERONI, Plaintiff,

v.

Ellen L. COCCOMA et al., Defendants.

No. 3:13–cv–1340 (GLS/DEP).
|
Signed June 5, 2014.

**Attorneys and Law Firms**

Frederick J. Neroni, Delhi, NY, pro se.

Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, Kelly Sanfilippo, Hon. Eric T. Schneiderman, New York State Attorney General, Bruce J. Boivin, Assistant Attorney General, of Counsel, Albany, NY, Hinman, Howard & Kattell, LLP, Hinman, Howard Law Firm, James S. Gleason, Esq., of Counsel, Binghamton, NY, Levene, Gouldin and Thompson, LLP, Margaret Fowler, Hiscock, Barclay Law Firm, Robert A. Barrer, Esq., of Counsel, Syracuse, NY, for the Defendants.

*MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

**\*1** Plaintiff *pro se* Frederick J. Neroni commenced this action against defendants [1] pursuant to 42 U.S.C.1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights, along with violations of the Nobility Clause. [2] (Compl., Dkt. No. 1.) Pending are defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Dkt.Nos.29, 30, 44), and Neroni's cross motions for disqualification of the court, to transfer venue, and to disqualify counsel, (Dkt.Nos.40, 47). For the reasons that follow, defendants' motions are granted, Neroni's cross motions are denied, and Neroni's complaint is dismissed.

### II. *Background* [3]

This case presents yet another chapter in a barrage of lawsuits [4] filed by Neroni, a disbarred and disgruntled former attorney. [5] In his lengthy and disjointed complaint, Neroni names as defendants a host of New York state judges, court officials, private attorneys, and private law firms, and weaves a tangled web of judicial corruption, political favoritism, and professional improprieties, resulting in a range of—barely decipherable—constitutional transgressions. (*See generally* Compl.)

While difficult to discern, many of Neroni's claims tangentially relate to the circumstances surrounding his disbarment, (*id.* ¶¶ 8, 83–85, 140); others pertain to a New York state case, *Kilmer v. Moseman,* No.2009–298, pending in Supreme Court in Delaware County before Justice Kevin Dowd, in which Neroni's only involvement was receiving an order compelling him to appear for a deposition, (*id.* ¶¶ 18, 20, 34, 69, 86–95, 98–99). In an attempt to provide some clarity, below, the court addresses the relevant facts pertaining to, and the claims asserted against, each defendant.

#### A. *Ellen L. Coccoma*

Ellen Coccoma is an attorney in private practice at Hinman, Howard & Katell, LLP (HHK) and a former member of New York's Committee on Professional Standards (COPS). (*Id.* ¶¶ 8, 82.) Neroni alleges that, during her time as a member of COPS, Ellen Coccoma "participated in [the] investigation and decision-making" that led to his disbarment, (*id.*), and used certain, unspecified information gained from the investigation for "private gain," (*id.* ¶¶ 84–85). Neroni further alleges that, during her involvement in his disciplinary case, Ellen Coccoma "accepted a private case prosecuting [his] then corporation for fraud." (*Id.* ¶ 83.) Ellen Coccoma's actions, Neroni contends, resulted in a deprivation of his Fourteenth Amendment due process rights. (*Id.* ¶ 85.)

In addition to her involvement in Neroni's disciplinary action, Ellen Coccoma is also involved as a private attorney in *Kilmer.* (*Id.* ¶ 18.) Neroni seems to allege that Ellen Coccoma exploited her relationship with her husband, Deputy Chief Administrative Judge Michael V. Coccoma, to obtain favorable treatment and avoid

the imposition of sanctions in *Kilmer*. (*Id* . ¶¶ 18–19.) Ellen Coccoma was also involved in procuring a court order requiring Neroni to provide deposition testimony in *Kilmer,* which, Neroni contends, violated his Fourth Amendment rights. (*Id.* ¶¶ 18, 86, 92, 138.) Neroni seeks treble, actual, and punitive damages against Ellen Coccoma. (*Id.* ¶¶ 138, 147.) He also seeks declaratory and injunctive relief, including a declaratory judgment that his disbarment is void. (*Id.* ¶¶ 120, 140.)

### B. *HHK*

**\*2** Neroni claims that HHK, a private law firm, acting in concert with its employee, Ellen Coccoma, "obtained by fraud ... an order to involuntarily depose [Neroni]" in the *Kilmer* state court litigation, resulting in a violation of Neroni's Fourth Amendment rights. (*Id.* ¶¶ 11, 92, 138.) HHK, as Ellen Coccoma's employer, is also responsible, Neroni claims, for Ellen Coccoma's "fraudulent failure" to disclose to the parties and court in *Kilmer* that she was involved with Neroni's disciplinary case. (*Id.* ¶ 138(c) (v).) Neroni seeks treble, actual, and punitive damages as against HHK. (*Id.* ¶¶ 138, 147.)

### C. *Judge Coccoma*

As noted above, Judge Coccoma is the Deputy Chief Administrative Judge for courts outside of New York City, and Ellen Coccoma's husband. (*Id.* ¶¶ 14, 16.) As the Chief Administrative Judge, he "controls [the] assignment of judges in courts" in upstate New York. (*Id.* ¶¶ 16–17.) Neroni claims that Judge Coccoma "controlled and monitored" the assignment of the justice to the *Kilmer* action, so that Ellen Coccoma could obtain favorable treatment, including, among other things, avoiding sanctions.[6] (*Id.* ¶ 18.) Additionally, at least briefly, Judge Coccoma presided over *Mokay v. Mokay,* No.2007–695, the New York Supreme Court case in which Neroni was found to have committed a fraud upon the court, and which ultimately led to his disbarment. (*Id.* ¶¶ 8, 15); *see In re Neroni,* 86 A.D.3d 710, 710–11 (3d Dep't 2011).

Neroni further claims that, pursuant to 22 N.Y.C.R.R. art. 122, a retired Supreme Court justice may be appointed as a judicial hearing officer. (Compl.¶ 22.) Neroni states that judicial hearing officers have the potential to earn up to $75,600 per year, which could "more than double a retired judge's income," and are appointed by the Deputy Chief Administrative Judge—in this case, Judge

Coccoma. (*Id.* ¶¶ 22, 23, 25, 26, 28.) Because Judge Coccoma has this power, Neroni alleges, the justices have a financial interest in doing favors for him, such as providing Ellen Coccoma with special treatment in matters that are before them. (*Id.* ¶¶ 28, 40, 56–57, 61, 95, 97.) Neroni claims that this violates the Nobility Clause of the United States Constitution, because Ellen Coccoma, ostensibly, has been "elevated to the ranks of nobility." (*Id.* ¶¶ 97, 106, 143.) Neroni seeks declaratory relief. (*Id.* ¶ 141.)

### D. *Justice Dowd*

Justice Dowd is a New York Supreme Court justice and was assigned to the *Kilmer* action by Judge Coccoma, after the previous judge—former New York Supreme Court Justice Eugene Peckham, also a defendant in this action— recused himself from the case. (Compl.¶¶ 20, 34, 40, 41.) In *Kilmer,* Justice Dowd granted Ellen Coccoma's motion to compel and ordered Neroni to appear to provide deposition testimony, in violation of Neroni's Fourth Amendment and due process rights.[7] (*Id.* ¶ 98.) Neroni surmises that, because Justice Dowd is nearing retirement, and will soon be eligible to be appointed to the position of a judicial hearing officer, Justice Dowd has a financial stake in granting favors to Judge Coccoma.[8] (*Id.* ¶¶ 28, 95, 97.) Neroni seeks damages against Justice Dowd and an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a non-party witness sought to be subpoenaed. (*Id.* ¶¶ 105, 134, 137.)

### E. *Judge Robert Mulvey*

**\*3** Judge Mulvey is the Administrative Judge of the Sixth Judicial District, and is responsible for assigning cases within that district. (*Id.* ¶¶ 36, 38.) Judges Coccoma and Mulvey, acting together, "helped deprive [Neroni] of his rights by assigning [Justice] Dowd to the Kilmer action where sanctions were requested against [Judge] Coccoma's wife." (*Id.* ¶¶ 40, 94.) Neroni claims that, as Judge Coccoma's "subordinate," Judge Mulvey has "a financial incentive to please" Judge Coccoma. (*Id* . ¶¶ 39, 40.)

### F. *Former Justice Peckham*

Justice Peckham is a former New York Supreme Court justice. (*Id.* ¶ 41.) Justice Peckham retired from his post in 2011, and has since joined the private law firm Levene

Gouldin & Thompson (LGT)—perhaps not surprisingly, another defendant in this action. (*Id.* ¶¶ 41–43, 63.) Prior to his retirement, and before Justice Dowd was assigned, Justice Peckham presided over the *Kilmer* action. (*Id.* ¶ 41.)

Additionally, after his retirement, Justice Peckham was appointed to the position of judicial hearing officer in Delaware County Supreme Court. (*Id.* ¶¶ 56–57, 61.) Neroni claims that Justice Peckham's position as a judicial hearing officer, coupled with Judicial Defendants' failure to publicly post a list of judicial hearing officers, should disqualify his law firm, LGT, from all matters in Delaware County Supreme Court. (*Id.* ¶¶ 57, 58, 64, 69, 70.) Neroni seeks treble, actual, and punitive damages as against Justice Peckham. (*Id.* ¶¶ 138, 147.)

### G. *LGT Defendants*

LGT is a private law firm in Binghamton, New York. (*Id.* ¶ 44.) Margaret Fowler is a partner in LGT; she also previously represented two codefendants in the *Kilmer* action, and "supported" Ellen Coccoma's motion to compel Neroni to provide deposition testimony. (*Id.* ¶¶ 46, 65–69.) LGT and Fowler "failed to announce to the Kilmer court that [Justice] Peckham, the previous judge on the Kilmer case, joined ... LGT ... as a partner." (*Id.* ¶ 64.) LGT and Fowler's actions, Neroni claims, violated his Fourth Amendment rights. (*Id.* ¶ 69.) Neroni seeks treble, actual, and punitive damages as against LGT Defendants. (*Id.* ¶¶ 138, 147.)

### H. *Judge Gail A. Prudenti, Justices Karen Peters and Thomas Mercure, and Kelly Sanfilippo*

Neroni's claims against Chief Administrative Judge Prudenti, Justice Peters, Presiding Justice [9] of the Appellate Division, Third Judicial Department, Justice Mercure, former acting Presiding Justice [10] of the Appellate Division, Third Judicial Department, and Kelly Sanfilippo, Court Clerk of Delaware County Supreme Court, boil down to the fact that they all had a duty to publicly disclose Justice Peckham's position as a judicial hearing officer, failed to do so, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter. (*See generally id.* ¶¶ 56–61.) As a result, Neroni's Fourth Amendment rights were violated when he was ordered to provide deposition testimony in *Kilmer*. (*Id.* ¶ 69.) Neroni seeks injunctive relief against Judge Prudenti and

Justice Peters, essentially requiring them to publicly post the appointments of judicial hearing officers. (*Id.* ¶¶ 81, 142.)

### III. *Standard of Review*

**\*4** The standards of review under Rules 12(b)(1) and 12(b)(6), which are "substantively identical," *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003), are well settled and will not be repeated. For a full discussion of those standards, the parties are referred to the court's decisions in *Unangst v. Evans Law Associates, P.C.,* 798 F.Supp.2d 409, 410 (N.D.N.Y.2011), and *Ellis v. Cohen & Slamowitz, LLP,* 701 F.Supp.2d 215, 218 (N .D.N.Y.2010), respectively.

Furthermore, in general, *pro se* plaintiffs are "entitled to special solicitude," and the court has a duty to read and interpret a *pro se* party's submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F .3d 471, 477 (2d Cir.2006) (internal quotation marks and citations omitted). However, where "a particular *pro se* litigant is familiar with the procedural setting as a result of prior experience such that it is appropriate to charge [him] with knowledge of ... particular requirements, it falls well within a district court's discretion to lessen the solicitude that would normally be afforded." *Tracy v. Freshwater,* 623 F.3d 90, 102 (2d Cir.2010).

### IV. *Discussion*

Given that Neroni graduated from law school and spent over thirty years practicing law, [11] the court "will not grant him the leeway afforded to legal neophytes." *NMD Interactive, Inc. v. Chertok,* No. 11 Civ. 6011, 2013 WL 1385213, at \*12 (S.D.N.Y. Mar. 18, 2013).

### A. *Neroni's Motion For Disqualification of the Court*
Neroni seeks the court's disqualification or recusal pursuant to 28 U.S.C. § 445. (Dkt. No. 47.) Neroni's motion is denied.

Neroni seeks the court's recusal based on several statutory provisions. [12] (Dkt. No. 40, Attach. 1 at 1–9.) As relevant here, recusal is appropriate under §

455(a) when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) provides for recusal when a judge "has a personal bias or prejudice concerning a party." *Id.* § 455(b) (1). Section 455(b)(3) also mandates recusal when "[the judge] has served in governmental employment and in such capacity participated as counsel ... concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." *Id.* § 455(b)(3). And finally, recusal is appropriate under § 455(b)(5)(ii) when "a person within the third degree of relationship to [the judge] ... [i]s acting as a lawyer in the proceeding." *Id.* § 455(b)(5)(ii).

A recusal decision rests within the sound discretion of the judge whose recusal is sought. *See United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992). The standard for recusal is whether "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality [might] reasonably be questioned." *Id.* (citation omitted). "Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *Id.* (citation omitted). Notably, recusal is not required where a case "involves remote, contingent, indirect or speculative interests." *Id.* To permit otherwise would be to "bestow upon litigants the power to force the disqualification of judges who are not to their liking." *United States v. Ahmed,* 788 F.Supp. 196, 202 (S.D.N.Y.1992), *aff'd,* 980 F.2d 161 (2d Cir.1992).

**\*5** First, Neroni contends that, based on prior adverse rulings, including sanctions, of this court against him, recusal is mandatory under §§ 455(a) and (b)(2). (Dkt. No. 40, Attach. 1 at 1–4.) Prior adverse rulings, however, are generally not a basis for disqualification. *See Gallop v. Cheney,* 645 F.3d 519, 520–21 (2d Cir.2011) (noting that an adverse ruling alone was insufficient to establish the sort of extreme antagonism required for disqualification); *see also Liteky v. United States,* 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible").

Second, Neroni contends that recusal is necessary under § 455(b) (3) because the court was involved with a criminal prosecution against Neroni in 1982, which was mentioned in his order of disbarment. (Dkt. No. 40, Attach. 1 at 4.) All that Neroni claims, however, is that at the time of the criminal prosecution, the court was "part of the prosecuting office." (*Id.*) Neroni does not claim, as § 455(b)(3) contemplates, that the court was actually involved in the prosecution. *See Maunsell v. WCAX TV,* 477 F. App'x 845, 846 (2d Cir.2012). Moreover, 28 U.S.C § 455(b)(3) mandates recusal where the judge, while serving in government employment, participated in a material way "concerning the proceeding" or "expressed an opinion concerning the merits of *the particular case in controversy."* (emphasis added). Accordingly, even if the court was involved with Neroni's criminal prosecution, it has nothing to do with the merits of this proceeding. Neroni's argument suggests precisely the sort of "remote, contingent, indirect or speculative interests" that militate against recusal. *Lovaglia,* 954 F.2d at 815.

Third, Neroni argues that recusal is appropriate under § 455(b) (5)(ii) because "Judge Sharpe's son Michael A. Sharpe is employed as an Assistant Attorney General in the office that" represents Judicial Defendants. (Dkt. No. 40, Attach. 1 at 5–7.) As LGT Defendants point out, however, this is a civil matter, and Sharpe has: (1) not appeared in this action; and (2) serves as an Assistant Deputy Attorney General in the Organized Crime Task Force, and, as such, has no involvement in this matter, as he investigates and prosecutes criminal matters. (Dkt. No. 41 at 3–4.) Under these circumstances, recusal is not warranted. *See, e.g., Microsoft Corp. v. United States,* 530 U.S. 1301, 1301–03 (2000) (statement of Chief Justice Rehnquist explaining his decision not to recuse himself in a case in which his son was a partner at a law firm representing a party before the Court); *Faith Temple Church v. Town of Brighton,* 348 F.Supp.2d 18, 21 (W.D.N.Y.2004) (holding that recusal was not required where the judge's son had been hired by a law firm that was representing a party in the action).

**\*6** As the Second Circuit has observed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *In re Aguinda,* 241 F.3d 194, 201 (2d Cir.2001). Accordingly, Neroni's motion for recusal or disqualification of the court is denied.

Below, the court addresses the relevant arguments advanced by defendants in support of their motions to dismiss, Neroni's responses in opposition, and, finally, Neroni's remaining cross motions.

### B. *Judicial Immunity*

First, Judicial Defendants argue that the claims against Judges Coccoma, Mulvey, and Prudenti, and Justices Dowd, Peckham, Peters, and Mercure must be dismissed because they are entitled to absolute judicial immunity. (Dkt. No. 44, Attach. 2 at 6–9.) Neroni counters that judicial immunity does not apply. (Dkt. No. 47, Attach. 2 at 2–7.) The court agrees that Judges Coccoma and Mulvey and Justice Dowd are immune from suit in their individual capacities.[13] Further, while Judge Prudenti and Justices Peckham, Peters, and Mercure are not entitled to absolute judicial immunity, Neroni fails to state a claim against them.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to § 1983 bar injunctive relief, unless a declaratory decree was violated or declaratory relief was unavailable. *See Montero v. Travis,* 171 F.3d 757, 761 (2d Cir.1999). Therefore, a judge is immune from all forms of suit unless he has acted either beyond his judicial capacity, or "in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12.

In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is "to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter." *Ceparano v. Southampton Justice Court,* 404 F. App'x 537, 539 (2d Cir.2011) (internal quotation marks and citation omitted). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* (internal quotation marks and citation omitted). Moreover, if the judge is performing in his judicial capacity, immunity does not give way even if "the action he took was in error, was done maliciously,

or was in excess of his authority." *Id.* (internal quotation marks and citation omitted).

#### *1. Judges Coccoma and Mulvey*

The gravamen of Neroni's claims against Judges Coccoma and Mulvey is that they manipulated the assignment of judges so that Ellen Coccoma could obtain favorable treatment. (Compl. ¶¶ 18, 40, 94 .) Citing no authority, Neroni argues that these actions are outside the scope of judicial immunity. (Dkt. No. 47, Attach. 2 at 2–4.)

**\*7** Contrary to Neroni's unfounded assertions, courts have held that the assignment of cases is a judicial function and is therefore a protected act under judicial immunity. *See Martinez v. Winner,* 771 F.2d 424, 434 (10th Cir.1985) ("Although it is an 'administrative' act, in the sense that it does not concern the decision who shall win a case, the assignment of cases is still a judicial function in the sense that it directly concerns the case-deciding process."), *vacated on other grounds sub nom. Tyus v. Martinez,* 475 U.S. 1138 (1986); *Parent v. New York,* 786 F.Supp.2d 516, 532 (N.D.N.Y.2011) ("The assignment of cases and issuance of consolidation orders are judicial functions."), *aff'd,* 485 F. App'x 500 (2d Cir.2012); *see also Zahl v. Kosovsky,* No. 08 Civ. 8308, 2011 WL 779784, at \*9 (S.D.N.Y. Mar. 3, 2011) (holding that the alleged manipulation of the case assignment system is protected by judicial immunity), *aff'd,* 471 F. App'x 34 (2d Cir.2012).

Accordingly, Judges Coccoma and Mulvey's judicial assignment decisions are clearly judicial functions. As such, Judges Coccoma and Mulvey are entitled to judicial immunity, and the claims asserted against them in their individual capacities are dismissed.

#### *2. Justice Dowd*

Although Neroni makes numerous factual allegations against Justice Dowd, they generally concern his rulings and actions in *Kilmer,* particularly his ruling on Ellen Coccoma's motion to compel, which ordered Neroni to provide deposition testimony. (Compl.¶¶ 40, 98, 99, 101–08.) Neroni also complains of Justice Dowd's failure to impose sanctions on Ellen Coccoma, due to improper financial and political motives, and his acquiescence to her rent-free use of public buildings.[14] (*Id.* ¶¶ 28, 40, 93, 94, 97, 98, 110, 113, 136.)

Issuing orders compelling parties or nonparties to provide deposition testimony and deciding whether to impose sanctions are actions well within Justice Dowd's judicial capacity, and are also well within his jurisdiction. [15] *See* *Chandler v. Suntag,* No. 1:11–cv–02, 2011 WL 2559878, at *3 (D. Vt. June 28, 2011) ("Each of these alleged activities-considering complaints, facilitating subpoenas, and permitting certain forms of discovery-involve fundamental judicial functions, and are protected from liability by absolute judicial immunity." (citing *Mireles,* 502 U.S. at 11)); *Kapsis v. Brandveen,* No. 09–01352, 2009 WL 2182609, at *2 (E.D.N.Y. July 20, 2009) (noting that judicial immunity protects judges' decisions regarding whether to impose sanctions). Thus, Justice Dowd is immune from suit in his individual capacity.

### 3. Judge Prudenti and Justices Peckham, Peters, and Mercure

The essence of Neroni's claims against Judge Prudenti and Justices Peters, Peckham, and Mercure is that they all failed to publicly disclose Justice Peckham's position as a judicial hearing officer, and allowed LGT and Fowler to continue to litigate the *Kilmer* matter, which violated Neroni's Forth Amendment rights. (Compl.¶¶ 56–61, 69.)

**\*8** Neroni claims the judges' failure to "post names of judicial hearing officers prominently where the public could see" was not judicial, but administrative. (Dkt. No. 47, Attach. 2 at 6–7.) While the court agrees that posting names of judicial hearing officers is properly characterized as administrative, thus putting these omissions outside of the scope of judicial immunity, Neroni's claims against these defendants nevertheless fail because he has failed to state a cognizable federal claim. *See* *Morris v. Katz,* No. 11–CV–3556, 2011 WL 3918965, at *3 (E.D.N.Y. Sept. 4, 2011) (holding that the Chief Administrative Judge was not entitled to absolute immunity for administrative acts, but plaintiff, in any event, failed to state a claim); *Collins v. Lippman,* No. 04–CV–3215, 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (noting that the Chief Administrative Judge's alleged failure to direct clerk to provide the plaintiff with copies of documents he requested was "beyond the scope of judicial immunity").

Although these defendants are not entitled to judicial immunity, Neroni has failed to state a claim. "[F]or a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions." *Porath v. Bird,* No. 9:11–cv–963, 2013 WL 2418253, at *23 (N.D.N .Y. June 3, 2013). As an initial matter, aside from receiving an order compelling him to appear for a deposition in *Kilmer*—which, by his own admission, he did not attend, (Dkt. No. 47, Attach. 2 at 6)—Neroni has failed to allege what injury, if any, he suffered as a result of defendants' failure to post the names of judicial hearing officers. Moreover, while Neroni contends that defendants' failure to post the names of judicial hearing officers caused a Fourth Amendment violation when he was compelled to provide deposition testimony in an action in which a judicial hearing officer's private law firm was representing a private party, (Dkt. No. 47, Attach. 1 at 7), this attempt to articulate causation is attenuated at best.

Further, aside from his bald, conclusory assertions, Neroni has cited no authority indicating that these judges were under a duty to post the names of judicial hearing officers. An "omission can ... only amount to an actionable claim under § 1983 if [defendants were] under a constitutional obligation." *Zigmund v. Wynne,* 189 F.3d 462, 1999 WL 642951, at *2 (2d Cir.1999); *see* *N . Y. Coastal P'ship, Inc. v. U.S. Dep't of Interior,* 341 F.3d 112, 117 (2d Cir.2003) (noting that failure to act may constitute a § 1983 violation only where the plaintiff identifies a duty); *see also* *Morris,* 2011 WL 3918965, at *3. Accordingly, all claims asserted against Judge Prudenti and Justices Peckham, Peters, and Mercure regarding their failure to post or disclose the names of judicial hearing officers are dismissed.

### C. *Quasi–Judicial Immunity*

**\*9** Judicial Defendants also argue that, to the extent that Neroni asserts any claims against Ellen Coccoma in her capacity as a member of COPS, she is entitled to quasi-judicial immunity. (Dkt. No. 44, Attach. 2 at 11–12.) The court agrees.

It is well settled that quasi-judicial immunity is absolute if the official's role "is 'functionally comparable' to that of a judge." *Butz v. Economou,* 438 U.S. 478, 513 (1978); *see* *Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985) ("Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official." (internal quotation marks and citation omitted)); *Gross v. Rell,* 585

F.3d 72, 81 (2d Cir.2009) ("Judicial and quasi-judicial immunity are both absolute immunities ." (citations omitted)).

Members of COPS are entitled to quasi-judicial immunity for conduct performed "within the course of their duties." *Koziol v.. Peters,* No. 12–CV823, 2012 WL 4854589, at *8 (N.D.N.Y. Oct. 11, 2012) (holding that three members of the Third Department COPS were protected by quasi-judicial immunity for their conduct in the course of an investigation); *see Anonymous v. Ass'n of the Bar of N.Y.,* 515 F.2d 427, 433 (2d Cir.1975) (observing that New York state courts regard disciplinary proceedings as "judicial proceeding[s]" and determining that the state bar association's grievance committee acted as a quasi-judicial body and an arm of the Appellate Division); *accord McKeown v. N.Y. State Comm'n on Judicial Conduct,* 377 F. App'x 121, 124 (2d Cir.2010). Accordingly, any claims against Ellen Coccoma relating to her conduct as a member of COPS, including her investigation and prosecution of Neroni's disciplinary action, must be dismissed because she is entitled to quasi-judicial immunity.

### D. *Eleventh Amendment Immunity*
Judicial Defendants argue that Neroni's claims against them in their official capacities must be dismissed because they are entitled to immunity under the Eleventh Amendment. [16] (Dkt. No. 44, Attach. 2 at 14–17.) The court agrees.

The Eleventh Amendment provides a state with sovereign immunity from suit. *See V.A. Office for Prot. Advocacy v. Stewart,* 131 S.Ct. 1632, 1638 (2011) (citation omitted). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Id.* at 1638. Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities).

Under the doctrine established in *Ex Parte Young,* however, a "plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided

that his complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective." *Clark v. DiNapoli,* 510 F. App'x 49, 51 (2d Cir.2013) (internal quotation marks and citation omitted). Nevertheless, declaratory relief, while equitable in nature, is barred by the Eleventh Amendment "when it would serve to declare only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective." *Kent v. New York,* No. 1:11–CV–1533, 2012 WL 6024998, at *7 (N.D.N.Y. Dec. 4, 2012) (internal quotation marks and citation omitted).

#### 1. *Monetary and Non–Prospective Declaratory or Injunctive Relief*
**\*10** Here, to the extent that Neroni's complaint seeks monetary and/or non-prospective injunctive or declaratory relief against Judicial Defendants in their official capacities, they are immune from suit pursuant to the Eleventh Amendment. This includes: (1) as against Ellen Coccoma acting in her capacity as a member of COPS, Neroni's request for (a) treble damages, (Compl.¶¶ 138, 147), and (b) a declaratory judgment that his disbarment is void, (*id.* ¶ 140), as it is properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger Corp. v. McDonald,* No. 12 Civ. 2731, 2013 WL 5434618, at *13 (S.D.N.Y. Sept. 26, 2013); (2) as against Judge Coccoma, Neroni's request for "a declaratory judgment that Ellen Coccoma's participation in the disciplinary action against [him] ... where [Judge] Coccoma recused [himself] from the related case involving [Neroni] ... constituted re-entry of [Judge] Coccoma into the Mokay case through his wife and a violation of [Neroni's] due process," (Compl.¶ 141), as it is also properly characterized as retroactive declaratory relief, *see Nat'l R.R. Passenger,* 2013 WL 5434618, at *13; (3) as against Justice Dowd, Neroni's request for money damages; and (4) all claims against Justice Mercure, Judge Mulvey, Justice Peckham, and Sanfilippo, [17] as Neroni has not requested prospective injunctive relief as against any of these Judicial Defendants in his complaint.

#### 2. *Prospective Injunctive Relief*
Neroni seeks prospective injunctive relief against Justice Dowd, Judge Prudenti, and Justice Peters. Specifically, as against Justice Dowd, Neroni seeks an injunction and a declaratory judgment prohibiting Justice Dowd from presiding over any cases where Neroni is a party or a nonparty witness sought to be subpoenaed. (Compl.¶¶

134, 137.) As against Judge Prudenti, Neroni seeks injunctive relief "requiring her to promptly forward orders of appointment of judicial hearing officers to the County and Court clerks of the respective counties, as well as to the Court Clerks of the Appellate Divisions ... and to post the names of appointed hearing officers on the website of the Unified New York Court system ." (Compl.¶ 81.) Similarly, as against Justice Peters, Neroni seeks an injunction "ordering her to post all orders of appointment of all judicial hearing officers and of all members of ... [COPS] of her court going back [forty-five] years on her website." (*Id.* ¶ 142.) Because, as discussed *supra* Part IV.B.3, Neroni fails to state a claim against these defendants regarding their failure to post the names of judicial hearing officers, a discussion of whether Neroni's requested relief related to these claims fits within the *Ex Parte Young* exception is academic. [18]

### E. *State Action*

HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham contend that any claims that Neroni asserts against them in their capacities as private attorneys or law firms must be dismissed for lack of state action. (Dkt. No. 29, Attach. 2 at 4–8; Dkt. No. 30, Attach. 3 at 6–8; Dkt. No. 44, Attach. 2 at 9–12.) Neroni retorts that he sufficiently alleged that all private conduct rose to the level of state action by way of conspiracy. (Dkt. No. 40, Attach. 2 at 2–4; Dkt. No. 40, Attach. 3 at 2–6; Dkt. No. 47, Attach. 2 at 18–20.) The court agrees with defendants that dismissal is required.

**\*11** "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir.2002) (citation omitted). In order to prove a § 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324–25. However, "[a] merely conclusory allegation that a private [individual] acted in concert with a state actor does not suffice to state a § 1983 claim against the private [individual] ." *Id.* at 324 (citation omitted). Instead, a plaintiff must show "a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.,* 419 U.S.

345, 351 (1974) (internal quotation marks and citation omitted).

Here, despite his vehement contentions to the contrary, Neroni has failed to establish that any of the private law firms or attorneys were state actors for § 1983 purposes. As an initial matter, it is black letter law that "[p]rivate law firms and attorneys ... are not state actors for section 1983 purposes." *Jaffer v. Patterson,* No. 93 Civ. 3452, 1994 WL 471459, at \*2 (S . D.N.Y. Sept. 1, 1994) (citing *Polk Cnty. v. Dodson,* 454 U.S. 312, 318 (1981)); *see O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 419 (S.D.N.Y.2004) ("Private attorneys and law firms ... do not act under color of state authority.") Furthermore, it is equally well settled that mere use, and even misuse, of the state courts does not turn private parties into state actors. *See Cramer v. Englert,* 93 F. App'x 263, 264 (2d Cir.2004) ("[T]he mere invocation of New York legal procedures does not satisfy the state actor requirement under § 1983." (internal quotation marks and citation omitted)); *Dahlberg v. Becker,* 748 F.2d 85, 92–93 (2d Cir.1984) (dismissing § 1983 action against private attorney because allegations of "misuse of a state statute" did not give rise to a § 1983 action); *Barroga–Hayes v. Susan D. Settenbrino, P .C.,* No. 10 CV 5298, 2012 WL 1118194, at \*8 (E.D.N.Y. Mar. 30, 2012) (holding that the issuance of and compliance with a subpoena did not transform defendants into state actors).

The genesis of Neroni's claims against these defendants is that Ellen Coccoma, a private attorney, avoided the imposition of sanctions, and filed a motion to compel Neroni's deposition testimony in *Kilmer,* which Justice Dowd granted solely as a favor to Judge Coccoma, resulting in a violation of Neroni's Fourth and Fourteenth Amendment rights. (Compl.¶¶ 18, 19, 86, 91, 92, 98.) Because Ellen Coccoma is an employee of HHK, Neroni argues, HHK and Ellen Coccoma "were the same legal person." (Dkt. No. 40, Attach. 2 at 3.) Further, because LGT Defendants "supported" Ellen Coccoma's motion in *Kilmer,* and because Justice Peckham, an LGT partner, was also a judicial hearing officer, LGT Defendants and Justice Peckham were part of the conspiracy to violate Neroni's Fourth Amendment rights. (Compl.¶¶ 65, 67, 69, 99, 114, 138(c) .) At best, however, Neroni has alleged misuse of state court procedures, which, as discussed above, does not morph private action into state action. Neroni even admits that "Ellen Coccoma and [Justice]

Peckham were sued predominantly for their conduct as private attorneys." (Dkt. No. 47, Attach. 2 at 22.)

**\*12** Further, Neroni also has not alleged facts demonstrating a "meeting of the minds," *Dahlberg,* 748 F.2d at 93, an agreement between private parties to deprive him of his constitutional rights, *Ciambriello,* 292 F.3d at 323, or a "a sufficiently close nexus between the State" and the actions of the private attorneys and law firm, *Jackson,* 419 U.S. at 351. Instead, Neroni conclusorily contends that judges nearing retirement, such as Justice Dowd, are financially motivated to provide Ellen Coccoma with special treatment in matters that come before them so that Judge Coccoma is incentivized to appoint these judges to judicial hearing officer positions upon their retirement. (Compl.¶¶ 28, 40, 56–57, 61, 95, 97.) Such far-removed and unfounded speculation does not a conspiracy make. *See Delbene v. Alesio,* No. 00 Civ. 7441, 2001 WL 170801, at \*10 (S.D.N.Y. Feb. 21, 2001) (holding that private attorneys' coordination of deposition with county attorney allegedly in violation of the plaintiff's First Amendment rights did not give rise to a conspiracy and did not elevate the private attorney to a state actor). Accordingly, Neroni's § 1983 claims against HHK, LGT Defendants, Ellen Coccoma, and Justice Peckham are dismissed.

### F. *State Law Claims*

Defendants contend that, to the extent that Neroni asserts state law claims against them, the court should decline to exercise supplemental jurisdiction. (Dkt. No. 29, Attach. 2 at 9–19; Dkt. No. 44, Attach. 2 at 19–20.) While no state law causes of action are readily apparent on the face of the complaint, to the extent that Neroni asserts state law claims, the court agrees that they must be dismissed.

"In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion." *Butler v. LaBarge,* No. 9:09–CV–1106, 2010 WL 39077258, at \*3 (N.D.N.Y. Sept. 30, 2010) (citing *Kolari v. N.Y. Presbyterian Hosp.,* 455 F.3d 118, 121–22 (2d Cir.2006)). Where, as here, all federal claims have been eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal. *Kolari,* 455 F.3d at 122. Accordingly, the court declines to exercise jurisdiction over any state law claims and they are dismissed from this action.

### G. *Leave to Amend*

Although a *pro se* plaintiff's complaint "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo v. City of N.Y.,* 579 F.3d 176, 183 (2d Cir.2009) (internal quotation marks and citation omitted), "leave to amend is not necessary when it would be futile," *Ashmore v. Prus,* 510 F. App'x 47, 49 (2d Cir.2013). As an initial matter, as discussed above, *supra* Part IV, given his legal education and experience, the court, in its discretion, declines to afford Neroni any special solicitude. Moreover, Neroni has not requested leave to amend in any of his submissions. And in any event, considering the analysis above, any amended complaint would be just as frivolous, baseless, and vexatious as his original, and amendment, therefore, would be futile. Accordingly, Neroni's complaint is dismissed with prejudice.

### H. *Costs and Attorneys' Fees*

**\*13** In requesting dismissal of Neroni's claims, HHK and LGT Defendants seek costs and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1988 and 1927. (Dkt. No. 29, Attach. 2 at 10–12; Dkt. No. 30, Attach. 3 at 16–20.) Because defendants did not provide any documentation upon which the court could quantify costs or attorneys' fees, however, this request is denied with leave to renew . [19]

### I. *Neroni's Remaining Cross Motions*

#### 1. Transfer of Venue

Providing no authority or analysis, Neroni requests a transfer of venue "to a court where the Chief Judge does not have relatives working in the office of New York State Attorney General." (Dkt. No. 40 at 1.) Neroni's motion is denied.

Section 1404(a) of Title 28 of the United States Code authorizes a district court to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The decision to transfer venue is entrusted to the sound discretion of the trial court, *see Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir.1989) (citations omitted), and the party seeking transfer bears

the burden of proof, *see Rescuecom Corp. v. Chumley,* 522 F.Supp.2d 429, 449 (N.D.N.Y.2007). Because venue is proper in this district, and Neroni has not demonstrated that transfer is warranted, Neroni's motion to transfer venue is denied.

### 2. Disqualification of Counsel

Finally, Neroni moves to disqualify the New York State Office of the Attorney General (OAG) from representing Ellen Coccoma and Justice Peckham against Neroni's claims related to the conduct of these defendants solely in their private capacity, to strike any filings made by OAG on their behalf, and to sanction the Attorney General and Assistant Attorney General. [20] (Dkt. No. 47; Dkt. No. 47, Attach. 2 at 22–23.) Judicial Defendants oppose Neroni's motion. (Dkt. No. 53 at 2–3.) For the reasons discussed below, Neroni's motion is denied.

Motions to disqualify counsel "are subject to fairly strict scrutiny" and "the courts must guard against tactical use of motions to disqualify counsel." *Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir.1989). A district court may "disqualify counsel where necessary to preserve the integrity of the adversary process," typically in the following situations: (1) where an attorney's conflict of interests in violation of New York's Rules of Professional Conduct "undermines the court's confidence in the vigor of the attorney's representation of his client;" or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, ... giving his present client an unfair advantage." *Bd. of Educ. of N.Y.C. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979) (citations omitted); *see Grant v. Harvey,* No. 09 Civ.1918, 2012 WL 1958878, at *1 (S.D.N.Y. May 24, 2012).

**\*14** Further, New York Public Officers Law § 17(2) states, in relevant part:

> the state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties.

Judicial Defendants contend, and the court agrees, that the complaint raises allegations that certain conduct by both Ellen Coccoma and Justice Peckham, while acting within the scope of their public employment and duties, injured Neroni. (Dkt. No. 53 at 2–3; Compl. ¶¶ 8, 41, 82, 84–85.) Indeed, the caption of the complaint, which, in addition to their individual capacities, names Ellen Coccoma as a defendant "as a former member of the Committee for Professional Conduct, Appellate Division, Third Judicial Department," and names Justice Peckham as a defendant "as the former Acting Supreme Court Justice assigned to the Delaware County Supreme Court case *Kilmer v. Moseman,* Delaware County Index No.2009–298, and as a judicial hearing officer in Delaware County Supreme Court." (Compl.)

Because Neroni alleged in the complaint that at least some of the events giving rise to this action occurred while defendants were acting within the scope of their employment with the state, Ellen Coccoma and Justice Peckham are entitled to be represented by OAG unless the Attorney General determines that representation is inappropriate. *See* N.Y. Pub. Off. Law § 17(2); *Grant,* 2012 WL 1958878, at *2. Here, no such determination was made. Further, Neroni does not claim any violation of New York's Rules of Professional Conduct that would undermine the court's confidence in the vigor of the Attorney General's representation of his clients, and he does not claim that a conflict of interest exists. Accordingly, there is no basis on which to grant Neroni's motion, and it is therefore denied.

### V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that defendants' motions to dismiss (Dkt.Nos.29, 30, 44) are **GRANTED;** and it is further

**ORDERED** that Neroni's cross motions for disqualification or recusal of the court, transfer of venue, and disqualification of counsel (Dkt.Nos.40, 47) are **DENIED;** and it is further

**ORDERED** that Neroni's complaint (Dkt. No. 1) is **DISMISSED;** and it is further

**ORDERED** the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2532482

Footnotes

1    Defendants include Ellen L. Coccoma, Michael V. Coccoma, Robert Mulvey, A. Gail Prudenti, Kevin Dowd, Eugene Peckham, Karen Peters, Thomas Mercure, and Kelly Sanfilippo (collectively, "Judicial Defendants"); Hinman, Howard & Kattell, LLP; and Levene, Gouldin and Thompson, LLP and Margaret Fowler (collectively, "LGT Defendants").

2    *See* U.S. Const. art. I, § 9, cl. 8.

3    The facts are drawn from Neroni's complaint, and presented in the light most favorable to him.

4    *See Neroni v. Zayas,* No. 3:13–CV–0127, 2014 WL 1311560 (N.D . N.Y. Mar. 31, 2014); *Neroni v. Grannis,* No. 3:11–CV–1485, 2013 WL 1183075 (N.D.N.Y. Mar. 21, 2013); *Bracci v. Becker,* No. 1:11–cv–1473, 2013 WL 123810 (N.D.N.Y. Jan. 9, 2013); *Neroni v. Becker,* No. 3:12–cv1226, 2012 WL 6681204 (N.D.N.Y. Dec. 21, 2012), *aff'd in part, vacated in part by* 2014 WL 657927 (2d Cir. Feb. 21, 2014).

5    *See In re Neroni,* 86 A.D.3d 710 (3d Dep't 2011).

6    Neroni contends that Ellen and Judge Coccoma "have [a] common budget," thus rendering sanctions imposed against Ellen Coccoma adverse to both Ellen and Judge Coccoma's interests. (Compl. ¶ 19 .)

7    Although far from clear, it appears that Neroni allges that his Fourth Amendment rights were violated because Justice Dowd lacked jurisdiction to issue the order compelling Neroni's deposition testimony because, after the death of a party, William Kilmer, Justice Dowd failed to "properly restor[e] jurisdiction." (Compl.¶¶ 18, 67, 68, 86, 92, 98, 100–105.)

8    Other favors Justice Dowd allegedly provided to Ellen Coccoma include denying requests for sanctions against her and allowing her to have depositions in public buildings for private clients "at taxpayers, and [Neroni's], expense." (Compl.¶¶ 40, 93, 110, 113, 136.)

9    While Neroni captions Justice Peters' official position as "Chief Judge," (Compl.), she is, in fact, Presiding Justice. The court will use her correct title.

10   Again, Neroni captions Justice Mercure's official position as "former acting Chief Judge," (Compl.), when, in fact, he was the former acting Presiding Justice. The court will use his correct title.

11   Neroni is a graduate of Albany Law School and was admitted to the New York State Bar in 1974. *See Zayas,* 2014 WL 1311560, at \*1. He was disbarred on July 7, 2011. *See id.; In re Neroni,* 86 A.D.3d at 711.

12   Reasserting previously-made arguments, Neroni also claims that recusal is mandated "as a matter of due process of law." (Dkt. No. 40, Attach. 1 at 7–9.) "Consistent with a defendant's due process right to a fair trial, a district judge must recuse himself 'in any proceeding in which his impartiality might reasonably be questioned.' " *United States v. Basciano,* 384 F. App'x 28, 32 (2d Cir.2010) (quoting 28 U.S.C. § 455(a)). Because this inquiry is identical to that considered under § 455(a), (*id.*), the court need not separately address Neroni's due process argument.

13   Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See Martinez v. Queens Cnty. Dist. Attorney,* No. 12–CV–06262, 2014 WL 1011054, at \*8 n.8 (E.D.N.Y. Mar. 17, 2014); *McKnight v. Middleton,* 699 F.Supp.2d 507, 521–25 (E.D.N.Y.2010), *aff'd,* 434 F. App'x 32 (2d Cir.2011). As further discussed below, the Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *Martinez,* 2014 WL 1011054, at \*8 n.8.

14   Neroni also attacks Justice Dowd's mental capacity and claims that he has "mental health problems that appear to make him unfit to make decisions from the bench which are changing lives and affecting constitutional rights of individuals." (Compl.¶¶ 121–30.)

15   In his opposition, Neroni contends that judicial immunity should not apply to Justice Dowd because Neroni has "alleged enough to be entitled to prospective injunctive relief under *Ex Parte Young.*" (Dkt. No. 47, Attach. 2 at 4.) Neroni confuses judicial immunity with Eleventh Amendment immunity, which is addressed below. As discussed above, while judicial immunity does not bar injunctive relief if a declaratory decree was violated or declaratory relief was unavailable, Neroni has not alleged that Justice Dowd violated a declaratory decree or that declaratory relief was unavailable. *See Montero,* 171 F.3d at 761.

16    Neroni contends that the Eleventh Amendment does not bar claims of citizens against their own states. (Dkt. No. 47, Attach. 2 at 8, 15.) This same, baseless argument, offered by Neroni himself, was recently considered and rejected by a court in this District. *Bracci,* 2013 WL 123810, at *9 n.5. Accordingly, the court declines to entertain this obviously meritless argument again here.

17    For the first time, in his opposition to Judicial Defendants' motion to dismiss, Neroni claims that he seeks prospective injunctive relief against Sanfilippo. (Dkt. No. 47, Attach. 2 at 7–8.) Even if he properly stated so in his complaint, Neroni would be unable to circumvent Eleventh Amendment immunity because, as discussed *infra* Part IV.D.2, he has failed to allege an ongoing violation of federal law.

18    The court notes, however, that even if Neroni did state a claim, Neroni's requested relief does not fit within the *Ex Parte Young* exception. "Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a straightforward inquiry that asks whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372 (2d Cir.2005) (internal quotation marks and citations omitted). Here, while the relief Neroni requests is prospective in nature, he has failed to allege that this relief will remedy an *ongoing* violation of federal law. *Clark,* 510 F. App'x at 51; *McKeown,* 377 F. App'x at 123. The sole bases for Neroni's requested relief are that Justice Dowd violated Neroni's Fourth Amendment rights by ordering him to provide deposition testimony in *Kilmer,* and that Justice Peters and Judge Prudenti violated his Fourth Amendment rights by failing to publicly disclose the list of judicial hearing officers, thus allowing LGT to continue to represent private parties in *Kilmer* while Justice Peckham was a judicial hearing officer. (Compl.¶¶ 56–61, 98.) Because Neroni has alleged only discrete, past acts or omissions, not an ongoing violation of federal law, Justice Peters, Justice Dowd, and Judge Prudenti are also entitled to Eleventh Amendment sovereign immunity and dismissal of any claims asserted against them in their official capacities.

19    Notably, while Neroni argues against the imposition of sanctions, (Dkt. No. 40, Attach. 2 at 15–16; Dkt. No. 40, Attach. 3 at 9–10), no Rule 11 motion is presently before the court.

20    As an initial matter, it is unclear that Neroni has standing to object to the representation of Ellen Coccoma and Justice Peckham by the Attorney General, as he "has failed to demonstrate that he has been aggrieved in any way different in kind and degree from the community generally by the Attorney General's representation" of these defendants. *Zaccaro v. Parker,* 169 Misc.2d 266, 269 (N.Y.Sup.Ct.1996).

---

**End of Document**                                                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.