UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UMESH HEENDENIYA,

                              Plaintiff,


v.                                                      5:15-CV-1238
                                                        (GTS/TWD)
ST. JOSEPH'S HOSP. HEALTH CTR. (SJHHC);
ROGER GARY LEVINE, MD; LISA MARIE
O'CONNOR, MD; GEORGE O. TREMITI, MD;
HORATIUS ROMAN, MD; JOANNE MARY
FRENCH, RN; WENDY BRISCOE, RN; SUSAN
LYNN CATE, LMFT; ROSALINE SPINELLA[1], RN;
ROBERT MICHAEL CONSTANTINE, MD;
MITCHELL BRUCE FELDMAN, MD; CYNTHIA A.
RYBAK, NP; KATHRYN HOWE RUSCITTO,
President and CEO of SJHHC; LOWELL A. SEIFTER,
JD, Senior VP and Gen. Counsel of SJHHC;
MEREDITH PRICE, VP of Fin. Servs. and CFO of
SJHHC; DEBORAH WELCH, VP; GAEL
GILBERT, RN and Dir. of SJHHC's Psychiatric Ward;
SJHHC DOES 1-5, Inclusive; CORPORATIONS A-F,
Inclusive; ERIC T. SCHNEIDERMAN, ESQ., New
York State Atty. Gen.; NEW YORK STATE
OFFICE OF MENTAL HEALTH (OMH); ANN
MARIE T. SULLIVAN, M.D., Comm'r of OMH;
JOSHUA PEPPER, ESQ. Deputy Comm'r of OMH;
MICHAEL C. GREEN, Exec. Deputy Comm'r of DCJS;
NICS APPEALS OFFICE – OMH; and NEW YORK
STATE DIV. OF CRIMINAL JUSTICE SERVS.,

                              Defendants.
_____

_____

[1]        The Clerk of the Court is directed to amend the docket to correct the spelling of
this Defendant's last name from "Spunelka" to "Spinella."

APPEARANCES:

UMESH HEENDENIYA
  Plaintiff, *Pro Se*
P.O. Box 5104
Spring Hill, FL 34611

COSTELLO, COONEY & FEARON, PPLC       ROBERT J. SMITH, ESQ.
  Counsel for Defendants SJHHC, French,
  Briscoe, Cate, Spinella, Rybak, Ruscitto,
  Seifter, Price, Welch, and Gilbert
500 Plum Street, Suite 300
Syracuse, NY 13204

SMITH, SOVIK, KENDRICK & SUGNET, P.C.     KEVIN E. HULSLANDER, ESQ.
  Counsel for Defendant Levine                 JOHN P. COGHLAN, ESQ.
250 South Clinton Street, Suite 600
Syracuse, NY 13202

MARTIN, GANOTIS, BROWN,            BRIAN M. GARGANO, ESQ.
MOULD & CURRIE, P.C.
  Counsel for Defendants O'Connor, Tremiti,
  Roman, Constantine, and Feldman
5790 Widewaters Parkway
Syracuse, NY 13214

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this *pro se* action filed by Umesh Heendeniya ("Plaintiff")

against the thirty-five above-captioned entities and individuals ("Defendants") pursuant to, *inter*

*alia*, 42 U.S.C. § 1983 arising out of 18 U.S.C. § 922(g)(4)'s alleged prohibition on Plaintiff's

ability to receive a firearm shipped in interstate or foreign commerce as a result of his

involuntary commitment to a psychiatric ward, are three motions to dismiss Plaintiff's Second

Amended Complaint for failure to state a claim upon which relief can be granted pursuant to

Fed. R. Civ. P. 12(b)(6), filed by (1) Defendants St. Joseph's Hospital Health Center, Susan Lynn

Cate, Wendy Briscoe, Joanne French, Cynthia Rybak, Kathryn Howe Ruscitto, Lowell Seifter, Meredith Price, Deborah Welch, and Gael Gilbert (Dkt. Nos. 46, 62), (2) Defendant Roger Gary Levine, M.D. (Dkt. No. 59), and (3) Rosaline Spinella (Dkt. No. 87). For the reasons set forth below, Defendants' motions are granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Second Amended Complaint

Generally, in his Second Amended Complaint, Plaintiff alleges (among other things) as follows. (Dkt. No. 55 [Plf.'s Second Am. Compl.].) Plaintiff, a Massachusetts resident, suffers from "Type-2 Bipolar Disorder (Manic Depression)" and post-traumatic stress disorder ("PTSD"). (*Id.* at ¶¶ 96, 140.) However, Plaintiff "has never been diagnosed with any form of psychotic or delusional disorder[.]" (*Id.* at ¶ 99.)

On or about April 5, 2013, Plaintiff was brought to St. Joseph's Hospital Health Center ("SJHHC") by "EMS" and, between that date and April 12, 2013, was treated for a "prescription medication overdose" and pneumonia.[2] (*Id.* at ¶ 141.) He was first treated in the emergency room, then in the intensive care unit ("ICU"), and, finally, in the "general medical wing" of SJHHC. (*Id.*) While Plaintiff was being treated in the ICU, he was visited by Dr. Lisa O'Connor, M.D., a psychiatrist with SJHHC's psychiatric unit, on two separate occasions. (*Id.* at ¶¶ 155-56.) Dr. O'Connor "questioned [Plaintiff] at length," and Plaintiff provided "his complete biographic[al], physical, and mental health, social, and educational histor[ies]." (*Id.* at ¶ 163.)

---

[2]      According to an SJHHC admission note signed by Defendant Wendy Briscoe, RN, and attached to Plaintiff's Complaint, Plaintiff's mother "found him unresponsive at a local motel" after Plaintiff ingested Xanax and Risperdal. (Dkt. No. 1, Attach. 6, at 6 [attaching page "1" of SJHHC 3-6 Progress Note, dated 4/12/13].)

Dr. O'Connor asked Plaintiff "about any past arrests," and Plaintiff disclosed that, in 1995, he had shot and killed an assailant in Oklahoma, was tried for "first degree murder," and was acquitted in June 1996. (*Id.* at ¶¶ 108, 164.) Moreover, Plaintiff explained to Dr. O'Connor that "he had been arrested twice in the past for carrying firearms while not having the correct concealed carry permit (due to the lack of reciprocity agreements between the respective [s]tates) in his possession." (*Id.* at ¶ 165.) Specifically, Plaintiff was arrested for "possessing firearms" in Iowa in 2002 (although he possessed a "concealed carry" permit issued by Virginia at the time), and was arrested again for "possessing a firearm" in Massachusetts in 2007 (although he possessed a "concealed carry" permit issued by Utah at the time). (*Id.* at ¶¶ 166, 168.) He explained to Dr. O'Connor that he was not convicted of any firearm-related offense on either occasion, and that he wanted to continue to "possess guns" to "protect himself" and because "he was a firm believer in the Second Amendment and firearm rights." (*Id.* at ¶¶ 167, 169, 171.) Plaintiff also disclosed that he had been treated by his psychiatrist in Massachusetts for his bipolar disorder and PTSD for the previous five years. (*Id.* at ¶¶ 179-180.)

On April 12, 2013, after his discussions with Dr. O'Connor, Plaintiff was involuntarily admitted to SJHHC's psychiatric department pursuant to New York Mental Hygiene Law ("MHL") § 9.27, despite the fact that he did not "exhibit any suicidal, homicidal, delusional, paranoid, or psychotic symptoms whatsoever," and did not "behave in a manner that could cause harm to himself or others."[3] (*Id.* at ¶¶ 143-44.) Rather, as a basis for Plaintiff's involuntary

---

[3] According to Briscoe's admission note, Plaintiff (who was under the care of Defendant Dr. Roger Levine, M.D.) relayed his psychiatric history and arrest history, and "declined . . . treatments and procedures[,] stating his [S]econd [A]mendment rights and that he is not an American citizen." (Dkt. No. 1, Attach. 6, at 6.)

admission, several of the individual Defendants[4] (including Dr. O'Connor) "falsely or negligently wrote in hospital records" that Plaintiff had a "history of schizoaffective disorder," despite Plaintiff's own account of his medical history (which did not include this diagnosis) and the opportunity to contact his treating psychiatrist to verify this diagnosis. (*Id.* at ¶¶ 151-53, 185, 187, 210.) In so doing, Dr. O'Connor "exaggerated and/or increased the (artificial) justification under which [Plaintiff] could be involuntarily admitted" to SJHHC's psychiatric ward. (*Id.* at ¶ 191.) At no point did any of the Defendants properly assess whether Plaintiff posed a danger to himself or others.[5] (*Id.* at ¶¶ 247-260.)

Defendants had at least two motives for improperly involuntarily admitting Plaintiff to the psychiatric ward. First, the SJHHC Defendants and the Physician Defendants had "an unfair bias against" Plaintiff's right to possess firearms under the Second Amendment of the U.S.

---

[4]    In his Second Amended Complaint, Plaintiff refers to the Defendants in the following groupings: (1) Defendants SJHHC, French, Briscoe, Cate, Spinella, Rybak, Ruscitto, Seifter, Price, Welch, Gilbert, and SJHHC Does 1-5 are referred to collectively as "the SJHHC Defendants"; (2) Defendants Levine, O'Connor, Tremiti, Roman, Constantine, and Feldman are referred to collectively as the "Physician Defendants," and (3) Defendants New York State Office of Mental Health ("OMH"), Sullivan, Pepper, NICS Appeals Office - OMH Central Files, the New York State Division of Criminal Justice Services ("DCJS"), Green, and Schneiderman are referred to as the "State Defendants." (Dkt. No. 55 at ¶¶ 1-2.) For the sake of consistency, the Court will use the same designations where practicable, but refers to the SJHHC Defendants as "the St. Joseph's Defendants."

[5]    Plaintiff also alleges that Defendants Dr. George Tremiti, M.D., and Dr. Horatius Roman, M.D., did not personally examine him prior to his involuntary admission, in contradiction to the Certificate of Examining Physician forms that each of these Defendants completed, which certified that they believed that Plaintiff was in need of "involuntary care" based on their personal examinations of Plaintiff. (Dkt. No. 55 at ¶¶ 225-228 [Plf.'s Second Am. Compl.]; *see also* Dkt. No. 1, Attach. 7, at 2 [Certificate of Examining Physician, signed by Dr. Tremiti on 4/8/2013, noting, at bottom of page, "suicide attempt, history of schizo affective disorder . . . ."]; *id.* at 4 [Certificate of Examining Physician, signed by Dr. Roman on 4/8/2013, noting, at bottom of page, "suicide attempt, h/o schizo affective disorder . . . ."].)

Constitution, and wanted to "make sure that [Plaintiff] would lose his firearm rights" pursuant to 18 U.S.C. § 922(g)(4). (*Id.* at ¶¶ 215, 326, 343, 376, 426.) This "strong moral bias" is evident because SJHHC is "managed, controlled, and/or heavily influenced by the Catholic Church." (*Id.* at ¶ 326.) Second, the SJHHC Defendants and/or the Physician Defendants "had a financial motive" to involuntarily admit Plaintiff to the psychiatric unit and provide treatment. (*Id.* at ¶¶ 194, 242, 263, 267, 278, 315, 343.)

Although Defendants "had good legal cover to . . . involuntarily admit" Plaintiff under the MHL and relevant case law, the St. Joseph's Defendants and Physician Defendants exploited a "loophole" in the MHL by involuntarily admitting him to the psychiatric ward (thereby eliminating his right to possess firearms under 18 U.S.C. § 922[g][4]) and then discharging him on April 17, 2013, before the time at which they were obligated to notify his family members of his right to a hearing to challenge his involuntary admission and free legal representation. (*Id.* at ¶¶ 311, 328-344.) Moreover, Defendants "never [gave Plaintiff] any paperwork nor notified [him] verbally of his legal rights, including the availability of free [legal representation] to challenge his retention as an involuntarily admitted patient." (*Id.* at ¶ 365.)[6]

---

[6]     Plaintiff alleges that Briscoe "falsely stated in SJHHC . . . forms that [Plaintiff] had been provided with documents informing him of his legal rights . . . ." (*Id.* at ¶ 308.) Briscoe's admission note states that Plaintiff "received a copy of his legal rights, unit handbook and pt rights book with understanding," was "given a unit tour," and that "[t]reatment plans [were] initiated for" depression and "self injury acute." (Dkt. No. 1, Attach. 6, at 7.) Another document attached to Plaintiff's Complaint, captioned "NOTIFICATION OF STATUS AND RIGHTS, INVOLUNTARY ADMISSION ON MEDICAL CERTIFICATION," bears Plaintiff's name, Dr. Levine's name, a notice regarding Plaintiff's right to legal services, and contact information for the Syracuse, New York, office of Mental Hygiene Legal Services. (Dkt. No. 1, Attach. 7, at 6 [attaching Notification of Status and Rights, Involuntary Admission on Medical Certification, signed by a staff physician on 4/12/13, and bearing the statement, "THE ABOVE PATIENT HAS BEEN GIVE [*sic*] A COPY OF THIS NOTICE"].)

In "early 2015," Plaintiff became aware that he may be prohibited from owning or purchasing firearms pursuant to 18 U.S.C. § 922(g)(4).[7] (*Id.* at ¶ 348.) Plaintiff wrote a letter to the St. Joseph's Defendants and the Physician Defendants to inform them that his involuntary admission to the psychiatric ward "has now led to him being unable to purchase or possess firearms and ammunition," but they "wrote back . . . refusing to rectify the . . . impediment that they unjustly and unlawfully imposed on him [with] regard[] to his gun rights . . . ."[8] (*Id.* at ¶¶ 353-54.)

Because this Decision and Order is intended primarily for the review of the parties, the Court will not further recite the factual allegations contained in Plaintiff's Second Amended Complaint, with which the parties are familiar.

Based upon the foregoing allegations, Plaintiff appears to assert the following claims: (1) a claim for medical malpractice against the SJHHC Defendants and the Physician Defendants ("Count I") (*id.* at ¶¶ 392-406); (2) a claim for "[i]ntentional and/or [r]eckless [i]nfliction of [e]motional [d]istress" against the SJHHC Defendants and the Physician Defendants ("Count II")

---

[7]     It appears that Plaintiff was aware of this possibility in April 2013, given that, as noted above, contemporaneous medical records attached to his Complaint reflect that he declined treatment, citing his "[S]econd [A]mendment rights," and expressing concern that he may be prohibited from owning firearms if he was involuntarily admitted. (Dkt. No. 1, Attach. 6, at 6-7.)

[8]     In a letter dated January 27, 2015, and attached to Plaintiff's Complaint, Mary Clare Ehde, Manager of SJHHC's Office of Patient Experience, stated that Plaintiff's "concerns" had been reviewed and that treating staff had been interviewed. (Dkt. No. 1, Attach. 9, at 3 [Letter, dated 1/27/2015].) SJHHC's review confirmed that, prior to Plaintiff's admission, he had been "evaluated by 2 medical Physicians and a Psychiatrist," and that, as a result, medical staff "concluded that, for your safety, the involuntary admission was an appropriate course of treatment for you." (*Id.*) Based upon these conclusions, SJHHC declined to "amend[ Plaintiff's] medical records to change [his] admission status." (*Id.*)

(*id.* at ¶¶ 407-12); (3) a claim for negligent infliction of emotional distress against the SJHHC Defendants and the Physician Defendants ("Count III") (*id.* at ¶¶ 413-19); (4) a claim for violation of Title III and Title V of the Americans with Disability Act, 42 U.S.C. § 12121 *et seq.* ("ADA") and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, against the SJHHC Defendants, the Physician Defendants and Corporations A-F ("Count IV") (*id.* at ¶¶ 420-34);[9] (5) a claim for civil conspiracy under New York State law against the SJHHC Defendants and Physician Defendants ("Count V") (*id.* at ¶¶ 435-41); (6) a claim for "[v]iolation of the Second Amendment" against the State Defendants, and for a declaratory judgment and injunctive relief in relation thereto ("Count VI") (*id.* at ¶¶ 442-48); (7) a claim against the State Defendants that MHL § 9.27, as applied, violated his rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution ("Count VII") (*id.* at ¶¶ 449-53); (8) a claim against the State Defendants that MHL § 9.27, as applied, violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution ("Count VIII") (*id.* at ¶¶ 454-58); (9) a claim against the State Defendants that MHL § 9.27, on its face, violated his rights under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution ("Count IX") (*id.* at ¶¶ 459-63); (10) a claim against the State Defendants that MHL § 9.27, on its face, violated his rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution ("Count X") (*id.* at ¶¶ 464-68); (11) claims for violation of Title II and Title V of the ADA and section 504 of the Rehabilitation Act against the State Defendants ("Count XI") (*id.* at ¶¶ 469-76); and (12) a claim for violation of N.Y. Civil Rights Law § 79-n and MHL §

---

[9] Corporations A-F represent the unknown "direct employers (i.e., a physician group, partnership, limited liability corporation, etc.)" of the six named Physician Defendants. (Dkt. No. 55 at ¶ 1.)

33.01 against the SJHHC Defendants, Physician Defendants, and State Defendants ("Count XII") (*id.* at ¶¶ 477-481).

      **B.**      **Parties' Briefing on Defendants' Motion to Dismiss**

            **1.**      **St. Joseph's Defendants' Memoranda of Law and Spinella's Memorandum of Law**

Generally, in their respective memoranda of law, the St. Joseph's Defendants and Spinella argue as follows: (1) Plaintiff's Second Amended Complaint contains no allegations with respect to Ruscitto, Seifter, Price, Welch, Gilbert, or SJHHC Does 1-5, and any claims purportedly asserted against them must therefore be dismissed; (2) to the extent that Plaintiff may be understood to have alleged a negligent training and/or negligent supervision claim against Ruscitto, Gilbert, Price, Seifter, Welch, Spinella, and/or SJHHC, these claims must be dismissed because (a) he has failed to allege facts plausibly suggesting that these Defendants provided negligent training or negligent supervision, and (b) as Plaintiff alleges, these Defendants were acting within the scope of their employment and, as a result, the employer cannot be held liable under New York law for a claim of negligent hiring, retention, or training; (3) Plaintiff's Title III ADA and Rehabilitation Act claims must be dismissed because (a) individuals may not be held liable under these statutes, and (b) he has failed to allege facts plausibly suggesting that SJHHC constitutes a public accommodation for purposes of his claims or that SJHHC denied him access to its facility or services; (4) Plaintiff's Title V ADA claim must be dismissed because (a) individuals may not be held liable under this statute, (b) he has failed to allege facts plausibly suggesting that he was engaged in a protected activity, that SJHHC knew of the protected activity, or the existence of a causal connection between a protected activity and any retaliatory action, and (c) he should not be permitted to "resurrect" his

previously dismissed claims pursuant to 42 U.S.C. § 1983, which were predicated on the same factual allegations (*id.* at 8-9); (5) Plaintiff's § 1983 claims must be dismissed pursuant to the law-of-the-case doctrine because these claims, first asserted in his Amended Complaint, were previously dismissed with prejudice; (6) Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1985 (to the extent Plaintiff can be understood to allege such a claim) must be dismissed because (a) he has failed to allege facts plausibly suggesting that Defendants conspired to violate his rights or that any such conspiracy was motivated by class-based discriminatory animus, and (b) to the extent that Plaintiff alleges that the conspirators were all St. Joseph's employees, his claim is barred by the intracorporate conspiracy doctrine; (7) Plaintiff's claim pursuant to 42 U.S.C. § 1986 (to the extent Plaintiff can be understood to allege such a claim) must be dismissed because liability under § 1985 is a necessary predicate to liability under § 1986, and, for the reasons set forth above, Plaintiff has failed to properly plead a § 1985 claim; (8) Plaintiff's intentional-infliction-of-emotional-distress claim must be dismissed because (a) it is time-barred and (b) he has failed to allege facts plausibly suggesting that Defendants engaged in sufficiently extreme and outrageous conduct to support this claim (or even a negligent-infliction-of-emotional-distress claim) (*id.* at 14-17); (9) Plaintiff's medical malpractice claim must be dismissed because it is time-barred; (10) to the extent that Plaintiff may be understood to have asserted a claim for "perjury," this claim must be dismissed because such a civil claim does not exist (*id.* at 17-18); (11) Plaintiff's claim pursuant to New York Civil Rights Law § 79-n must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to violence or intimidation; (12) Plaintiff's claim pursuant to MHL § 33.01 must be dismissed because, in support of this claim, he merely re-asserts that his rights under § 1983, the ADA, and the

Rehabilitation Act have been violated, and, for the reasons enumerated above, those claims must be dismissed; (13) Plaintiff's civil conspiracy claim under New York State law must be dismissed because Plaintiff has failed to allege facts plausibly suggesting that he was subjected to a separate underlying tort; and (14) alternatively, in the event that the Court concludes that only Plaintiff's state law claims survive the St. Joseph's Defendants' and Spinella's motions to dismiss, the Court should decline to exercise supplemental jurisdiction over those state law claims. (Dkt. No. 46, Attach. 2, at 2-18 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 62, Attach. 2, at 1-5 [St. Joseph's Defs.' Supp. Memo. of Law];[10] Dkt. No. 87, Attach. 2, at 1-19 [Spinella's Memo. of Law].)

### 2.    Dr. Levine's Memorandum of Law

Generally, in his memorandum of law, Dr. Levine argues as follows: (1) Plaintiff's medical malpractice claim must be dismissed because it is time-barred; (2) Plaintiff's intentional-infliction-of-emotional-distress claim must be dismissed because (a) it is time-barred and (b) Plaintiff has failed to allege facts plausibly suggesting that Dr. Levine had the requisite intent to inflict emotional distress, given Plaintiff's allegations that multiple medical professionals independently determined that Plaintiff's commitment was warranted; (3) Plaintiff's negligent-infliction-of-emotional distress claim must be dismissed because he has failed to allege facts

---

[10]    By letter dated July 25, 2016, the St. Joseph's Defendants advised the Court that their motion to dismiss (which was filed with respect to Plaintiff's Amended Complaint) applied with equal force to Plaintiff's later-filed Second Amended Complaint. (Dkt. No. 57.) Thereafter, the St. Joseph's Defendants filed a second memorandum of law in support of their motion to dismiss, intended to "address[] any newly asserted causes of action in Plaintiff's Second Amended Complaint." (Dkt. No. 62, Attach. 2, at 1 [St. Joseph's Def.'s Supp. Memo. of Law].) The Court will consider the arguments set forth in both of the St. Joseph's Defendants' memoranda of law because, combined, they do not exceed the page limitations contained in Local Rule 7.1(a)(1) of the Court's Local Rules of Practice.

plausibly suggesting that Defendants' actions involved a threat or danger of physical harm to him; (4) Plaintiff's ADA Title III claim must be dismissed because Plaintiff has not alleged facts plausibly suggesting that Dr. Levine–a psychiatrist who was "director of" the psychiatry unit at SJHHC–was an owner, lessee, or operator of SJHHC for purposes of that provision; (5) Plaintiff's ADA Title V claim must be dismissed because (a) Plaintiff has failed to allege facts plausibly suggesting any basis for such a claim and (b) Title V does not provide for individual liability; (6) Plaintiff's Rehabilitation Act claim must be dismissed because he has failed to allege facts plausibly suggesting that he was denied participation in, or the benefits of, any federally funded program; (7) Plaintiff's civil conspiracy claim under New York State law must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to a separate underlying tort; and (8) Plaintiff's claim pursuant to New York Civil Rights Law § 79-n must be dismissed because he has failed to allege facts plausibly suggesting that he was subjected to violence or intimidation.  (Dkt. No. 59, Attach. 1, at 4-14 [Dr. Levine's Memo. of Law].)

### 3. Plaintiff's Memorandum of Law in Opposition to the Motions to Dismiss Filed by the St. Joseph's Defendants and Dr. Levine

Generally, in opposition to the motions to dismiss filed by the St. Joseph's Defendants and Dr. Levine, Plaintiff argues as follows: (1) his medical malpractice claim is not time-barred because the last day on which he could have interposed this claim under the statute of limitations (October 17, 2015) was a Saturday, and he therefore had until Monday, October 19, 2015, to interpose it; (2) with respect to the St. Joseph's Defendants first argument, he has alleged facts plausibly suggesting that the five "executive" individual Defendants failed to exercise sufficient oversight with respect to "lower level" SJHHC employees; (3) the five "executive" individual

Defendants, as well as SJHHC, are also liable for any harm caused to him by the Physician Defendants under principles of agency; (4) his ADA and Rehabilitation claims should not be dismissed because (a) SJHHC is liable for violations of these provisions perpetrated by the St. Joseph's individual Defendants, and, through principles of agency, by the Physician Defendants, (b) he has alleged facts plausibly suggesting that Defendants failed to make a "reasonable modification" to the medical services that he was provided to ensure that his Second Amendment rights were not implicated under 18 U.S.C. § 922(g)(4); (5) none of his claims should be dismissed pursuant to the law-of-the-case doctrine because (a) his claims do not merely rehash his previously dismissed § 1983 claims and (b) application of the law-of-the-case doctrine is discretionary; and (6) his claim pursuant to MHL § 33.01 should not be dismissed because he has alleged facts plausibly suggesting that he lost a property right (i.e., "his firearm licensing rights and firearm permit rights") under 18 U.S.C. § 922(g)(4) as a result of being "forcefully and unlawfully" involuntarily admitted. (Dkt. No. 90 at 3-9 [Plf.'s Opp'n Memo. of Law to the St. Joseph's Defs. and Dr. Levine].)

4. **Plaintiff's Memorandum of Law in Opposition to Spinella's Motion to Dismiss**

Generally, in opposition to Spinella's motion to dismiss, Plaintiff asserts the same arguments summarized above in Part I.B.3. of this Decision and Order and, moreover, argues as follows: (1) he has alleged facts plausibly suggesting that Spinella failed to "exercise sufficient . . . oversight" of the Physician Defendants, who (a) wrote "false medical information" in his medical records and (b) falsely noted on his involuntary admission forms that Drs. Tremiti and Roman personally examined him; (2) his civil conspiracy claim should not be dismissed because (a) he has alleged facts plausibly suggesting that Spinella and the other individual Defendants

conspired to deprive him of his right to possess firearms and ammunition by (i) recording "false and exaggerated medical information (from a psychiatric illness standpoint)," (ii) failing to contact his treating psychiatrist, and (iii) refusing his request to be admitted on a voluntary basis so that his Second Amendment rights would not be lost by operation of 18 U.S.C. § 922(g)(4), and (b) his timely medical malpractice claim constitutes an underlying tort for purposes of his civil conspiracy claim; and (3) if his federal claims are dismissed, the Court should exercise supplemental jurisdiction over any surviving state law claims. (Dkt. No. 105, Attach. 1, at 3-17 [Plf.'s Opp'n Memo. of Law to Spinella].)

### 5. St. Joseph's Defendants' and Spinella's Reply Memorandum of Law

Generally, in their reply, the St. Joseph's Defendants and Spinella argue as follows: (1) Plaintiff has failed to oppose their motion to the extent that it seeks dismissal of (a) his § 1985 claim, (b) his § 1986 claim, (c) his intentional tort claims, (d) his negligent-infliction-of-emotional distress claim, (e) his "perjury" claim, (f) his New York Civil Rights Law § 79-n claim, and (g) his New York State civil conspiracy claim; (2) Plaintiff's § 1983 claims must be dismissed pursuant to the Court's Decision and Order filed February 25, 2016, which dismissed Plaintiff's § 1983 claims with prejudice and directed that Plaintiff's Amended Complaint "shall not attempt to reassert any claims that have been dismissed with prejudice in this Decision and Order"; and (3) Plaintiff's claims that are mere attempts to reassert his previously dismissed § 1983 claims under different causes of action–including his medical malpractice claim, ADA claims, Rehabilitation Act claims, and claim pursuant to MHL § 33.01–must also be dismissed. (Dkt. No. 92 at 1-4 [St. Joseph's Defs.' Reply Memo. of Law]; Dkt. No. 107 at 2-5 [Spinella's

Reply Memo. of Law].)[11]

### 6.    Dr. Levine's Reply Memorandum of Law

Generally, in his reply, Dr. Levine reiterates the arguments set forth in his memorandum

of law and, moreover, argues as follows: (1) Plaintiff has conceded that Dr. Levine cannot be

held liable under Title III and Title V of the ADA; (2) because a civil conspiracy under New

York State law requires a showing of intentional conduct, Plaintiff's medical malpractice claim

cannot serve as the tort underlying his civil conspiracy claim; and (3) because Plaintiff's

intentional-infliction-of-emotional-distress claim is time-barred, this claim cannot serve as the

tort underlying his civil conspiracy claim.  (Dkt. No. 96 at 2-8 [Dr. Levine's Reply Memo. of

Law].)

## II.    GOVERNING LEGAL STANDARD

### A.    Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de

novo* review).

---

[11]    The St. Joseph's Defendants' reply and Spinella's reply are in the form of
affidavits, sworn to by defense counsel.  (Dkt. Nos. 92, 107.)  Defense counsel is respectfully
reminded that affidavits must not contain legal arguments and that legal arguments must be set
forth in a reply memorandum of law.  N.D.N.Y. L.R. 7.1(a)(1), (2).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is

entitled to relief." *Id*. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

A few words are also appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[12]

_____

[12]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are

Finally, the Court notes that Dr. Levine filed an answer before he filed his present motion to dismiss. As a result, the Court construes his motion as one seeking judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

### B. Legal Standards Governing Plaintiff's Claims

Because the parties have (in their memoranda of law) demonstrated an adequate familiarity with the legal standards governing Plaintiff's claims, the Court will not recite in detail those legal standards in this Decision and Order, which is intended primarily for the review of the parties. Rather, the Court will discuss those legal standards only where necessary below, in Part III of this Decision and Order.

---

"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

### III.    ANALYSIS

#### A.    Claims Previously Dismissed with Prejudice

As an initial matter, Plaintiff's original Complaint was liberally construed to have

asserted several claims pursuant to 42 U.S.C. § 1983, and these claims were dismissed with

prejudice for failure to state a claim upon which relief can be granted.  Specifically, although

Plaintiff's Second Amended Complaint contains numerous additional factual allegations, the

following claims were previously construed to have been asserted in Plaintiff's Complaint and

dismissed with prejudice based on the same course of events underlying his Second Amended

Complaint: (1) Count VI (asserting a "[v]iolation of the Second Amendment" against the State

Defendants); (2) Counts VII and IX (asserting that MHL § 9.27 violated his due process rights);

and (3) Counts VIII and X (asserting that MHL § 9.27 violated his equal protection rights).

(Dkt. No. 6 at Parts III.D, IV [Order and Report-Recommendation of Dancks, M.J., filed

11/30/2015]; Dkt. No. 20 [Decision and Order, adopting Order and Report-Recommendation].)

In its Decision and Order regarding Plaintiff's original Complaint, the Court expressly directed

that Plaintiff "shall not attempt to reassert any claims that have been dismissed with prejudice"

therein.  (Dkt. No. 20 at 12.)  The earlier dismissal of these claims thus constitutes law of the

case, and Plaintiff has not identified any grounds justifying reconsideration of the Court's prior

holdings regarding these claims.  *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d

1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice.") (internal quotation marks omitted).

The Court notes that Plaintiff expressly asserts his § 1983 claims (i.e., Counts VI-X) "[a]gainst solely the . . . State Defendants[.]" (Dkt. No. 55, captions to Counts VI-X.) However, as in his Complaint, Plaintiff's Second Amended Complaint is devoid of any factual allegations related to any involvement of the State Defendants' in his involuntary admission at SJHHC. Moreover, even if (1) Plaintiff's new factual allegations that the St. Joseph's Defendants and the Physician Defendants circumvented his right to a hearing by discharging him before the deadline by which a hearing was required could serve as the basis for a § 1983 claim that was properly before the Court and (2) the Court construed Plaintiff's Second Amended Complaint as asserting his due process and equal protection claims against the St. Joseph's Defendants and the Physician Defendants (rather than the State Defendants), his claims still would not entitle him to relief because, (among other things) "[t]here can be no claim under the Equal Protection or Due Process Clauses of the Fourteenth Amendment where mere private action abridges the rights of an individual." *McIntosh v. Covenant House*, 05-CV-9973, 2007 WL 1946540, at *3 (S.D.N.Y. June 28, 2007); *accord*, Dkt. No. 6 at 20 [Report-Recommendation, noting that "private conduct, no matter how discriminatory or wrongful, is not controlled by § 1983"] [internal quotation marks omitted]). Although Plaintiff alleges that SJHHC had financial incentives to involuntarily admit patients, this conclusory and speculative allegation does not plausibly suggest "a sufficiently close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Andersen v. N. Shore Long Is. Jewish Healthcare Sys.'s Zucker Hillside Hosp.*, 12-CV-1049, 2015 WL 1443254, at *10 (E.D.N.Y. Mar. 26, 2015); *see also Antwi v. Montefiore Med. Ctr.*, 14-CV-0840, 2014 WL 6481996, at *5 (S.D.N.Y. Nov. 18, 2014) ("[I]t is well-settled in the Second Circuit that a private hospital

confining a patient under the New York MHL is not acting under color of state law.").

Accordingly, even if it could reasonably be said that Plaintiff has asserted in his Second

Amended Complaint any new § 1983 claim not barred by the Court's directive that he not

attempt to reassert any previously dismissed claims, the Court concludes that Plaintiff has not

alleged facts plausibly suggesting an entitlement to relief pursuant to § 1983.[13]

      For each of the foregoing reasons, Counts VI-X of Plaintiff's Second Amended

Complaint are dismissed.

### B. Whether Plaintiff's ADA Title II, III and Title V Claims and Rehabilitation Act Claims Must Be Dismissed (Counts IV and XI)

      After carefully considering the matter, the Court answers this question in the affirmative

for the reasons set forth in the St. Joseph's Defendants' memoranda of law and Dr. Levine's

memoranda of law. (Dkt. No. 46, Attach. 2, at 4-8 [St. Joseph's Defs.' Memo. of Law]; Dkt. No.

87, Attach. 2, at 2-5 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 11-13 [Dr. Levine's

Memo. of Law]; Dkt. No. 92 at 3-4 [St. Joseph's Defs.' Reply Memo. of Law]; Dkt. No. 96 at 5-6

[Dr. Levine's Memo. of Law].) To those reasons, the Court adds the following analysis.

      First, as the St. Joseph's Defendants and Dr. Levine correctly note, "individual defendants

may not be sued for money damages under either" the ADA or the Rehabilitation Act. *Morales*

*v. City of New York*, No. 13-CV-7667, 2016 WL 4718189, at *6 (S.D.N.Y. Sept. 7, 2016) (citing

---

    [13] Because Plaintiff is litigating this matter *pro se* and has been granted *in forma pauperis* status, the Court has a continuing duty to review his Second Amended Complaint and must "dismiss the case at any time if the court determines that . . . the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *accord, e.g., Kyung Ja Lee v. HSBC Mortg. Corp. USA*, 14-CV-0584, 2014 WL 795766, at *1 (E.D.N.Y. Feb. 27, 2014) (noting a district court's "independent duty to assess whether a complaint meets the pleading standard under" Fed. R. Civ. P. 8, "and to dismiss it if it does not").

-22-

*Askins v. N.Y.C. Transit*, 11-CV-6371, 2013 WL 142007, at * 4 [S.D.N.Y. Jan. 8, 2013] and *Fate*

*v. Goord*, 11-CV-7493, 2012 WL 3104884, at *4 [S.D.N.Y. July 31, 2012]); *accord, Krist v.*

*Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012).  Here, Plaintiff is seeking "compensat[ion]

for the maximum pecuniary amount allowed" for his ADA and Rehabilitation Act claims.  (Dkt.

No. 55 at ¶ 434 [Plf.'s Second Am. Compl.].)

      Second, Plaintiff has failed to allege facts plausibly suggesting an entitlement to relief

under Title III or the Rehabilitation Act.  "In order to state a claim for violation of Title III, . . . a

plaintiff must establish that (1) he or she is disabled within the meaning of the ADA; (2) that the

defendants own, lease, or operate a place of public accommodation; and (3) that the defendants

discriminated against the plaintiff within the meaning of the ADA[.]"  *Krist*, 688 F.3d at 94-95.

"To establish a prima facie case under the Rehabilitation Act, a plaintiff must allege: [1] that he

or she is a person with disabilities under the Rehabilitation Act, [2] who has been denied benefits

of or excluded from participating in a federally funded program or special service, [3] solely

because of his or her disability."  *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 216 (2d

Cir. 2012).  Although "[s]ection 504 of the Rehabilitation Act, enacted prior to the ADA, is

narrower than the ADA in that its provisions apply only to programs receiving federal financial

assistance . . . Title III and § 504 provide similar protections to individuals with disabilities and

the merits of such claims are generally considered together."  *McInerney v. Rensselaer*

*Polytechnic Inst.*, 977 F. Supp. 2d 119, 125 (N.D.N.Y. 2013) (Hurd, J.); *accord, Hargrave v.*

*Vermont*, 340 F.3d 27, 35 (2d Cir. 2003) (noting that, "[b]ecause Section 504 of the

Rehabilitation Act and the ADA impose identical requirements," disability discrimination claims

under both statutes may be considered "in tandem") (internal quotation marks omitted).

With respect to the second element of his Title III and Rehabilitation Act claims, Plaintiff has not alleged facts plausibly suggesting that SJHHC constitutes a public accommodation, or that he has been denied benefits of, or excluded from participating in, a federally funded program or service.[14]  (*See generally* Dkt. No. 55 [Plf.'s Second Am. Compl.].)  Equally important, however, is the fact that Plaintiff has not alleged facts plausibly suggesting that any of the Defendants discriminated against him "*based on [his] disability.*"  *Andersen*, 2015 WL 1443254, at *17 (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 232 [2d Cir. 2014]).  Indeed, the thrust of Plaintiff's factual allegations is that Defendants involuntarily admitted him to SJHHC's psychiatric ward because (1) they were interested in financial gain and (2) they disapproved of his exercise of his Second Amendment rights.  (*See, e.g.,* Dkt. No. 55 at ¶¶ 194, 326.)  These factual allegations do not plausibly suggest that Plaintiff is entitled to relief within the meaning of Title III or the Rehabilitation Act.  *See Anderson*, 2015 WL 1443254, at *17 ("Here, Plaintiff's purported claim that the Hospital committed her for financial reasons does not plausibly allege discrimination based upon disability.").

With respect to Plaintiff's Title V retaliation claim, he has failed to allege facts plausibly suggesting that he was subjected to retaliation within the meaning of Title V of the ADA.  To state a retaliation claim under Title V, a plaintiff must allege facts plausibly suggesting that  "(i)

---

[14]      Even if the Court were to liberally construe Plaintiff's Second Amended Complaint as asserting a claim pursuant to Title II of the ADA against the non-State Defendants (a construction which would run counter to Plaintiff's otherwise numerous and specific statutory citations), dismissal of such a claim would also be required because Plaintiff has failed to allege facts plausibly suggesting that SJHHC (or, for that matter, Corporations A-F) are public entities subject to suit under Title II.  *See Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) ("A private hospital performing services pursuant to a contract with a municipality[,] even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.").

[he] was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted). Plaintiff alleges in a conclusory manner that one or more of the St. Joseph's Defendants and/or Physician Defendants "retaliated against [him] for voicing his constitutional rights in regards to firearms . . . ." (Dkt. No. 55 at ¶ 427.) However, Plaintiff has not alleged facts plausibly suggesting that his statement(s) constituted engagement in a protected activity. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken *to protest or oppose statutorily prohibited discrimination.*"), *superseded by regulation as stated in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102 (2d Cir. 2013) (emphasis added).

With respect to Plaintiff's Title II and Rehabilitation Act claims[15] against the State Defendants (Count XI),[16] Plaintiff has not alleged facts plausibly suggesting that any State Defendant was in any way involved with his care during his time at SJHHC, that any State Defendant (either before or after his discharge from SJHHC) denied him "the opportunity to

---

[15]     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The standards adopted by Title II and the Rehabilitation Act "are nearly identical [and courts] consider the merits of these claims together." *Disabled in Action v. Bd. of Elec. in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014) (internal quotation marks omitted).

[16]     The Court reviews the sufficiency of Plaintiff's factual allegations with respect to these claims against the State Defendants (in conjunction with Plaintiffs's other ADA and Rehabilitation Act claims) pursuant to 28 U.S.C. § 1915(e), because Plaintiff is proceeding *in forma pauperis*. In the alternative, the Court does so because Plaintiff is proceeding *pro se* and the Court finds the claims in question to be frivolous.

either participate in, or to benefit from the[se D]efendants' services, programs, or activities[,] or [that he was] otherwise discriminated against because of [his] . . . disabilities." *McIntosh v. City of New York*, 14-CV-0051, 2017 WL 473840, at \*6 (E.D.N.Y. Feb. 3, 2017).  Simply stated, Plaintiff has identified no authority supporting the proposition that the right to possess firearms constitutes a service, program, or activity of the State, to which he must be provided access by accommodation under Title II and/or the Rehabilitation Act.

   Finally, for the reasons enumerated above (as well as those set forth in the moving Defendants' memoranda of law), the Court concludes that dismissal of Plaintiff's Title III and Rehabilitation Act claims is also appropriate with respect to all of the individual Physician Defendants (and not only Dr. Levine), as well as the State Defendants, unidentified John Does 1-5, and Corporations A-F, pursuant to 28 U.S.C. § 1915(e).  In short, the moving Defendants' arguments (which are substantive and not fact-specific to them) apply with equal force to the non-moving individual and entity Defendants.

**C.     Whether Plaintiff's Claims Pursuant to 42 U.S.C. §§ 1985 and 1986 Must Be Dismissed**

   As discussed above, the St. Joseph's Defendants and Spinella argue that, to the extent that Plaintiff's Second Amended Complaint may be construed to assert claims pursuant to 42 U.S.C. §§ 1985 and 1986, these claims must be dismissed for failure to state a claim upon which relief can be granted.  (Dkt. No. 46, Attach. 2, at 10-14 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 7-10 [Spinella's Memo. of Law].)  After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the St. Joseph's Defendants' memorandum of law and Spinella's memorandum of law.  To those reasons, the Court adds three points.

First, "a claim under § 1985(3) for conspiracy to deny equal protection in violation of the Fourteenth Amendment is not actionable in the absence of state action." *Edmond v. Hartford Ins. Co.*, 27 F. App'x 51, 53 (2d Cir. 2001) (summary order) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 831-32 [1983]); *see also Khan v. City of New York*, 14-CV-4665, 2016 WL 1128298, at *8 (E.D.N.Y. Feb. 1, 2016) (noting that, "[i]n the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): the right to be free from involuntary servitude and the right to interstate travel") (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 [3d Cir. 2001]). As noted above, Plaintiff has failed to allege facts plausibly suggesting that the State Defendants had any involvement in his involuntary admission at SJHHC.

Second, Plaintiff failed to oppose these Defendants' arguments in his opposition memorandum of law. In this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3) of this Court's Local Rules of Practice.[17] Stated otherwise, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized

---

[17]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

as a "modest" burden.[18]  Defendant has met that burden here.

Third, as with Plaintiff's § 1983, ADA, and Rehabilitation Act claims, the Court

concludes that dismissal of Plaintiff's §§ 1985(3) and 1986 claims (to the extent that even an

extraordinarily liberal construction of his Second Amended Complaint suggests an intention to

assert such claims) is also appropriate with respect to all of the non-moving individual and entity

Defendants pursuant to 28 U.S.C. § 1915(e).

**D.      Whether Plaintiff's Medical Malpractice Claim Must Be Dismissed as Time-
         Barred (Count I)[19]**

After carefully considering the matter, the Court answers this question in the negative for

the reasons set forth in Plaintiff's opposition memoranda of law.  (Dkt. No. 90 at 3-5 [Plf.'s Opp'n

Memo. of Law to the St. Joseph's Defs. and Dr. Levine]; Dkt. No. 105, Attach. 1, at 3-5 [Plf.'s

Opp'n Memo. of Law to Spinella].)  The Court would add only that it takes judicial notice of the

fact that October 17, 2015 (i.e., the apparent last day of the two-and-a-half-year statute of

limitations period applicable to Plaintiff's medical malpractice claim), was a Saturday.  As a

result, it appears (at least from the face of the Second Amended Complaint) that Plaintiff's

medical malpractice claim is not time-barred.  *See* Fed. R. Civ. P. 6(a)(1)(C) ("When the period

---

[18]      *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.
30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009
WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

[19]      As noted above, each of the moving Defendants argue that the Court should
decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  Although Plaintiff
has not alleged a specific state of residence as to each individual Defendant, it appears that
jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 may exist in this
case, given that Plaintiff's Second Amended Complaint alleges that (1) he is a resident of Florida
and (2) the amount in controversy exceeds $75,000.  (Dkt. No. 55 at ¶¶ 4, 83, 140 [Plf.'s Second
Am. Compl.].)  The moving Defendants do not argue that diversity of citizenship is lacking.
Under the circumstances, the Court declines the moving Defendants' invitation to dismiss
Plaintiff's state law claims on this basis at this time.

[to be computed] is stated in days or a longer unit of time . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").  Accordingly, the Court denies the moving Defendants' motion to dismiss this claim on statute-of-limitations grounds.

      **E.**    **Whether Plaintiff's Intentional-Infliction-of-Emotional-Distress Claim Must Be Dismissed (Count II)**

      After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine.  (Dkt. No. 46, Attach. 2, at 14-17 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 10-13 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 6-9 [Dr. Levine's Memo. of Law].)  To those reasons, the Court adds three points.

      First, to the extent that Count II asserts, in the alternative, a claim of reckless infliction of emotional distress, this claim is also subject to a one-year statute of limitations and is therefore time-barred.  *See, e.g., James v. Flynn*, 132 A.D.3d 1214, 1216 (N.Y. App. Div. 3d Dep't 2015) ("[T]he proposed cause of action for reckless infliction of emotional distress is also subject to a one-year statute of limitations . . . .").

      Second, Plaintiff failed to oppose these Defendants' arguments in his opposition memoranda of law.  Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order.  In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

      Third, the Court concludes that dismissal of Plaintiff's intentional-infliction-of-emotional-distress claim as asserted against the non-moving Physician Defendants and John

Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e). Simply stated, Plaintiff does not allege facts plausibly suggesting that he had any further contact with the Physician Defendants after the date of his discharge from SJHHC (April 17, 2013), and there is therefore no basis to conclude that such a claim would have accrued at any later date with respect to any of the other Physician Defendants.

As a result, Plaintiff's intentional-infliction-of-emotional distress claim is dismissed.

**F.    Whether Plaintiff's Negligent-Infliction-of-Emotional-Distress Claim Must Be Dismissed (Count III)**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine. (Dkt. No. 46, Attach. 2, at 16-17 [St. Joseph's Defs.' Memo. of Law]; Dkt. No. 87, Attach. 2, at 12-13 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 9-11 [Dr. Levine's Memo. of Law].) To those reasons, the Court adds two points.

First, Plaintiff failed to oppose these Defendants' arguments in his opposition memoranda of law. Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order. In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

Second, the Court concludes that dismissal of Plaintiff's negligent-infliction-of-emotional-distress claim as asserted against the non-moving Physician Defendants and John Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e) for the same reasons as those stated by the moving Defendants. Simply stated, Plaintiff has failed to allege facts plausibly suggesting that any Defendant subjected him (or a close family member) to physical injury or a threat of

-30-

danger at any point during the time relevant to his claims.  *See, e.g., Dava v. City of New York*, 15-CV-0875, 2016 WL 4532203, at *11 (S.D.N.Y. Aug. 29, 2016) ("Both [the bystander theory and the direct duty theory of a negligent-infliction-of-emotional-distress claim] require physical injury or the threat of danger, either to the plaintiff herself or to a close family member.") (internal quotation marks omitted).[20]

## G. Whether Plaintiff's Claim Pursuant to N.Y. Civil Rights Law § 79-n and MHL § 33.01 Must Be Dismissed (Count XII)

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella, and Dr. Levine.  (Dkt. No. 62, Attach. 2, at 2-4 [St. Joseph's Defs.' Supp. Memo. of Law]; Dkt. No. 87, Attach. 2, at 14-16 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 14 [Dr. Levine's Memo. of Law].)  To those reasons, the Court adds three points.

---

[20]    To the extent that New York State recognizes an exception to this requirement "where there is 'an especial likelihood of genuine and serious mental distress, arising from . . . special circumstances, which serves as a guarantee that the claim is not spurious,'" the Court concludes that Plaintiff has not alleged facts plausibly suggesting such circumstances in this case.  *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Johnson v. State*, 37 N.Y.2d 378 [1975]).  *Johnson* recognized two such circumstances: (1) "recovery for emotional harm resulting from negligent transmission by a telegraph company of a message announcing death"; and (2) "recovery for emotional harm to a close relative resulting from negligent mishandling of a corpse[.]"  *Johnson*, 37 N.Y.2d at 382; *accord, Quinn v. United States*, 946 F. Supp. 2d 267, 278-79 [N.D.N.Y. May 20, 2013] [Suddaby, J.]).  In this case, the thrust of Plaintiff's allegations is that the St. Joseph's Defendants and Physician Defendants *intentionally* exaggerated the severity of his psychiatric condition and history in the course of involuntarily admitting him in order to (1) secure financial incentives for SJHHC and (2) advance the Catholic Church's position as an opponent of Second Amendment rights.  (*See, e.g.,* Dkt. No. 55 at ¶¶ 215, 326 [Plf.'s Second Am. Compl.].)  *See also Bermudez v. City of New York*, 11-CV-0750, 2014 WL 11274759, at *11 (S.D.N.Y. Mar. 25, 2014) ("Negligent infliction of emotional distress may not be based on intentional conduct."); *Regeda v. City of New York*, 09-CV-5427, 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012) ("[T]he defendants also correctly argue that the negligent infliction of emotional distress claim should be dismissed because it is based on intentional conduct–the arrest of the plaintiff.").  Accordingly, Plaintiff has failed to allege facts plausibly suggesting the existence of "special circumstances" supporting such a claim.

First, Plaintiff failed to oppose these Defendants' arguments related to N.Y. Civil Rights Law § 79-n in his opposition memoranda of law. Because these Defendants' arguments have (at the very least) clear facial merit, these Defendants have met their "modest" burden applicable to unopposed arguments. *See, supra,* Part III.C. of this Decision and Order. In the alternative, the Court concludes that these Defendants have met the burden ordinarily applicable to a properly opposed motion.

Second, MHL § 33.01 provides in pertinent part that, "[n]otwithstanding any other provision of law, no person shall be deprived of any civil right, if in all other respects qualified and eligible, solely by reason of receipt of services for a mental disability nor shall the receipt of such services modify or vary any civil right of any such person, including but not limited to . . . rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law." N.Y. Mental Hygiene Law § 33.01. Plaintiff appears to have invoked this statute with respect to his "firearm licensing rights" because "licenses and permits are noted" in its text. (Dkt. No. 90 at 9 [Plf.'s Opp'n Memo. of Law to St. Joseph's Defs. and Dr. Levine].) However, in the portion of his Second Amended Complaint asserting his claim, Plaintiff merely alleges that Defendants "violated his" rights under the Second Amendment, Fourteenth Amendment, ADA, and Rehabilitation Act "because he is mentally disabled," received treatment at SJHHC, and has a history of receiving "psychiatric treatment[.]" (Dkt. No. 55 at ¶¶ 478-81.) Moreover, Plaintiff has failed to identify any case law applying MHL § 33.01 to gun licenses, or any authority supporting the proposition that gun licenses are included within the statute's ambit, and there does not appear to be any. In any event, requiring compliance with MHL § 33.01 does not *preclude* enforcement of 18 U.S.C. § 922(g)(4) (i.e, the federal statute prohibiting, *inter alia*, the possession or receipt of firearms or ammunition shipped or transported in interstate or

foreign commerce by any person "who has . . . been committed to a mental institution").  *See*

*generally Palmer v. New York State Dep't of Mental Hygiene*, 44 N.Y.2d 958, 960 (1978)

(acknowledging that, although "*in this State* deprivation of rights by reason of receipt of services

for a mental disability is . . . forbidden by statute," there nonetheless "may be incidental

disabilities created under Federal law . . . . Nothing the courts can do will change the fact that

plaintiff was indeed treated for mental illness, whether the ground for such treatment was present

or not.") (emphasis added).  In short, Plaintiff has failed to allege facts plausibly suggesting that

these Defendants deprived him of any right or privilege within the meaning of MHL § 33.01, and

has identified no basis for finding that this statute makes available any substantive relief from 18

U.S.C. § 922(g)(4).

Third, the Court concludes that dismissal of Plaintiff's claims against the non-moving

Physician Defendants, John Does 1-5, and State Defendants is appropriate pursuant to 28 U.S.C.

§ 1915(e) for the same reasons as those stated by the moving Defendants.  In the alternative, the

Court dismisses those claims as frivolous.

Accordingly, Count XII of Plaintiff's Second Amended Complaint is dismissed.

### H.    Whether Plaintiff's Civil Conspiracy Claim Must Be Dismissed (Count V)

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons set forth in the memoranda of law filed by the St. Joseph's Defendants, Spinella,

and Dr. Levine.  (Dkt. No. 62, Attach. 2, at 4-5 [St. Joseph's Defs.' Supp. Memo. of Law]; Dkt.

No. 87, Attach. 2, at 16-17 [Spinella's Memo. of Law]; Dkt. No. 59, Attach. 1, at 13-14 [Dr.

Levine's Memo. of Law]; Dkt. No. 96 at 7 [Dr. Levine's Reply Memo. of Law].)  To those

reasons, the Court adds two points.

First, "[t]he statute of limitations for civil conspiracy [under New York law] is the same as that for the underlying tort." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 560 (E.D.N.Y. 2011) (quoting *Brady v. Lynes*, 05-CV-6540, 2008 WL 2276518, at *9 [S.D.N.Y. June 2, 2008]); *accord, Schlotthauer v. Sanders*, 153 A.D.2d 731, 732 (N.Y. App. Div. 2d Dep't 1989), *lv. denied*, 75 N.Y.2d 709 (1990) ("The plaintiff's seventh and eight causes of action, which allege civil conspiracy, must similarly be dismissed, with prejudice, as time-barred because conspiracy is not an independent tort, and is time-barred when the substantive tort underlying it is time-barred[.]").  As discussed above, Plaintiff's intentional-infliction-of-emotional-distress claim is time-barred, and his civil conspiracy claim, to the extent predicated on this claim, is therefore also time-barred.

Second, the Court concludes that dismissal of Plaintiff's civil conspiracy claim against the non-moving Physician Defendants and John Does 1-5 is appropriate pursuant to 28 U.S.C. § 1915(e) for the same reasons as those stated by the moving Defendants.

## I.     Amendment to Cure Pleading Deficiencies

Ordinarily, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).

In this instance, Plaintiff has already been afforded the opportunity to amend his Complaint after initial review, and Plaintiff amended his Amended Complaint (i.e., by filing his Second Amended Complaint) after the St. Joseph's Defendants moved to dismiss the claims asserted therein. Plaintiff has failed to cure the deficiencies identified with numerous of the claims in his original Complaint, and, for the reasons discussed above, the Court concludes that further attempts to amend any of his claims would be futile.

**ACCORDINGLY**, it is

**ORDERED** that the St. Joseph's Defendants motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted (Dkt. Nos. 46, 62) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Defendant Levine's motion for judgment on the pleadings with respect to Plaintiff's Second Amended Complaint (Dkt. No. 59) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket to reflect the correct spelling of Defendant Spinella's name (rather than "Spunelka"); and it is further

**ORDERED** that the Defendant Spinella's motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted (Dkt. No. 87) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that **SURVIVING** moving Defendants' respective motions is Plaintiff's medical malpractice claim (Count I), asserted against the St. Joseph's Defendants and the Physician Defendants (i.e., Defendants French, Briscoe, Cate, Spinella, Rybak, Ruscitto, Seifter, Price, Welch, Gilbert, Levine, O'Connor, Tremiti, Roman, Constantine, Feldman, and John Does 1-5); and it is further

**ORDERED** that all other claims asserted in Plaintiff's Second Amended Complaint (i.e., Counts II-XII) are **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendants OMH, Sullivan, Pepper, NICS Appeals Office - OMH Central Files, DCJS, Green, Schneiderman, and Corporations A-F are terminated from this action; and it is further

**ORDERED** that the St. Joseph's Defendants file an answer to Plaintiff's Second Amended Complaint within **FOURTEEN (14) DAYS** of the date of this Decision and Order pursuant to Fed. R. Civ. P. 12(a)(4)(A). This case is referred back to Magistrate Judge Dancks for a Rule 16 conference and the scheduling of pretrial deadlines.

Dated: March 14, 2017
      Syracuse, New York

                              Hon. Glenn T. Suddaby
                              Chief U.S. District Judge